# EXHIBIT 1

FILED
December 08, 2025 4:56 PM
Office of the Prothonotary
Washington County, Pennsylvania
CV-2025-08284

**IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA**

| | |
|---|---|
| 84 LUMBER COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>WIL-SITES TRUCK LINES, LLC, GREAT WEST CASUALTY COMPANY, and JAMES MAYNARD,<br><br>Defendants. | CIVIL DIVISION<br><br>GD No.: ________________<br><br>Type of Pleading:<br><br>**VERIFIED COMPLAINT IN CIVIL ACTION**<br><br>FILED ON BEHALF OF:<br>Plaintiff 84 Lumber Company<br><br>Counsel of Record for this Party:<br><br>Gerald J. Stubenhofer, Jr.<br>PA I.D. No. 72921<br>jerry.stubenhofer@steptoe-johnson.com<br><br>Joseph R. Lewis III<br>PA I.D. No. 328830<br>joseph.lewis@steptoe-johnson.com<br><br>**STEPTOE & JOHNSON PLLC**<br>One PPG Place, Suite 3300<br>Pittsburgh, PA 15222<br>(T) (412) 504-8010<br>(F) (412) 504-8011<br><br>**JURY TRIAL DEMANDED** |

**IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA**

| | |
|---|---|
| 84 LUMBER COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>WIL-SITES TRUCK LINES, LLC, GREAT WEST CASUALTY COMPANY, and JAMES MAYNARD,<br><br>Defendants. | CIVIL DIVISION<br><br>GD No.: ______________ |

**NOTICE TO DEFEND**

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

Lawyer Referral Service
119 South College Street
Washington, PA 15301
724.225.6710

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

Southwestern Pennsylvania Legal Aid Society
10 West Cherry Avenue
Washington, PA 15301
724.225.6170

**IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA**

| | |
|---|---|
| 84 LUMBER COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>WIL-SITES TRUCK LINES, LLC,<br>GREAT WEST CASUALTY COMPANY, and<br>JAMES MAYNARD,<br><br>Defendants. | CIVIL DIVISION<br><br>GD No.: ________________<br><br>JURY TRIAL DEMANDED |

**VERIFIED COMPLAINT IN CIVIL ACTION**

Plaintiff 84 Lumber Company ("84 Lumber"), by and through its undersigned counsel, files the following Verified Complaint in Civil Action and avers as follows:

## I. PARTIES

1. Plaintiff 84 Lumber is a limited partnership organized and existing under the laws of Pennsylvania, with a principal place of business at 1019 Route 519 Eighty-Four, Pennsylvania 15330. Its general partner is Hardy Holding, Inc., which was incorporated in Pennsylvania and located at the same address.

2. Defendant Wil-Sites Truck Lines, LLC ("Wil-Sites") is a limited liability company organized and existing under the laws of Ohio, with a principal place of business at 900 Buckeye Park Road, Columbus, Ohio 43207.

3. Defendant Great West Casualty Company ("Great West") is a corporation organized and existing under the laws of Nebraska, with a principal place of business at 1100 West 29th Street, South Sioux City, Nebraska 68776.

4. Defendant James Maynard Jr. is an adult individual and is the plaintiff in the Underlying Tort Action (defined below).

## II. JURISDICTION AND VENUE

5. Venue is proper in the Washington County Court of Common Pleas under Pennsylvania Rules of Civil Procedure 1006 and 2179 because Defendants regularly conduct business in Washington County, the cause of action arose in Washington County, and the transaction or occurrence at issue in the cause of action arose in Washington County.

6. The amount in controversy in this matter exceeds the $50,000 compulsory arbitration threshold in Washington County, Pennsylvania.

## III. FACTUAL ALLEGATIONS

### A. The Hauling Agreement

7. 84 Lumber is the nation's leading privately held supplier of building materials, manufactured components, and industry-leading services for residential and commercial projects nationwide.

8. Wil-Sites is a trucking and hauling contractor that provides transportation, loading, securing, and unloading services for customers including 84 Lumber.

9. On or around February 21, 2022, 84 Lumber and Wil-Sites entered into an Independent Contractor Hauling Agreement (the "Hauling Agreement"). A true and correct copy of the Hauling Agreement is attached hereto as **Exhibit A**.

10. The Hauling Agreement is a valid agreement supported by consideration.

11. Under the Hauling Agreement, Wil-Sites agreed "to provide supervision, loading, unloading, transportation, and related services … for the customers of 84 [Lumber] in a good, safe, and workmanlike manner, using suitable equipment, maintained and operated in a responsible and safe manner to deliver materials" in exchange for payment for its services. (Ex. A, § II(a)).

12. In providing its services, the Hauling Agreement makes clear that Wil-Sites "shall be free from the direct supervision and control of 84 [Lumber] in the performance of [Wil-Sites'] duties" and that Wil-Sites "shall have full choice and discretion as to loading and securing of material on the vehicle, routes to delivery site, unloading at delivery site, manpower needed at delivery site, which approved operator to use and all other decisions regarding the loading, transporting and delivery of materials on his equipment." (Ex. A, § XIII(c)).

13. In addition, pursuant to the Hauling Agreement, Wil-Sites was required to name 84 Lumber as an additional insured under a Commercial Auto and Commercial General Liability insurance policy issued by Great West. (Ex. A, § XI). A true and correct copy of the Certificate of Insurance issued to 84 Lumber is attached hereto as **Exhibit B**.

14. The Hauling Agreement further requires Wil-Sites

> to indemnify, protect, save, hold harmless and defend 84 Lumber and its . . . employees from and against any and all loss, costs, damages, suits and liability whatsoever, and all related expenses, including costs and attorneys' fees, and all claims and demands therefore, whether with or without merit, for damages because of bodily injury, sickness, disease or death at any time resulting therefrom sustained by any person or persons, including 84 [Lumber] customers, [Wil-Sites] and its employees, . . . or on account of damage to real or personal property including the loss or use thereof, resulting from, arising out of or in any way connected with the performance of the [services by Wil-Sites], or by [Wil-Sites'] employees, agents or subcontractors regardless of whether or not such damage is caused or alleged to be caused in whole or in part by the negligence of 84 [Lumber] or any other party indemnified hereunder.

(Ex. A, § X(a)).

15. In accordance with the Hauling Agreement, Wil-Sites performed hauling services for 84 Lumber's Rochester, New York stores, including Store #0603 and Store #0621.

**B. The Underlying Tort Action**

16. On or around April 16, 2025, Will Sites's employee James Maynard ("Maynard") filed suit in the Supreme Court of New York, Monroe County, docket No. E2025/008258, naming 84 Lumber and James Barry ("Barry") as defendants (the "Underlying Tort Action"). A true and correct copy of the Verified Complaint in the Underlying Tort Action is attached hereto as **Exhibit C**.

17. In the Underlying Tort Action, Maynard alleges that on or about July 27, 2022 at approximately 2:30 p.m., while he was engaged in the scope of his employment with Wil-Sites Maynard made a delivery of wood products to 84 Lumber at the Town of Greece location using a large flatbed truck. (*See* Ex. C, ¶ 7).

18. Maynard further alleges that, as said delivery of wood products was being unloaded, Barry, an 84 Lumber employee, while using a forklift, pushed a large piece or pieces of lumber from the top of the load on said flatbed truck onto Maynard, striking him about the head, face, shoulders and neck. (*See* Ex. C, ¶ 8).

19. Maynard alleges that as a result of said incident, he sustained serious injuries as defined pursuant to New York State Insurance Law §5102(d), including but not limited to his head, neck, left shoulder, left knee, left foot, left wrist, left forearm and post-traumatic stress disorder. (*See* Ex. C, ¶ 9).

20. Under Section XIII(c) of the Hauling Agreement, Wil-Sites bore contractual responsibility for all loading, securing, staging, and preparation of materials for unloading, including the manner in which materials were stacked, supported, and prepared for transport and unloading. (*See* Ex. A, § XIII(c)).

21. The alleged accident occurred during unloading operations for which Wil-Sites was contractually responsible under Section XIII(c) of the Hauling Agreement, regardless of which individual physically operated the forklift.

22. These unloading activities were part of a continuous sequence of operations assigned to Wil-Sites, and, upon information an belief, the hazards created by the unstable load directly originated from Wil-Sites' loading and securing decisions, and the claims against 84 Lumber in the Underlying Tort Action arise from and/or relate to Wil-Sites' loading, securing, transportation, and unloading services under the Hauling Agreement.

**C. 84 Lumber's Tender to Wil-Sites and Cross Claim**

23. On or around May 19, 2025, 84 Lumber, through counsel, informed Wil-Sites of the Underlying Tort Action, and demanded that it defend and indemnify 84 Lumber pursuant to the Hauling Agreement. A true and correct copy of the May 19, 2025 letter is attached hereto as **Exhibit D**.

24. Wil-Sites did not respond to the letter.

25. On or around June 13, 2025, 84 Lumber, through counsel, sent a second written tender to Wil-Sites reiterating 84 Lumber's demand. A true and correct copy of the June 13, 2025 letter is attached hereto as **Exhibit E**.

26. Wil-Sites did not respond to the June 13, 2025 letter.

27. On or around June 26, 2025, 84 Lumber filed a Third-Party Complaint in the Underlying Tort Action, naming Wil-Sites as a Third-Party Defendant and asserting claims against Wil-Sites for contractual indemnification, common law indemnification, and contribution. A true and correct copy of the Third-Party Complaint in the Underlying Tort Action is attached hereto as **Exhibit F**.

28. Again, on or around July 28, 2025, 84 Lumber, through counsel, sent a third written tender to Wil-Sites reiterating 84 Lumber's demand. A true and correct copy of the July 28, 2025 letter is attached hereto as **Exhibit G**.

29. Again, Wil-Sites did not respond to the July 28, 2025 letter.

30. Wil-Sites' repeated silence constitutes a continuing refusal to honor its contractual duties to defend and indemnify 84 Lumber, leaving 84 Lumber without the benefit of the indemnity and defense protections of the Hauling Agreement.

31. Wil-Sites' failure to respond or even acknowledge 84 Lumber's multiple written tenders—despite ample notice—constitutes a clear and unequivocal refusal to honor its contractual defense and indemnity obligations.

32. Instead, on or around October 14, 2025, Wil-Sites filed its Answer With Counterclaim/Cross-Claim to Third-Party Complaint against 84 Lumber in the Underlying Tort Action. A true and correct copy of Wil-Sites' Answer With Counterclaim/Cross-Claim to Third-Party Complaint is attached hereto as **Exhibit H**.

33. The Cross-Claim to the Third-Party Complaint seeks contractual and/or common law indemnity and/or contribution from 84 Lumber and Barry to the extent judgment is recovered against Wil-Sites in the Underlying Tort Action. (*See* Ex. H).

**D. 84 Lumber's Demand for Coverage**

34. On or around October 2, 2025, 84 Lumber made its first formal tender to Great West, demanding that Great West defend and indemnify 84 Lumber as an additional insured under the Policy and seeking reimbursement for defense costs incurred to date. A true and correct copy of the October 2, 2025 letter is attached hereto as **Exhibit I**.

35. On or around October 17, 2025, Great West issued a written declination of 84 Lumber's tender, refusing to defend or indemnify 84 Lumber in the Underlying Tort Action and refusing to reimburse 84 Lumber for its incurred defense costs. A true and correct copy of the October 17, 2025 declination letter is attached hereto as **Exhibit J**.

36. Great West asserted that neither 84 Lumber nor its employee, James Barry, qualifies as an "insured" under the Policy's Ohio Motor Carrier Coverage Form. (*See* Ex. J).

37. Great West stated that insured status extends only to Wil-Sites, permissive users of covered autos, and Wil-Sites' employees engaged in "moving property to or from a covered auto," and concluded that Barry does not fall within any insured category. (*Id.*).

38. In reaching that conclusion, Great West ignored the fact that the accident occurred during unloading of the Wil-Sites truck and arose from the condition of the load transported on that truck, as specified in the Complaint in the Underlying Tort Action.

39. Great West further asserted that the Additional Insured Endorsement to the Commercial Auto Coverage Part applies only if 84 Lumber is liable for the conduct of an "insured" as defined in the Who-Is-an-Insured provision. (*See* Ex. J).

40. Because Barry is not an "insured" and because the Underlying Tort Action alleges negligence by Barry, Great West concluded that 84 Lumber cannot qualify for additional insured status. (*Id.*).

41. Great West took this position despite issuing a Certificate of Insurance identifying 84 Lumber as an Additional Insured and despite being informed that Wil-Sites, undeniably an insured under the policy, controlled and was contractually responsible for the loading and unloading of the lumber.

42. Great West also asserted that the accident did not arise from the "ownership, maintenance, or use" of a covered auto because a forklift—rather than the truck—was being operated at the moment of injury. (*See* Ex. J).

43. Great West therefore denied that the loss fell within the Motor Carrier Coverage Form's insuring agreement. (*Id.*). In doing so, Great West disregarded that the accident occurred during unloading of the Wil-Sites truck and resulted from the manner in which Wil-Sites loaded and/or secured and or controlled loading and unloading of the lumber.

44. With respect to the Commercial General Liability Coverage, Great West asserted that additional insured coverage exists only if 84 Lumber is vicariously liable for Wil-Sites' conduct. (*See* Ex. J).

45. Because the Underlying Tort Action does not expressly allege negligence by Wil-Sites, Great West concluded that the endorsement does not apply. (*Id.*).

46. Great West reached this conclusion even though the instability of the load and the unloading process—both controlled by Wil-Sites under the Hauling Agreement—were central to the facts of the incident and were provided to Great West in multiple tenders.

47. Finally, Great West asserted that because the Underlying Tort Action does not expressly allege negligence by Wil-Sites, 84 Lumber cannot be deemed vicariously liable for Wil-Sites' conduct and therefore cannot qualify for coverage as an additional insured. (*See* Ex. J).

48. In reaching that conclusion, Great West ignored the factual record provided with the tenders showing that the condition of the load, and ignored the fact that the Complaint in the Underlying Tort Action clearly states that the alleged injury by Maynard was sustained during unloading operations—operations for which Wil-Sites had complete control and sole responsibility under the Hauling Agreement.

49. Each of the foregoing bases for denial rested on Great West's narrow reading of selected allegations in the Underlying Tort Action and its refusal to account for facts provided directly to it showing that the accident arose from Wil-Sites' work and operations.

50. At all relevant times, Great West was aware that the accident occurred during unloading operations for which Wil-Sites was contractually responsible. Great West was also aware that 84 Lumber's potential liability in the Underlying Tort Action could arise from Wil-Sites' conduct, which falls within the scope of the Additional Insured Endorsements.

51. Even still, following the filing of 84 Lumber's Third-Party Complaint, Great West acknowledged its obligation to defend Wil-Sites and, by letter dated August 28, 2025, confirmed that it was providing a defense to Wil-Sites based on allegations that the accident arose out of Wil-Sites' loading, securing, and unloading operations. A true and correct copy of the August 28, 2025 letter is attached hereto as **Exhibit K**.

52. These same allegations—that the accident arose out of Wil-Sites' loading, securing, and unloading operations—are present in the Complaint in the Underlying Tort Action. (See Ex. C, ¶¶ 6-8).

53. In accepting the defense of Wil-Sites, Great West necessarily acknowledged that the facts of the accident fall within hazards covered by the Policy and arise out of Wil-Sites' work.

54. Those same facts create a potential basis for vicarious liability exposure for 84 Lumber and therefore fall within the Additional Insured coverage afforded to 84 Lumber.

55. The Underlying Tort Action alleges an injury occurring during the unloading of a Wil-Sites delivery—an operation Wil-Sites controlled under the Hauling Agreement. These allegations were known to Great West and demonstrate, at minimum, a potential connection between the accident and Wil-Sites' conduct.

56. Great West was therefore aware that the claims in the Underlying Tort Action potentially implicated 84 Lumber's status as an Additional Insured. Despite this, Great West denied any obligation to defend 84 Lumber while simultaneously defending Wil-Sites based on the same underlying facts.

57. Any liability that may be imposed on 84 Lumber in the Underlying Tort Action will arise, in whole or in part, from Wil-Sites' loading, securing, transportation, and unloading of the lumber at issue—operations for which Wil-Sites was contractually responsible.

58. Although the Underlying Tort Action does not expressly name Wil-Sites as a negligent actor, the facts alleged show that the condition of the load and the unloading operations were performed by Wil-Sites. Any claim against 84 Lumber arising from those operations necessarily implicates Wil-Sites' work.

59. Despite having full knowledge of these facts, Great West denied any duty to defend or indemnify 84 Lumber and relied instead on a narrow reading of selected allegations in the Underlying Tort Action.

60. At all times relevant, Great West owed 84 Lumber a duty to act in good faith and to evaluate 84 Lumber's tenders in good faith.

61. Instead, Great West failed to conduct a meaningful investigation into the facts presented in 84 Lumber's tender letters, including Wil-Sites' contractual responsibility for loading and unloading operations under the Hauling Agreement.

62. Great West unreasonably relied on a narrow and selective reading of the Underlying Tort Action's Complaint while deliberately disregarding undisputed facts provided to it showing that the accident arose out of Wil-Sites' loading, securing, transportation, and unloading operations.

63. Great West ignored facts establishing a "potential for coverage," including the allegations in the Underlying Tort Action that the accident occurred "while the delivery of wood products was being unloaded," and that injury occurred in connection with the unloading of the Wil-Sites truck. (Ex. C, ¶¶ 7-8).

64. Great West accepted the defense of Wil-Sites in the Underlying Tort Action based on the same factual allegations that it claimed were insufficient to trigger coverage for 84 Lumber, demonstrating Great West's inconsistent and unreasonable position.

65. Great West knew, or recklessly disregarded, that the facts alleged in the Underlying Tort Action and provided in 84 Lumber's tenders created a potential for vicarious liability exposure to 84 Lumber arising from Wil-Sites' work, thereby triggering Additional Insured coverage under the Policy.

66. Great West knew, or recklessly disregarded, that its stated bases for denial were contrary to Pennsylvania's "potentiality" standard for triggering a duty to defend.

67. Great West failed to provide any reasonable explanation for its denial, offered coverage interpretations inconsistent with the plain language of the Policy and Additional Insured endorsements, and ignored the Hauling Agreement provisions establishing Wil-Sites' complete control over loading, securing, and unloading.

68. As a direct result of Great West's refusal to defend, 84 Lumber was forced to continue to pay defense costs in the Underlying Tort Action and to file this separate action to obtain a coverage determination.

69. Great West's refusal to defend exceeds mere negligence or mistake and constitutes bad faith within the meaning of 42 Pa.C.S. § 8371.

## COUNT I
## DECLARATORY JUDGMENT AGAINST WIL-SITES

70. The foregoing paragraphs are incorporated herein by reference as if set forth fully at length.

71. An actual, present, and justiciable controversy exists between 84 Lumber and Wil-Sites concerning Wil-Sites' contractual duties to defend, indemnify, and hold harmless 84 Lumber with respect to the claims asserted in the Underlying Tort Action. This controversy is immediate and not hypothetical, as Wil-Sites has refused multiple formal tenders.

72. Under Section X(a) of the Hauling Agreement, Wil-Sites is contractually obligated to indemnify, defend, and hold harmless 84 Lumber from "any and all" losses, costs, damages, liabilities, suits, and expenses—including attorneys' fees—arising out of or connected with Wil-Sites' performance of services, including loading, securing, transporting, and unloading materials.

73. The claims asserted in the Underlying Tort Action arise directly from Wil-Sites' contractual responsibilities under the Hauling Agreement, including its responsibility for loading and unloading operations. The Third-Party Complaint in the Underlying Tort Action likewise asserts claims for contractual indemnity, common-law indemnity, and contribution against Wil-Sites, reinforcing Wil-Sites' obligation to defend and indemnify 84 Lumber.

74. Despite repeated written tenders, Wil-Sites has refused to defend or indemnify 84 Lumber or reimburse 84 Lumber for the defense costs it has incurred related to the Underlying Tort Action.

WHEREFORE, Plaintiff 84 Lumber demands a declaratory judgment, declaring that Defendant Wil-Sites is contractually obligated to defend and indemnify 84 Lumber in the Underlying Tort Action and reimburse 84 Lumber for all legal costs and fees, settlements, and/or

judgments 84 Lumber has paid or will pay, in connection with the Underlying Tort Action, including the costs of enforcing the indemnity obligation.

**COUNT II**
**DECLARATORY JUDGMENT AGAINST GREAT WEST**

75. The foregoing paragraphs are incorporated herein by reference as if set forth fully at length.

76. An actual and substantial controversy exists between 84 Lumber and Great West concerning Great West's obligation to defend and indemnify 84 Lumber as an Additional Insured under the Policy issued to Wil-Sites.

77. Great West agreed to provide Additional Insured coverage to 84 Lumber under both the Commercial Auto and Commercial General Liability Coverage Parts of the Policy. The Certificate of Insurance issued by Great West likewise identifies 84 Lumber as an Additional Insured.

78. The Underlying Tort Action arises from loading and unloading operations for which Wil-Sites was contractually responsible, and for which 84 Lumber may be deemed vicariously liable—triggering Additional Insured coverage under both Coverage Parts.

79. Great West has refused to defend 84 Lumber despite having been provided with all information necessary to confirm 84 Lumber's entitlement to coverage, including the Hauling Agreement, certificates of insurance, and detailed factual tender letters.

80. Great West's refusal to defend or indemnify 84 Lumber breaches its contractual duty to provide Additional Insured coverage for liabilities arising out of Wil-Sites' operations. Great West's duty to defend is broader than its duty to indemnify and is triggered whenever the claim even potentially falls within coverage.

WHEREFORE, Plaintiff 84 Lumber demands a declaratory judgment, declaring that Defendant Great West is contractually obligated to defend and indemnify 84 Lumber in the Underlying Tort Action and reimburse 84 Lumber for all legal costs and fees, settlements, and/or judgments 84 Lumber has paid or will pay, in connection with the Underlying Tort Action, including the costs of enforcing the indemnity obligation.

**COUNT III**
**BREACH OF CONTRACT AGAINST GREAT WEST**

81. The foregoing paragraphs are incorporated herein by reference as if set forth fully at length.

82. Defendant Great West issued the Policy.

83. Pursuant the the Hauling Agreement, 84 Lumber is entiled to coverage under the Policy as an additional insured, including indemnification and defense from Great West for all claims made against it in the Underlying Tort Action.

84. As an additional insured under the Policy, 84 Lumber has standing to sue for breach of contract.

85. The Policy is a valid, enforceable, and binding contract under Pennsylvania law.

86. Great West received timely notice of the Underlying Tort Action as set forth above.

87. Despite timely notice of the Underlying Tort Action and in violation of the terms of the Policy, Great West has refused to defend or indemnify 84 Lumber, even though the claim set forth in the Underlying Tort Action against 84 Lumber is an insured event under the Policy.

88. Great West's failure to indemnify or defend 84 Lumber constitutes a breach of the Policy.

89. As a result of Great West's failure and refusal to indemnify and defend 84 Lumber in the Underlying Tort Action, 84 Lumber was compelled to retain counsel to represent it in the

Underlying Tort Action and incurred attorneys' fees and other costs to defend its interest. 84 Lumber continues to incur such costs on an ongoing basis.

90. As a direct and proximate cause of Great West's material breach of the Policy, 84 Lumber has suffered damages.

WHEREFORE, Plaintiff 84 Lumber demands judgment in its favor and against Defendant Great West in an amount in excess of $50,000 and all other relief as the Court may deem just and proper, including prejudgment and post-judgment interest, and all reasonable attorney's fees and costs incurred by 84 Lumber in prosecuting this action.

**COUNT IV**
**BAD FAITH AGAINST GREAT WEST**

91. The foregoing paragraphs are incorporated herein by reference as if set forth fully at length.

92. This Count is brought pursuant to 42 Pa.C.S. § 8371, which authorizes an award of interest, punitive damages, court costs, and attorneys' fees where an insurer has acted in bad faith toward its insured.

93. Great West is an insurer under 42 Pa.C.S. § 8371.

94. 84 Lumber is an Additional Insured under the Policy issued by Great West to Wil-Sites, and therefore qualifies as a party entitled to assert a statutory bad-faith claim under Pennsylvania law.

95. At all relevant times, Great West had a duty to investigate and administer 84 Lumber's claims for indemnification and defense in the Underlying Tort Action in good faith.

96. However, Great West acted in bad faith by failing to conduct a reasonable investigation of 84 Lumber's tender, including its failure to consider Wil-Sites' contractual responsibilities to 84 Lumber under the Hauling Agreement.

97. Great West acted in bad faith by ignoring or deliberately refusing to consider information demonstrating at least a potential basis for coverage, including facts set forth in the Underlying Tort Action showing that the accident occurred during unloading operations for which Wil-Sites was contractually responsible.

98. Great West acted in bad faith by adopting inconsistent coverage positions—accepting the defense of Wil-Sites based on allegations of loading and unloading operations while simultaneously denying coverage to 84 Lumber based on the same allegations.

99. In short, Great West lacked a reasonable basis for refusing to defend and indemnify 84 Lumber under the Policy, and knew of, or recklessly disregarded, its lack of reasonable basis in refusing to defend and indemnify 84 Lumber.

100. Great West's unfounded and unreasonable denial constitutes bad faith within the meaning of 42 Pa.C.S.A. § 8371.

101. As a result of Great West's bad faith, 84 Lumber has suffered damages, including but not limited to, attorneys' fees and costs incurred in the Underlying Tort Action and attorneys' fees and costs incurred in prosecuting this declaratory judgment action.

WHEREFORE, Plaintiff 84 Lumber, pursuant to 43 Pa.C.S.A. § 8371 demands judgment in its favor and against Defendant Great West as follow:

(1) Monetary damages in an amount in excess of $50,000;

(2) Interest on the monetary damages in amount equal to the prime rate of interest plus 3%;

(3) An award of punitive damages;

(4) An award of all reasonable attorney's fees and costs incurred by 84 Lumber in this action; and

(5) All other relief as the Court may deem just and proper, including prejudgment and post-judgment interest.

Respectfully submitted,

Date: December 8, 2025

STEPTOE & JOHNSON PLLC

By: */s/ Gerald J. Stubenhofer, Jr.*
Gerald J. Stubenhofer, Jr.
PA I.D. No. 72921
jerry.stubenhofer@steptoe-johnson.com
Joseph R. Lewis III
PA I.D. No. 328830
joseph.lewis@steptoe-johnson.com

One PPG Place, Suite 3300
Pittsburgh, PA 15222
(412) 504-8010

*Counsel for Plaintiff 84 Lumber Company*

84 LUMBER
Build on what we know.

# INDEPENDENT CONTRACTOR HAULING AGREEMENT

This Agreement is made this __14th__ day of __February 2022__ to be effective on the _21st_ day of __February 2022__ between 84 Lumber Company ("84"), a Pennsylvania Limited Partnership having its principal office at 1019 Route 519, Eighty Four, PA 15330-2813, and __Wil-Sites Truck Lines__ (hereinafter "Contractor"), a __LLC__ having its principal office at __900 Buckeye Park Road, Columbus, OH 43207__ __(614) 444-3174__
(Street Address, City, State, Zip Code) (Phone Number)

I. **TERM:** This Agreement shall be for an initial term of one (1) year from the effective date, and thereafter shall automatically renew and continue for year-to-year terms. Notwithstanding the previous sentence, this Agreement may be terminated (1) by 84, for any reason whatsoever, with or without cause, at anytime during the initial term or any renewal term by giving fifteen (15) days advance written notice of such termination to Contractor at the address listed above; or (2) by Contractor, with or without cause, at the end of the initial term or any renewal term by giving thirty (30) days advance written notice of such termination to 84 at the address listed above.

II. **FEES/PAYMENT:**

a) Contractor, an independent contractor, agrees to provide supervision, loading, unloading, transportation, and related services (hereinafter referred to as "Work") for the customers of 84 in a good, safe, and workmanlike manner, using suitable equipment, maintained and operated in a responsible and safe manner to deliver materials according to the following rate schedule:

Option I: Cost per Load (Loaded Mileage only)

| Mileage Zone | Rate Per Load Box Truck Single Axle | Tandem w/Pig | Boom Truck |
|---|---|---|---|
| 0-5 Miles: | $ 80 | 119 | 150 |
| 6-10 Miles: | $ 86 | 131 | 150 |
| 11-20 Miles: | $ 106 | 161 | 177 |
| 21-30 Miles: | $ 123 | 189 | 206 |
| 31-40 Miles: | $ 143 | 216 | 235 |
| 41-50 Miles: | $ 163 | 240 | 293 |
| 50+ Miles: | $ +3.50 mi | +4.00 mi | +4.00 mi |

- **Yard Transfer:** normal zone rate, when loaded both ways each store pays ½ zone rate
- **Truck Transfer.** ½ zone rate if within 20mi, ½ zone if greater than 20mi
- **Extra Man Rate:** $40 hour
- **Drop Charge:** $55 on single axle, $70 on tandem pig, $85 on boom truck
- **Job Site Labor:** First 45min N C, $1 min after
- **Yard Down Time:** First 30min N C, $1 min after
- **Hand Unloading:** First 15min N C, $1 min after.
- **Call Back Fee:** $50 if driver is sent home and called back to store same day
- **Pick Up:** Charged at zone rate OR drop, whichever applies. Charged at ½ zone rate if in conjunction with a delivery
- **Flat Rate Vehicles:**
  - Hotshot: $425 wk (1 at #0608, #0610, #0619, #0621, #0626 each)
    - Wil-Sites places approved 84 drivers on insurance with Permissive Use Endorsement. 84 Lumber pays fuel
  - Box Truck $3000 wk (1 at #0603, #0619 each)
- **6-Story Boom Minimum:** $3250 wk out of #0632. Split b/t 0601, 0608, 0612, 0626, 0632
- **Driver Subsidies:** Refer to attached Addendum A

b) Weekly hauler logs and the entries thereon shall be deemed conclusive and binding upon Contractor unless written objections to entries on a questioned weekly hauler log are received by 84 within thirty (30) days from the date issuance of the weekly hauler log to which the objection applies.

c) Contractor agrees to deliver the following specific materials according to the following rate schedule:

Drywall __.01/sq ft slide off__ .02/sq ft 1st floor__
__.15/sq ft boom__
Shingles__.25/bundle hand unload on ground__
__.40/bundle boom to roof__

If Contractor is owed any monies by 84 under the provisions of Sec. II above, these monies will only be paid after Contractor has presented to 84 a fully completed and signed trip report and weekly hauler log for each load. 84 will only pay for Contractor's services by check issued from 84's Headquarters. Contractor must present these statements to the 84 Lumber Store Manager every Friday. Any statement not so presented must be held until the following Friday. No cash payments will be made.

d) 84 specifically retains the right to set off amounts which may be owned by 84 to Contractor hereunder against any amounts which may be owed by Contractor to 84 whether hereunder or pursuant to any other agreement, contract, or obligation of Contractor to 84.

III. **AREA/AVAILABILITY:**

a) Contractor will be available, and will make deliveries, during the following hours:

Monday__First out until Completion__
Tuesday__
Wednesday__
Thursday__
Friday__
Saturday/Holidays __$29/delivery__
Sunday__

b) Contractor agrees to deliver material under the terms and conditions of this Agreement for the following 84 locations:

(i)__Store #0603 Rochester, NY__ Store #0610 Dewitt, NY__ Store #0619 Victor, NY__
(ii)__Store #0621 Greece, NY__ Store #0632 Elma, NY__
(iii)__Store #0634 Geneva, NY__ Store #0635 Chaffee, NY__

IV. **COMPLIANCE WITH THE LAW:** Contractor has conducted, and is conducting the business(es) of the Contractor in full compliance with all applicable laws, regulations, and requirements of each jurisdiction, whether federal, state or local, in which Contractor operates. Contractor has, from every governmental body (each a "Governmental Entity") all approvals, consents, licenses, permits, and orders (together, the "licenses"), necessary to carry on the businesses of the Contractor as currently conducted. All such licenses are in full force and effect, and no proceeding is pending or, to Contractor's knowledge, threatened which might have the effect of terminating or limiting any license. Contractor is in full compliance with each license and the requirements, therefore, and no statement in any application or other submission made to obtain or maintain any license was false in any material respect. Any employee of Contractor who is performing work which is required to be performed by a licensed individual is so licensed, and to Contractor's knowledge, each such license is in full force and effect. To Contractor's knowledge, no notice has been issued and no civil or criminal litigation, investigation or review is pending or threatened (i) with respect to any alleged violation by Contractor of any law, ordinance, regulation, order, policy or guideline of any governmental entity, or (ii) with respect to any alleged failure to have any or all licenses required in connection with the operation of the businesses of the Contractor.

EXHIBIT
tabbies
A

V. EXECUTIVE ORDER COMPLIANCE:

a) The Contractor will not discriminate against any employee or applicant for employment because of race, color, religion, sex, age, disability national origin or any other category protected by law. The Contractor will take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, color, religion, sex, age, disability, national origin or any other category protected by law. Such action shall include, but not be limited to the following: employment, promotion, demotion, or transfer, recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. The Contractor agrees to post in conspicuous places, available to employees and applicants for employment, notices to be provided by the contracting officer setting forth the provisions of this nondiscrimination clause.

b) The Contractor will, in all solicitations or advertisements for employees placed by or on behalf of the Contractor, state that all qualified applicants will receive consideration for employment without regard to race, color, religion, sex, age, disability national origin or any other category protected by law.

c) The Contractor will send to each labor union or representative of workers with which it/she/he has a collective bargaining agreement or other contract or understanding, a notice to be provided by the agency contracting officer, advising the labor union or workers' representative of the Contractor's commitments under section 202 of Executive Order 11246 of September 24, 1965, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

d) The Contractor will comply with all provisions of Executive Order 11246 of September 24, 1965, and of the rules, regulations, and relevant orders of the Secretary of Labor.

e) The Contractor will furnish all information and reports required by Executive Order 11246 of September 24, 1965, and by the rules, regulations, and orders of the Secretary of Labor, or pursuant thereto, and will permit access to his books, records, and accounts by the contracting agency and the Secretary of Labor for purposes of investigation to ascertain compliance with such rules, regulations, and orders.

f) In the event of the Contractor's non-compliance with the nondiscrimination clauses of this Agreement or with any of such rules, regulations, or orders, this Agreement may be canceled, terminated or suspended in whole or in part and the Contractor may be declared ineligible for further Government contracts in accordance with procedures authorized in Executive Order 11246 of September 24, 1965, and such other sanctions may be imposed and remedies invoked as provided in Executive Order 11246 of September 24, 1965, or by rule, regulation, or order of the Secretary of Labor, or as otherwise provided by law.

g) Contractor will include the provisions of these paragraphs (a) through (g) in every subcontract or purchase order unless exempted by the rules, regulations or orders of the Secretary of Labor issued pursuant to section 204 of Executive Order 11246 of September 24, 1965, so that such provisions will be binding upon each Contractor or vendor. The Contractor will take such action with respect to any subcontract or purchase order as may be directed by the Secretary of Labor as a means of enforcing such provisions including sanctions for noncompliance: Provided, however, that in the event the Contractor becomes involved in, or is threatened with, litigation with a Contractor or vendor as a result of such direction, the Contractor may request the United States to enter into such litigation to protect the interests of the United States.

h) Contractor shall file, and shall cause each of its Subcontractors to file, Compliance Reports with the contracting agency or the Secretary of Labor as may be directed. Compliance Reports shall be filed within such times and shall contain such information as to the practices, policies, programs, and employment policies, programs, and employment statistics of the subcontractor and each Contractor, and shall be in such form, as the Secretary of Labor may prescribe.

i) The Contractor understands that it and its Subcontractors may be required to state whether they have participated in any previous contract subject to the provisions of this Order, or any preceding similar Executive Order, and in that event to submit, on behalf of themselves and their proposed subcontractors, Compliance Reports prior to or as an initial part of their bid or negotiation of a contract.

j) Whenever Contractor has a collective bargaining agreement or other contract or understanding with a labor union or an agency referring workers or providing or supervising apprenticeship or training for such workers, the Compliance Report shall include such information as to such labor union's or agency's practices and policies affecting compliance as the Secretary of Labor may prescribe: Provided, that to the extent such information is within the exclusive possession of a labor union or an agency referring workers or providing or supervising apprenticeship or training and such labor union or agency shall refuse to furnish such information to the subcontractor, the subcontractor shall so certify to the Secretary of Labor as part of its Compliance Report and shall set forth what efforts he has made to obtain such information.

k) The Contractor understands that the Secretary of Labor may direct that the Contractor or any of its Subcontractors shall submit, as part of its Compliance Report, a statement in writing, signed by an authorized officer or agent on behalf of any labor union or any agency referring workers or providing or supervising apprenticeship or other training, with which the Contractor or any of its Subcontractors, with supporting information, to the effect that the signer's practices and policies do not discriminate on the grounds of race, color, religion, sex or national origin, and that the signer either will affirmatively cooperate in the implementation of the policy and provisions of this Order or that it consents and agrees that recruitment, employment, and the terms and conditions of employment under the proposed contract shall be in accordance with the purposes and provisions of the order. In the event that the union, or the agency shall refuse to execute such a statement, the Compliance Report shall so certify and set forth what efforts have been made to secure such a statement and such additional factual material as the Secretary of Labor may require.

l) Pursuant to Executive Order 13496, the Contractor also agrees to post a notice, of such size and in such form, and containing such content as the Secretary of Labor shall prescribe, in conspicuous places in and about its plants and offices where employees covered by the National Labor Relations Act engage in activities relating to the performance of the contract, including all places where notices to employees are customarily posted both physically and electronically. The notice shall include the information contained in the notice published by the Secretary of Labor in the Federal Register (Secretary's Notice).

m) The Contractor will comply with all provisions of the Secretary's Notice, and related rules, regulations, and orders of the Secretary of Labor.

n) In the event that the Contractor does not comply with any of the requirements set forth in subparagraphs (l) or (m) above, the Contractor understands that this Agreement may be cancelled, terminated, or suspended in whole or in part, and the Contractor may be declared ineligible for further Government contracts in accordance with procedures authorized in or adopted pursuant to Executive Order 13496 of January 30, 2009. Such other sanctions or remedies may be imposed as are provided in Executive Order 13496 of January 30, 2009, or by rule, regulation, or order of the Secretary of Labor, or as are otherwise provided by law.

o) The Contractor will include the provisions of sub-paragraphs (l) through (n) above in every sub-subcontract entered into in connection with this contract (unless exempted by rules, regulations, or orders of the Secretary of Labor issued pursuant to section 3 of Executive Order 13496 of January 30, 2009) so that such provisions will be binding upon each of its Subcontractors. The Contractor will take such action with respect to any of its subcontracts as may be directed by the Secretary of Labor as a means of enforcing such provisions, including the imposition of sanctions for non-compliance; provided, however, that if the Contractor becomes involved in litigation with a Subcontractor, or is threatened with such involvement, as a result of such direction, the Contractor may request the United States to enter into such litigation to protect the interests of the United States.

p) If Contractor's business with 84 on federal government contracts is valued at $100,000.00 or more, then Contractor shall comply with the federal requirement of filing the VETS-100A annual report.

q) If Contractor has at least 100 employees, then it shall comply with the requirement of filing an EEO-1 form annually with Equal Employment Opportunity Commission.

VI. DAVIS BACON ACT COMPLIANCE: The Contractor shall comply with the Davis-Bacon Act (40 U.S.C. 276a to a-7) and as supplemented by Department of Labor regulations. Under this Act, Contractor is required to pay wages to laborers and mechanics at a rate not less than the minimum wages specified in a wage determination made by the United States Secretary of Labor. In addition, Contractor shall be responsible to ensure that it complies with any applicable non-federal Prevailing Wage or Living Wage statutes, regulations, or ordinances.

VII. E-VERIFICATION: If Contractor performs any work on a government job, Contractor must use E-Verify for all new employees, as well as all employees who perform work on the contract during the contract period except those who perform support work such as indirect or overhead functions.

VIII. BUY AMERICAN ACT: Buy American Act (41 U.S.C. § 10a-10d) and Trade Agreements Act (19 U.S.C. § 2501, et seq.). 84 Lumber does, from time to time, serve as a prime contractor or subcontractor on U.S. Government Contracts. And depending on the size and nature of any of 84 Lumber's U.S. Government Contracts, 84 Lumber must comply with both the Buy American Act ("the BAA") and The Trade Agreements Act ("the TAA"). The Contractor acknowledges that it understands the requirements of the BAA and the TAA. The Contractor agrees that it will comply with the BAA and TAA and the applicable Federal Acquisition Regulations ("FAR") that implement those Acts. The Contractor also agrees to provide 84 Lumber with all

required information, documentation and certification that the BAA or the TAA require 84 Lumber to provide to the U.S. Government. The Contractor acknowledges that the following FAR clauses are incorporated herein by reference, with the same force and effect as if they were given in full text, and are applicable to this Purchasing Agreement:

A. FAR 52.225-1 BUY AMERICAN ACT – SUPPLIES (FEB 2009)

B. FAR 52.225-3 BUY AMERICAN ACT – FREE TRADE AGREEMENTS – ISRAELI TRADE ACT (JUNE 2009)

C. FAR 52.225-5 TRADE AGREEMENTS (AUG 2009)

D. FAR 52.225-8 DUTY-FREE ENTRY (FEB 2000)

E. FAR 52.225-9 BUY AMERICAN ACT – CONSTRUCTION MATERIALS (FEB 2009)

F. FAR 52.225-11 BUY AMERICAN ACT – CONSTRUCTION MATERIALS UNDER TRADE AGREEMENTS (AUG 2009)

G. FAR 52.225-21 REQUIRED USE OF AMERICAN IRON, STEEL, AND OTHER MANUFACTURED GOODS – BUY AMERICAN ACT – CONSTRUCTION MATERIALS (MAR 2009)

H. FAR 42.225-23 REQUIRED USE OF AMERICAN IRON, STEEL, AND OTHER MANUFACTURED GOODS – BUY AMERICAN ACT – CONSTRUCTION MATERIALS UNDER TRADE AGREEMENTS (AUG 2009)

## IX. OTHER COMPLIANCE ISSUES:

A. Because this Agreement is entered into by the Contractor in support of 84 Lumber's performance of a U.S. Government Contract, as either a prime contractor or a subcontractor, the FAR clauses contained in Exhibit 1 are incorporated by reference and, with the clarifications provided below, are applicable to this Agreement. If the date or substance of any of the clauses in Exhibit 1 is different from the date or substance of the clause actually used or incorporated into 84 Lumber's U.S. Government Contract or 84 Lumber's U.S. Government subcontract, the date or substance of the clause used or incorporated by 84 Lumber's U.S. Government Contract or 84 Lumber's U.S. Government subcontract shall apply instead. The Contracts Disputes Act shall not apply to this Purchasing Agreement.

B. As used in the FAR clauses contained Exhibit 2 and elsewhere in this Agreement, the following clarifications apply:

1. "Commercial Item" means a commercial item as defined in FAR 2.101.
2. "Contract" means this Purchase Agreement.
3. "Contracting Officer means the U.S. Government Contracting Officer for 84 Lumber's U.S. Government Subcontract under which this Agreement is entered.
4. "Contractor" and "Offeror" means the Contractor, as defined in this Agreement, acting as subcontractor to 84 Lumber.
5. "Prime Contract" means the contract between 84 Lumber and the U.S. Government or between 84 Lumber and between 84 Lumber and its higher-tier contractor who has a contract with the U.S. Government.
6. "Subcontract means any contract between the Contractor with lower-tiered subcontractors under this Agreement.

## X. INDEMNIFICATION:

a) In the performance of the Work, the Contractor agrees to indemnify, protect, save, hold harmless and defend 84 and its directors, officers, employees, predecessors, successors, subsidiaries, affiliates, related entities, members, partners, managers, owners, agents, servants, and contractors, harmless from and against any and all loss, costs, damages, suits, and liability whatsoever, and all related expenses, including costs and attorneys' fees, and all claims and demands therefor, whether with or without merit, for damages because of bodily injury, sickness, disease or death at any time resulting therefrom sustained by any person or persons, including 84 customers, Contractor and its employees, Contractor's subcontractors, or agents of Contractor, or on account of damage to real or personal property including the loss or use thereof, resulting from, arising out of or in any way connected with the performance of the Work by the Contractor, or by the Contractor's employees, agents or subcontractors regardless of whether or not such damage is caused or alleged to be caused in whole or in part by the negligence of 84 or any other party indemnified hereunder.

b) The Contractor further agrees to indemnify, protect, save, hold harmless and defend 84, its agent and employees from and against any claims made by employees from any actions, conduct or omissions of the Contractor, its agents or employees, including, but not limited to, charges of discrimination brought under the Equal Employment Opportunity Commission and the Workers Compensation Board (or similar department, commission or bureau), claims and losses alleging failure to comply with federal and state wage and hour laws, wrongful termination, discrimination, denial of due process or other labor-related causes of action resulting from employee conduct, hiring, discipline, or termination. Contractor shall also indemnify, protect, save, hold harmless and defend 84 from employee claims of sexual or other harassment by Contractor or any employee of Contractor.

c) The Contractor further agrees to indemnify, protect, save, hold harmless and defend 84, its agent and employees from and against any and all losses, damages, penalties, costs and expenses, including legal and accounting fees incurred or suffered by 84 which result from or arise out of any federal or state income tax withholding liability or taxes arising under the Federal Insurance Contributions Act or under the Federal Unemployment Tax Act, or similar federal or state tax, resulting from this Agreement.

d) The duty to defend includes the duty to pay reasonable attorneys' fees incurred by 84 in defending such actions, and the duty to indemnify includes the duty to pay any award imposed by an administrative agency, judgment or reached by way of settlement.

e) The Contractor, the Contractor's heirs, successors and assigns, hereby expressly waive and agree to waive any provision of the Worker's Compensation laws of contribution or indemnity in any action at law, or otherwise where Contractor or Contractor's employees, heirs, assigns or anyone otherwise entitled to receive damages by reason of injury or death or brings an action at law against 84.

## XI. INSURANCE:

Contractor shall provide Worker's Compensation Insurance covering contractor's drivers. Contractor shall also provide Commercial General Liability ( The policy should include the Broad Form Commercial General Liability Endorsement or an endorsement adding Blanket Contractual Liability Insurance with limits equal to those outlined) and Automobile Liability Insurance with limits not less than $1,000,000 per occurrence covering bodily injury, death, and property damage suffered by anyone including employees of 84 and/or of Contractor during the course of, and on the site of and/or adjacent to, the operations covered by this Agreement. Contractor shall be responsible for damage to and/or loss of any cargo from 84 regardless of the ownership/title of such cargo. Contractor shall name 84 an additional insured under Contractor's insurance policies by means of an "Additional Insured" endorsement in a form satisfactory to 84. Contractor shall also furnish 84 with a Certificate of Insurance illustrating such insurance policies which certifies that the Contractor has the required coverages in force at all relevant times and that none of the coverages may be cancelled without at least 30 days advance written notice to 84. Failure of Contractor to provide and maintain the above insurance and its specific requirements shall make Contractor the insurer. Failure to maintain insurance under the above terms and conditions shall constitute breach of the Agreement by Contractor and the immediate and automatic termination and forfeiture by contractor of all rights under this Agreement without notice from 84 to Contractor. Certificates of Insurance and notices shall be sent to 84 Lumber Company, ATTN: Hauling Department, Bldg. #5, 1019 Route 519, Eighty Four, PA 15330-2813. Contractor shall maintain, and 84 will only accept, insurance from an insurance company with an A- Bests Rating, in force at all times during the term of this Agreement. ALL OF CONTRACT'S LIABILITY INSURANCE PREMIUMS MUST BE PAID IN ADVANCE FOR AT LEAST A ONE (1) YEAR PERIOD. NO PARTIAL PAYMENTS WILL BE PERMITTED. CONTRACTOR MUST SUBMIT CERTIFICATION TO 84 FROM ALL OF ITS LIABILITY INSURERS THAT ALL OF THE ANNUAL PREMIUMS HAVE BEEN PAID IN FULL FOR A ONE (1) YEAR PERIOD. CONTRACTOR HEREBY AUTHORIZES 84 TO DEDUCT FROM ANY FEES OR PAYMENTS DUE CONTRACTOR, THE UNPAID PREMIUM AMOUNT DUE FOR CONTRACTOR'S INSURANCE IF A "NOTICE OF CANCELLATION OF INSURANCE FOR NON-PAYMENT" IS RECEIVED BY 84.

## XII. MAINTENANCE / APPEARANCE:

f) Contractor agrees to maintain, repair and service his equipment in a safe and clean condition, and Contractor further agrees to keep all records of such maintenance, repair and service and to make same available for inspection by 84 as 84 shall reasonably request. All expenses necessary to maintain, repair and service equipment in such condition are the Contractor's responsibility.

g) Contractor's employees will wear clean, neat clothes, which will include crepe-soled work boots, blue denim jeans or khaki pants, and a uniform shirt and/or jacket. Any clothing advocating, depicting, or implying drugs, sex, music, alcohol, or anything that does not directly relate to the delivery of building materials from 84 will not be worn by Contractor's employees.

XIII. MISCELLANEOUS:

a) Contractor will acknowledge receipt of each load for delivery, and will furnish receipts signed by customers or their authorized agents for each load delivered and unloaded, with any discrepancies noted thereon. Contractor shall provide safe and timely delivery and unloading of all goods, with time being of the essence of this Agreement. In case any delivery is delayed for any reason, Contractor shall promptly notify 84 by telephone.

b) Contractor shall exercise the highest degree of care in performing this Agreement; Contractor shall supervise the loading of all cargo and shall adequately secure all loads so as to avoid risk or damage to anyone. Contractor shall obtain all required permits and licenses and comply with all laws and regulations relating to the transportation of goods covered by this Agreement or otherwise applicable to performance under this Agreement, solely at Contractor's expense. Contractor shall provide and pay for legal liability and Worker's Compensation insurance coverage, payroll contributions and taxes as required by law and by this Agreement. Contractor shall indemnify and defend 84 and the customers of 84 for whom Contractor performs services hereunder from and against all claims and liability of any kind arising out of Contractor's breach of, or failure of performance under, or otherwise in connection with this Agreement. Contractor hereby warrants and states that he is in full compliance with the Immigration Reform and Control Act of 1986 with respect to himself and respective employees, subcontractors and/or agents.

c) The parties intend that an independent contractor relationship will be created by this Agreement. Contractor is and shall be at all times an independent contractor and not an employee, agent or servant of 84 or of its customers. This Agreement is not a contract of employment and it is expressly agreed by the parties that Contractor is an independent contractor and is not an employee of 84, and is not entitled to any of the benefits offered to 84 employees by reason of their employment. Contractor shall be free from the direct supervision and control of 84 in the performance of Contractor's duties hereunder. Contractor shall have full choice and discretion as to loading and securing of material on the vehicle, routes to delivery site, unloading at delivery site, manpower needed at delivery site, which approved operator to use and all other decisions regarding the loading, transporting and delivery of materials on his equipment.

d) Contractor agrees that during the term of this Agreement, the services set forth herein shall not be provided to any competitor of 84.

e) 84 reserves the right to terminate this Agreement for any reason whatsoever with or without cause by giving fifteen (15) days written notice of such termination to Contractor at the address listed above.

f) This Agreement shall be binding upon Contractor and Contractor's successors, heirs, spouse, dependents and legal representatives and anyone claiming by or through Contractor.

g) The entire agreement of the parties is set forth in this written document and there are no other oral or written understandings, promises, representatives or agreements. This Agreement cannot be modified or amended except by a written document signed by both parties; and this Agreement shall supersede all previous communications, representations, or agreements, either verbal or written between the parties hereto.

h) The waiver or invalidity of any provisions herein shall not affect the validity of any other provision herein.

i) Any claim or controversy arising out of or relating to this Agreement, or the breach thereof, shall be settled by final and binding arbitration in Pittsburgh, Pennsylvania in accordance with the Commercial Arbitration Rules of the American Arbitration Association and judgment upon the award rendered by the arbitrator or arbitrators may be entered in any court having jurisdiction thereof. The parties agree that claims may be brought only in an individual capacity and not as a plaintiff or class member in any purported class or representative proceeding. The parties also agree that the arbitrator may not consolidate or join claims of more than the one claimant and may not preside over any form of representative or class proceeding. If this class action waiver is found to be unenforceable, then all arbitration provisions shall be null and void. This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania.

IN WITNESS WHEREOF, the undersigned parties have executed this Agreement to be effective on the day and year above written.

| WITNESS | CONTRACTOR (Please sign both copies) |
|---|---|
| By: Bradley J Sites | By: [signature] |
| Name: Brad Sites (Print) | Name: Chad Calcagno (Print) |
| Title: Member | Title: President |
| | Contractor's Fed. Tax ID or Social Security No. 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 |

| WITNESS | 84 LUMBER COMPANY |
|---|---|
| By: Denise Bastian | By: Mitchell D. Feldman 2-18-22 |
| Name: Denise Bastian (Print) | Name: Mitchell D. Feldman (Print) |
| Title: Administrative Assistant | Title: V.P., Delivery Services |

THIS AGREEMENT IS NOT VALID UNLESS EXECUTED BY THE 84 DIRECTOR OF DELIVERY SERVICES. NO OTHER 84 EMPLOYEE HAS AUTHORITY, EXPRESS OR IMPLIED, TO SIGN OR CHANGE TERMS AND CONDITIONS IN THIS AGREEMENT.
PLEASE RETURN EXECUTED ☐ AGREEMENT ☐ CERTIFICATE OF INSURANCE ☐ COPY OF CONTRACTOR'S APPLICABLE INTERSTATE AND INTRASTATE AUTHORITY LICENSES AND PERMITS TO THE 84 DELIVERY SERVICES DEPARTMENT

EXHIBIT I – FAR CLAUSES INCORPORATED BY REFERENCE

The following FAR clauses apply to this Agreement:

FAR 52.211-5 MATERIAL REQUIREMENTS (AUG 2000)

FAR 52.215-20 REQUIREMENTS FOR COST OR PRICING DATA OR INFORMATION OTHER THAN COST OR PRICING DATA (OCT 1997)

FAR 52.215-21 REQUIREMENTS FOR COST OR PRICING DATA OR INFORMATION OTHER THAN COST OR PRICING DATA - MODIFICATIONS (OCT 1997)

FAR 52.219-8 UTILIZATION OF SMALL BUSINESS CONCERNS (MAY 2004)

FAR 52.222-21 PROHIBITION OF SEGREGATED FACILITIES (FEB 1999)

FAR 52.222-26 EQUAL OPPORTUNITY (MAR 2007)

FAR 52.222-50 COMBATING TRAFFICKING IN PERSONS (FEB 2009)

FAR 52.225-13 RESTRICTIONS ON CERTAIN FOREIGN PURCHASES (JUN 2008)

FAR 52.244-6 SUBCONTRACTS FOR COMMERCIAL ITEMS (JUN 2010)

FAR 52.247-64 PREFERENCE FOR PRIVATELY OWNED U.S. FLAG COMMERCIAL VESSELS (FEB 2006)

FAR 52.203-12 LIMITATION ON PAYMENTS TO INFLUENCE CERTAIN FEDERAL TRANSACTIONS (SEP 2007)

FAR 52.222.35 EQUAL OPPORTUNITY FOR SPECIAL DISABLED VETERANS, VETERANS OF THE VIETNAM ERA, AND OTHER ELIGIBLE BETERANS (SEP 2006)

FAR 52.203-13 CONTRACTOR CODE OF BUSINESS ETHICS AND CONDUCT (APR 2010)

FAR 52.204-2 SECURITY REQUIREMENTS (AUG 1996)

FAR 52.204-9 PERSONAL IDENTITY VERIFICATION OF CONTRACTOR PERSONNEL (SEP 2007)

FAR 52.222-41 SERVICE CONTRACT ACT OF 1965 (NOV 2007)

FAR 52.222-54 EMPLOYMENT ELIGIBILITY VERIFICATION (JAN 2009)

FAR 52.223-11 OZONE-DEPLETING SUBSTANCES (MAY 2001)

FAR 52.227-19 COMMERCIAL COMPUTER SOFTWARE LICENSE (DEC 2007)

FAR 52.245-1 GOVERNMENT PROPERTY (JUNE 2007)

FAR 52.203-11 CERTIFICATION AND DISCLOSURE REGARDING PAYMENTS TO INFLUENCE CERTAIN TRANSACTIONS (SEP 2007)

FAR 52.209-5 CERTIFICATION RESPONSIBILITY MATTERS (APR 2010)

FAR 52.222-22 PREVIOUS CONTRACTS AND COMPLIANCE REPORTS (FEB 1999)

FAR 52.222-25 AFFIRMATIAVE ACTION COMPLIANCE (APR 1984)

FAR 52.227-14 RIGHTS IN DATA - GENERAL (DEC 2007)

FAR 52.232-7 PAYMENTS UNDER TIME-AND-MATERIALS AND LABOR-HOUR CONTRACTS (FEB 2007)

FAR 52.234-1 INDUSTRIAL RESOURCES DEVELOPED UNDER DEFENSE PRODUCTION ACT TITLE III (DEC 1994)

FAR 52.242-13 BANKRUPTCY (JUL 1995)

FAR 52.242-15 STOP-WORK ORDER (AUG 1989)

FAR 52.243-3 CHANGES - TIME-AND-MATERIALS OR LABOR-HOURS (SEP 2000)

FAR 52.246-6 INSPECTION TIME-AND-MATERIAL AND LABOR-HOUR (MAY 2001)

FAR 52.249-6 TERMINATION (COST-REIMBURSEMENT) (MAY 2004)

FAR 52.249-14 EXCUSABLE DELAYS (APR 1984)

FAR 52.222-36 AFFIRMATIVE ACTION FOR WORKERS WITH DISABILITIES (JUN 1998)

FAR 52.203-6 RESTRICTIONS ON SUBCONTRACTOR SALES TO THE GOVERNMENT (SEP 2006)

FAR 52.215-14 INTEGRITY OF UNIT PRICES (OCT 1997)

FAR 52.215-23 LIMITATION ON PASS-THROUGH CHARGES (OCT 2009)

FAR 52.222-37 EMPLOYMENT REPORTS ON SPECIAL DISABLED VETERANS, VETERANS OF THE VIETNAM ERA, AND OTHER ELIGIBLE VETERANS (SEP 2006)

FAR 52.223-14 TOXIC CHEMICAL RELEASE REPORTING (AUG 2003)

FAR 52.227-2 NOTICE AND ASSISTANCE REGARDING PATENT AND COPYRIGHT INFRINGEMENT (DEC 2007)

FAR 52.248-1 VALUE ENGINEERING (FEB 2000)

FAR 52.219-9 SMALL BUSINESS SUBCONTRACTING PLAN (APR 2008)

FAR 52.215-12 SUBCONTRACTOR COST OR PRICING DATA (OCT 1997)

FAR 52.215-13 SUBCONTRACTOR COST OR PRICING DATA - MODIFICATIONS (OCT 1997)

FAR 52.203-14 DISPLAY OF HOTLINE POSTER(S) (DEC 2007)

FAR 52.215-10 PRICE REDUCTION FOR DEFECTIVE COST OR PRICING DATA (OCT 1997)

FAR 52.215-11 PRICE REDUCTION FOR DEFECTIVE COST OR PRICING DATA - MODIFICATIONS (OCT 1997)

FAR 52.215-15 PENSION ADJUSTMENTS AND ASSET REVERSIONS (OCT 2004)

FAR 52.215-16 FACILITIES CAPITAL COST OF MONEY (JUN 2003)

FAR 52.215-17 WAIVER OF FACILITIES CAPITAL COST OF MONEY (OCT 1997)

FAR 52.215-18 REVERSION OR ADJUSTMENT OF PLANS FOR POST-RETIREMENT BENEFITS (PRB) OTHER THAN PENSIONS (JUL 2005)

FAR 52.215-19 NOTIFICATION OF OWNERSHIP CHANGES (OCT 1997)

FAR 52.216-7 ALLOWABLE COST AND PAYMENT (DEC 2002)

FAR 52.222-4 CONTRACT WORK HOURS AND SAFETY STANDARDS ACT - OVERTIME COMPENSATION (JUL 2005)

FAR 52.223-3 HAZARDOUS MATERIAL IDENTIFICATION AND MATERIAL SAFETY DATA (JAN 1997)

FAR 52.223-7 NOTICE OF RADIOACTIVE MATERIALS (JAN 1997)

FAR 52.227-1 AUTHORIZATION AND CONSENT (DEC 2007)

FAR 52.227-9 REFUND OF ROYALTIES (APR 1984)

FAR 52.227-10 FILING OF PATENT APPLICATIONS-CLASSIFIED SUBJECT MATTER (DEC 2007)

FAR 52.227-11 PATENT RIGHTS-OWNERSHIP BY THE CONTRACTOR (SHORT FORM) (DEC 2007)

FAR 52.228-5 INSURANCE – WORK ON A GOVERNMENT INSTALLATION (JAN 1997)

FAR 52.230-2 COST ACCOUNTING STANDARDS (OCT 2008)

FAR 52.230-3 DISCLOSURE AND CONSISTENCY OF COST ACCOUNTING PRACTICES (OCT 2008)

FAR 52.230-6 ADMINISTRATION OF COST ACCOUNTING STANDARDS (MAR 2008)

FAR 52.233-3 PROTEST AFTER AWARD (AUG 1996)

FAR 52.237-2 PROTECTION OF GOVERNMENT BUILDINGS, EQUIPMENT AND VEGETATION (APR 1984)

FAR 52.243-6 CHANGE ORDER ACCOUNTING (APR 1984)

FAR 52.234-1 INDUSTRIAL RESOURCES DEVELOPED UNDER DEFENSE PRODUCTION ACT TITLE III (DEC 1994)

FAR 52.243-1 CHANGES - FIXED PRICE (AUG 1987)

FAR 52.246-2 INSPECTION OF SUPPLIES - FIXED PRICE (AUG 1996)

FAR 52.246-4 INSPECTION OF SERVICES - FIXED PRICE (AUG 1996)

FAR 52.249-2 TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (FIXED-PRICE) (MAY 2004)

FAR 52.249-8 DEFAULT (FIXED-PRICE SUPPLY AND SERVICE) (APR 1984)

# Wil-Sites 0603, 0610, 0619, 0621, 0632, 0634, 0635 - 02.22

Final Audit Report 2022-02-21

| | |
|---|---|
| Created: | 2022-02-17 |
| By: | Ryan Oakes (ryan.oakes@84lumber.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAMafnAolF-W37Nx2DE7JXzZ4fwOsOsmtN |

## "Wil-Sites 0603, 0610, 0619, 0621, 0632, 0634, 0635 - 02.22" History

Document created by Ryan Oakes (ryan.oakes@84lumber.com)
2022-02-17 - 8:13:56 PM GMT- IP address: 50.206.42.28

Document emailed to Chad Calcagno (chad@wilsitestrucklines.com) for signature
2022-02-17 - 8:14:24 PM GMT

Email viewed by Chad Calcagno (chad@wilsitestrucklines.com)
2022-02-17 - 8:37:35 PM GMT- IP address: 96.11.78.75

Document e-signed by Chad Calcagno (chad@wilsitestrucklines.com)
Signature Date: 2022-02-17 - 8:38:00 PM GMT - Time Source: server- IP address: 96.11.78.75

Document emailed to Bradley J Sites (bsites@dwliftsales.com) for signature
2022-02-17 - 8:38:02 PM GMT

Email viewed by Bradley J Sites (bsites@dwliftsales.com)
2022-02-17 - 8:40:13 PM GMT- IP address: 96.11.78.75

Document e-signed by Bradley J Sites (bsites@dwliftsales.com)
Signature Date: 2022-02-17 - 8:40:50 PM GMT - Time Source: server- IP address: 96.11.78.75

Document emailed to Mitchell D. Feldman 2-18-22 (mitch.feldman@84lumber.com) for signature
2022-02-17 - 8:40:51 PM GMT

Email viewed by Mitchell D. Feldman 2-18-22 (mitch.feldman@84lumber.com)
2022-02-17 - 9:46:28 PM GMT- IP address: 104.28.78.137

Document e-signed by Mitchell D. Feldman 2-18-22 (mitch.feldman@84lumber.com)
Signature Date: 2022-02-18 - 9:43:15 PM GMT - Time Source: server- IP address: 24.3.215.229

Document emailed to Denise Bastian (denise.bastian@84lumber.com) for signature
2022-02-18 - 9:43:17 PM GMT

Email viewed by Denise Bastian (denise.bastian@84lumber.com)
2022-02-21 - 1:27:26 PM GMT- IP address: 50.206.42.28

Document e-signed by Denise Bastian (denise.bastian@84lumber.com)
Signature Date: 2022-02-21 - 1:27:56 PM GMT - Time Source: server- IP address: 50.206.42.28

Agreement completed.
2022-02-21 - 1:27:56 PM GMT

ACORD

WILSITE-01 D1NALLEN

# CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY) 8/3/2021

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

PRODUCER
AssuredPartners Transportation
285 Cozzins St.
Columbus, OH 43215

CONTACT NAME: Lori Donaugh
PHONE (A/C, No, Ext): (614) 545-2952 FAX (A/C, No): (440) 356-2126
E-MAIL ADDRESS: lori.donaugh@AssuredPartners.com

| INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|
| INSURER A : Great West Casualty Company | 11371 |
| INSURER B : | |
| INSURER C : | |
| INSURER D : | |
| INSURER E : | |
| INSURER F : | |

INSURED
Wil Sites Truck Lines, LLC
900 Buckeye Park Rd
Columbus, OH 43207

**COVERAGES** CERTIFICATE NUMBER: REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | X COMMERCIAL GENERAL LIABILITY; CLAIMS-MADE; X OCCUR; GEN'L AGGREGATE LIMIT APPLIES PER: X POLICY; PRO-JECT; LOC; OTHER | | | MCP24999G | 8/1/2021 | 8/1/2022 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | | | | | | | STOP GAP | $ 1,000,000 |
| A | AUTOMOBILE LIABILITY: X ANY AUTO; OWNED AUTOS ONLY; SCHEDULED AUTOS; HIRED AUTOS ONLY; NON-OWNED AUTOS ONLY | | | MCP24999G | 8/1/2021 | 8/1/2022 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | UMBRELLA LIAB; OCCUR; EXCESS LIAB; CLAIMS-MADE; DED; RETENTION $ | | | | | | EACH OCCURRENCE | $ |
| | | | | | | | AGGREGATE | $ |
| | | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y/N; ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH); If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | | | | PER STATUTE; OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| A | Hired Phys Damage | | | MCP24999G | 8/1/2021 | 8/1/2022 | | 150,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
84 Lumber Company is listed as additional insured

EXHIBIT
tabbles
B

**CERTIFICATE HOLDER**

84 Lumber Company
1019 Route 519
Eighty Four, PA 15330

**CANCELLATION**

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.

AUTHORIZED REPRESENTATIVE


© 1988-2015 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD

POLICY NUMBER: MCP24999G

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The provisions of the Coverage Form apply unless modified by this endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| | |
|---|---|
| Named Insured<br>WIL-SITES TRUCK LINES LLC | Endorsement Effective<br>AUGUST 1 2021 |
| GREAT WEST CASUALTY COMPANY | Endorsement Number |

ASSUREDPARTNERS OF OHIO LLC

**SCHEDULE**

**Policy Expiration Date:** AUGUST 1 2022

| |
|---|
| **Name Of Additional Insured Person(s) Or Organization(s):**<br>84 LUMBER CO<br>1019 ROUTE 519<br>EIGHTY FOUR PA 15330 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** Who is an Insured is changed to include as an additional insured the person(s) or organization(s) shown in the SCHEDULE on this endorsement but only to the extent that the liability arises:

1. In the performance of your ongoing operations; or
2. In connection with your premises owned by or rented to you;

and only to the extent that the additional insured is vicariously liable for your conduct.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and
2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** The coverage provided by this endorsement shall be subject to all the terms, conditions, and exclusions of the policy and all endorsements attached thereto.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to Limits of Insurance:

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or
2. Available under the applicable limits of insurance;

whichever is less.

This endorsement shall not increase the applicable limits of insurance.

 Includes copyrighted material Insurance Services Office, Inc. with its permission. 

ACORD

WWSTRUC-01 D1TNUTTALL

# CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY) 8/3/2021

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| | |
|---|---|
| PRODUCER<br>AssuredPartners of Ohio LLC- Granville<br>596 Newark-Granville Road<br>Granville, OH 43023 | CONTACT NAME: Terri Nuttall<br>PHONE (A/C, No, Ext): (740) 321-1360 2983 FAX (A/C, No): (740) 321-1369<br>E-MAIL ADDRESS: Terri.Nuttall@assuredpartners.com |
| | INSURER(S) AFFORDING COVERAGE — NAIC # |
| | INSURER A : National Indemnity Company — 20087 |
| INSURED<br>WWS Truck Lines, LLC<br>900 Buckeye Park Rd<br>Columbus, OH 43207-2591 | INSURER B :<br>INSURER C :<br>INSURER D :<br>INSURER E :<br>INSURER F : |

COVERAGES CERTIFICATE NUMBER: REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | COMMERCIAL GENERAL LIABILITY<br>CLAIMS-MADE / OCCUR<br>GEN'L AGGREGATE LIMIT APPLIES PER: POLICY / PRO-JECT / LOC<br>OTHER: | | | | | | EACH OCCURRENCE | $ |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | | | | | | | GENERAL AGGREGATE | $ |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | | | | | | | | $ |
| A | AUTOMOBILE LIABILITY<br>ANY AUTO<br>OWNED AUTOS ONLY / X SCHEDULED AUTOS<br>HIRED AUTOS ONLY / NON-OWNED AUTOS ONLY | X | | 73APB004871 | 8/1/2021 | 8/1/2022 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | UMBRELLA LIAB / OCCUR<br>EXCESS LIAB / CLAIMS-MADE<br>DED / RETENTION $ | | | | | | EACH OCCURRENCE | $ |
| | | | | | | | AGGREGATE | $ |
| | | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y/N<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH)<br>If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | | | | PER STATUTE / OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
84 Lumber Company is included as an Additional Insured by endorsement

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| 84 Lumber Company<br>1019 Route 519<br>Eighty Four, PA 15330 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br>AUTHORIZED REPRESENTATIVE<br>Mark N. Coleman |

 © 1988-2015 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD

POLICY NUMBER: MCP24999G

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTO COVERAGE PART

The provisions of the Coverage Form apply unless modified by this endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| | |
|---|---|
| Named Insured<br>WIL-SITES TRUCK LINES LLC | Endorsement Effective<br>AUGUST 1 2021 |
| GREAT WEST CASUALTY COMPANY | Endorsement Number |

ASSUREDPARTNERS OF OHIO LLC

SCHEDULE

Policy Expiration Date: AUGUST 1 2022

Name of Additional Insured:

84 LUMBER CO
1019 ROUTE 519
EIGHTY FOUR PA 15330

Description of Covered "Auto(s)":

APPLIES TO ALL TRUCKS, TRACTORS & TRAILERS OWNED, LEASED, HIRED, RENTED, OR BORROWED WHICH ARE USED BY THE NAMED INSURED

A. Section II - **Covered Autos Liability Coverage - Who Is an Insured** is changed to include as an "insured" the person or organization shown in the SCHEDULE on this endorsement only if they are liable for the conduct of an "insured" shown in the **Who is an Insured** provisions and only to the extent of that liability.

B. Coverage provided by this endorsement applies to "auto(s)" described in the SCHEDULE on this endorsement.

C. The coverage provided by this endorsement ends when the Additional Insured is not liable for your conduct or the Policy Expiration Date, whichever occurs first.

D. The Additional Insured shown in the SCHEDULE on this endorsement is covered for an amount up to the Limit of Insurance required in an agreement with you or the policy's Limit of Insurance, whichever is less.

E. Any coverage provided by this endorsement is excess over any other valid and collectible insurance available to the Additional Insured whether primary, excess, contingent, or on any other basis unless the contract or agreement you have with them requires that this insurance be primary.

 Includes copyrighted material of Insurance Services Office, Inc., with its permission. 

POLICY NUMBER: MCP24999G

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTO COVERAGE PART

The provisions of the Coverage Form apply unless modified by this endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| | |
|---|---|
| Named Insured<br>WIL-SITES TRUCK LINES LLC | Endorsement Effective<br>AUGUST 1 2021 |
| GREAT WEST CASUALTY COMPANY | Endorsement Number |

ASSUREDPARTNERS OF OHIO LLC

SCHEDULE

Policy Expiration Date: AUGUST 1 2022

Name of Additional Insured:

COMMONWEALTH OF PA
PO BOX 2671
HARRISBURG PA 17105

Description of Covered "Auto(s)":

APPLIES TO ALL TRUCKS, TRACTORS & TRAILERS OWNED, LEASED, HIRED, RENTED, OR BORROWED WHICH ARE USED BY THE NAMED INSURED

A. Section II - **Covered Autos Liability Coverage - Who is an Insured** is changed to include as an "insured" the person or organization shown in the SCHEDULE on this endorsement only if they are liable for the conduct of an "insured" shown in the **Who is an Insured** provisions and only to the extent of that liability.

B. Coverage provided by this endorsement applies to "auto(s)" described in the SCHEDULE on this endorsement.

C. The coverage provided by this endorsement ends when the Additional Insured is not liable for your conduct or the Policy Expiration Date, whichever occurs first.

D. The Additional Insured shown in the SCHEDULE on this endorsement is covered for an amount up to the Limit of Insurance required in an agreement with you or the policy's Limit of Insurance, whichever is less.

E. Any coverage provided by this endorsement is excess over any other valid and collectible insurance available to the Additional Insured whether primary, excess, contingent, or on any other basis unless the contract or agreement you have with them requires that this insurance be primary.

 Includes copyrighted material of Insurance Services Office, Inc., with its permission. 

ACORD

WILSITE-01 D1NALLEN

# CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY) 8/3/2021

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

**PRODUCER**
AssuredPartners Transportation
285 Cozzins St.
Columbus, OH 43215

CONTACT NAME: Lori Donaugh
PHONE (A/C, No, Ext): (614) 545-2952 FAX (A/C, No): (440) 356-2126
E-MAIL ADDRESS: lori.donaugh@AssuredPartners.com

| INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|
| INSURER A : Great West Casualty Company | 11371 |
| INSURER B : | |
| INSURER C : | |
| INSURER D : | |
| INSURER E : | |
| INSURER F : | |

**INSURED**
Wil Sites Truck Lines, LLC
900 Buckeye Park Rd
Columbus, OH 43207

**COVERAGES** CERTIFICATE NUMBER: REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | X COMMERCIAL GENERAL LIABILITY; CLAIMS-MADE / X OCCUR | | | MCP24999G | 8/1/2021 | 8/1/2022 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: X POLICY / PRO-JECT / LOC | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | OTHER: | | | | | | STOP GAP | $ 1,000,000 |
| A | AUTOMOBILE LIABILITY | | | MCP24999G | 8/1/2021 | 8/1/2022 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | X ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | OWNED AUTOS ONLY / SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | HIRED AUTOS ONLY / NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | UMBRELLA LIAB / OCCUR | | | | | | EACH OCCURRENCE | $ |
| | EXCESS LIAB / CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | DED / RETENTION $ | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y/N | | | | | | PER STATUTE / OTH-ER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | N/A | | | | | E.L. EACH ACCIDENT | $ |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| A | Hired Phys Damage | | | MCP24999G | 8/1/2021 | 8/1/2022 | | 150,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
84 Lumber Company is listed as additional insured

**CERTIFICATE HOLDER**

84 Lumber Company
1019 Route 519
Eighty Four, PA 15330

**CANCELLATION**

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.

AUTHORIZED REPRESENTATIVE


© 1988-2015 ACORD CORPORATION. All rights reserved.
The ACORD name and logo are registered marks of ACORD

ACORD

WIL-TRU-01 CHICKMAN

# CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY) 12/8/2021

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | |
|---|---|
| Cincinnati/ AssuredPartners NL<br>5905 E. Galbraith Rd., Suite 5000<br>Cincinnati, OH 45236 | CONTACT NAME: Colleen Hickman<br>PHONE (A/C, No, Ext): FAX (A/C, No):<br>E-MAIL ADDRESS: colleen.hickman@assuredpartners.com |

| INSURED | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|
| Wil-Sites Truck Lines, LLC<br>900 Buckeye Park Road<br>Columbus, OH 43207 | INSURER A : Starstone National Insurance Company | 25496 |
| | INSURER B : | |
| | INSURER C : | |
| | INSURER D : | |
| | INSURER E : | |
| | INSURER F : | |

COVERAGES CERTIFICATE NUMBER: REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | COMMERCIAL GENERAL LIABILITY; CLAIMS-MADE; OCCUR; GEN'L AGGREGATE LIMIT APPLIES PER: POLICY; PRO-JECT; LOC; OTHER: | | | | | | EACH OCCURRENCE | $ |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | | | | | | | GENERAL AGGREGATE | $ |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | | | | | | | | $ |
| | AUTOMOBILE LIABILITY; ANY AUTO; OWNED AUTOS ONLY; SCHEDULED AUTOS; HIRED AUTOS ONLY; NON-OWNED AUTOS ONLY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | UMBRELLA LIAB; OCCUR; EXCESS LIAB; CLAIMS-MADE; DED; RETENTION $ | | | | | | EACH OCCURRENCE | $ |
| | | | | | | | AGGREGATE | $ |
| | | | | | | | | $ |
| A | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y/N; ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH); If yes, describe under DESCRIPTION OF OPERATIONS below | N / A | | T70220614 | 1/1/2022 | 1/1/2023 | X PER STATUTE; OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |
| | | | | | | | | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
Workers Compensation coverage applies in all states except monopolistic states.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| 84 Lumber Company<br>1019 Route 519<br>Eighty Four, PA 15330 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE<br>Matthew L. Mauller |


© 1988-2015 ACORD CORPORATION. All rights reserved.
The ACORD name and logo are registered marks of ACORD

WIL-TRU-01 CHICKMAN

ACORD

# CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY): 12/8/2021

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

**PRODUCER**
Cincinnati/ AssuredPartners NL
5905 E. Galbraith Rd., Suite 5000
Cincinnati, OH 45236

CONTACT NAME: Colleen Hickman
PHONE (A/C, No, Ext):
FAX (A/C, No):
E-MAIL ADDRESS: colleen.hickman@assuredpartners.com

| INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|
| INSURER A : Starstone National Insurance Company | 25496 |
| INSURER B : | |
| INSURER C : | |
| INSURER D : | |
| INSURER E : | |
| INSURER F : | |

**INSURED**
Wil-Sites Truck Lines, LLC
900 Buckeye Park Road
Columbus, OH 43207

**COVERAGES** CERTIFICATE NUMBER: REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | COMMERCIAL GENERAL LIABILITY; CLAIMS-MADE; OCCUR; GEN'L AGGREGATE LIMIT APPLIES PER: POLICY; PRO-JECT; LOC; OTHER: | | | | | | EACH OCCURRENCE | $ |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | | | | | | | GENERAL AGGREGATE | $ |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | | | | | | | | $ |
| | AUTOMOBILE LIABILITY; ANY AUTO; OWNED AUTOS ONLY; SCHEDULED AUTOS; HIRED AUTOS ONLY; NON-OWNED AUTOS ONLY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | UMBRELLA LIAB; OCCUR; EXCESS LIAB; CLAIMS-MADE; DED; RETENTION $ | | | | | | EACH OCCURRENCE | $ |
| | | | | | | | AGGREGATE | $ |
| | | | | | | | | $ |
| A | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y/N; ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH); If yes, describe under DESCRIPTION OF OPERATIONS below | N / A | | T70220614 | 1/1/2022 | 1/1/2023 | X PER STATUTE; OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |
| | | | | | | | | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

**CERTIFICATE HOLDER**

Modern Masonry Products

**CANCELLATION**

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.

AUTHORIZED REPRESENTATIVE
Matthew L. Moeller

ACORD 25 (2016/03)

© 1988-2015 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD

WIL-TRU-01 CHICKMAN

ACORD

# CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY): 12/8/2021

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | |
|---|---|
| Cincinnati/ AssuredPartners NL<br>5905 E. Galbraith Rd., Suite 5000<br>Cincinnati, OH 45236 | CONTACT NAME: Colleen Hickman<br>PHONE (A/C, No, Ext): FAX (A/C, No):<br>E-MAIL ADDRESS: colleen.hickman@assuredpartners.com |

| INSURED | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|
| Wil-Sites Truck Lines, LLC<br>900 Buckeye Park Road<br>Columbus, OH 43207 | INSURER A : Starstone National Insurance Company | 25496 |
| | INSURER B : | |
| | INSURER C : | |
| | INSURER D : | |
| | INSURER E : | |
| | INSURER F : | |

**COVERAGES** **CERTIFICATE NUMBER:** **REVISION NUMBER:**

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | COMMERCIAL GENERAL LIABILITY<br>CLAIMS-MADE / OCCUR<br>GEN'L AGGREGATE LIMIT APPLIES PER: POLICY / PRO-JECT / LOC<br>OTHER: | | | | | | EACH OCCURRENCE | $ |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | | | | | | | GENERAL AGGREGATE | $ |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | | | | | | | | $ |
| | AUTOMOBILE LIABILITY<br>ANY AUTO<br>OWNED AUTOS ONLY / SCHEDULED AUTOS<br>HIRED AUTOS ONLY / NON-OWNED AUTOS ONLY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | UMBRELLA LIAB / OCCUR<br>EXCESS LIAB / CLAIMS-MADE<br>DED / RETENTION $ | | | | | | EACH OCCURRENCE | $ |
| | | | | | | | AGGREGATE | $ |
| | | | | | | | | $ |
| A | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y/N<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH)<br>If yes, describe under DESCRIPTION OF OPERATIONS below | N / A | | T70220614 | 1/1/2022 | 1/1/2023 | X PER STATUTE / OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| St. Joe Brick Works Inc. | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE<br>Matthew L. Moodle |


© 1988-2015 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD

Ohio | Bureau of Workers' Compensation
30 W. Spring St.
Columbus OH 43215-2256

Governor Mike DeWine
Administrator/CEO Stephanie McCloud
www.bwc.ohio.gov
1-800-644-6292

04/25/2022
Date Mailed

#BWNFVSQ
#XX20502295#

WIL-SITES TRUCK LINES LLC
900 BUCKEYE PARK RD
COLUMBUS OH 43207-2591

**IMPORTANT DOCUMENT: REMOVE AND POST**

Ohio | Bureau of Workers' Compensation

30 W. Spring St.
Columbus, OH 43215

## Certificate of Ohio Workers' Compensation

This certifies that the employer listed below participates in the Ohio State Insurance Fund as required by law. Therefore, the employer is entitled to the rights and benefits of the fund for the period specified. This certificate is only valid if premiums and assessments, including installments, are paid by the applicable due date. To verify coverage, visit www.bwc.ohio.gov, or call 1-800-644-6292.

This certificate must be conspicuously posted.

Policy number and employer
01634999

WIL-SITES TRUCK LINES LLC
900 BUCKEYE PARK RD
COLUMBUS OH 43207-2591

Period Specified Below
07/01/2022 to 07/01/2023

BUREAU OF WORKERS' COMPENSATION

www.bwc.ohio.gov
Issued by: BWC

Stephanie McCloud
Administrator/CEO

You can reproduce this certificate as needed.

## Ohio Bureau of Workers' Compensation

### Required Posting

Section 4123.54 of the Ohio Revised Code requires notice of rebuttable presumption. Rebuttable presumption means an employee may dispute or prove untrue the presumption (or belief) that alcohol, marihuana or a controlled substance not prescribed by the employee's physician is the proximate cause (main reason) of the work-related injury.

The burden of proof is on the employee to prove the presence of alcohol, marihuana or a controlled substance was not the proximate cause of the work-related injury. An employee who tests positive or refuses to submit to chemical testing may be disqualified for compensation and benefits under the Workers' Compensation Act.

Ohio | Bureau of Workers' Compensation

You must post this language with the Certificate of Ohio Workers' Compensation.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF MONROE

---------------------------------------------------------------x

JAMES MAYNARD, JR.,

Plaintiff/Petitioner,

- against -

Index No. E2025008258

84 LUMBER COMPANY and
JAMES BARRY,

Defendant/Respondent.

---------------------------------------------------------------x

**NOTICE OF ELECTRONIC FILING**
**(Mandatory Case)**
(Uniform Rule § 202.5-bb)

**You have received this Notice because:**

1) The Plaintiff/Petitioner, whose name is listed above, has filed this case using the New York State Courts E-filing system ("NYSCEF"), and

2) You are a Defendant/Respondent (a party) in this case.

- **If you are represented by an attorney:**
  Give this Notice to your attorney. (Attorneys: see "Information for Attorneys" pg. 2).

- **If you are not represented by an attorney:**
  **You will be served with all documents in paper and you must serve and file your documents in paper, unless you choose to participate in e-filing.**

  **If you choose to participate in e-filing, you must have access to a computer and a scanner or other device to convert documents into electronic format, a connection to the internet, and an e-mail address to receive service of documents.**

  The **benefits of participating in e-filing** include:

  - serving and filing your documents electronically
  - free access to view and print your e-filed documents
  - limiting your number of trips to the courthouse
  - paying any court fees on-line (credit card needed)

**To register for e-filing or for more information about how e-filing works:**

- visit: www.nycourts.gov/efile-unrepresented or
- contact the Clerk's Office or Help Center at the court where the case was filed. Court contact information can be found at www.nycourts.gov

EXHIBIT
tabbies
C

To find legal information to help you represent yourself visit www.nycourthelp.gov

**Information for Attorneys**
**(E-filing is Mandatory for Attorneys)**

An attorney representing a party who is served with this notice must either:

1) immediately record his or her representation within the e-filed matter on the NYSCEF site www.nycourts.gov/efile ; or

2) file the Notice of Opt-Out form with the clerk of the court where this action is pending and serve on all parties. Exemptions from mandatory e-filing are limited to attorneys who certify in good faith that they lack the computer hardware and/or scanner and/or internet connection or that they lack (along with all employees subject to their direction) the knowledge to operate such equipment. [Section 202.5-bb(e)]

For additional information about electronic filing and to create a NYSCEF account, visit the NYSCEF website at www.nycourts.gov/efile or contact the NYSCEF Resource Center (phone: 646-386-3033; e-mail: efile@nycourts.gov).

Dated: April 16, 2025

Stephen A. Segar, Esq.
Name
Segar & Sciortino PLLC
Firm Name

400 Meridian Centre, Suite 320
Rochester, New York 14618
Address
(585) 475-1100
Phone
ssegar@segarlaw.com
E-Mail

To: 84 LUMBER COMPANY
JAMES BARRY

Type text here

6/6/18

STATE OF NEW YORK
SUPREME COURT COUNTY OF MONROE

---

**JAMES MAYNARD, JR.,**

Plaintiff,

v.

**84 LUMBER COMPANY and JAMES BARRY,**

Defendants.

**SUMMONS**

Index No.: E2025008258

---

**TO THE ABOVE NAMED DEFENDANTS:**

**YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the plaintiff's attorneys within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default.

Plaintiff designates Monroe County as the place of trial.

The basis of venue is the county where the incident complained of occurred.

The incident complained of occurred at 1170 North Greece Road, Town of Greece, County of Monroe, State of New York

Dated: April 3, 2025
Rochester, New York

**SEGAR & SCIORTINO PLLC**
Stephen A. Segar, Esq.
Attorney(s) for Plaintiff
Office and Post Office Address:
400 Meridian Centre, Suite 320
Rochester, New York 14618
Telephone No.: (585) 475-1100

TO: **84 LUMBER COMPANY**
c/o New York State Secretary of State

**JAMES BARRY**
c/o 84 Lumber Company
1170 North Greece Road
Rochester, New York 14626

STATE OF NEW YORK
SUPREME COURT COUNTY OF MONROE

**JAMES MAYNARD, JR.,**

Plaintiff,

v.

**84 LUMBER COMPANY and JAMES BARRY,**

Defendants.

**VERIFIED COMPLAINT**

Index No.: E2025008258

Plaintiff James Maynard, Jr., per his attorneys Segar & Sciortino PLLC, complaining of the defendants, alleges:

1. Upon information and belief and at all times hereinafter mentioned, defendant 84 Lumber Company (hereinafter referred to as "84 Lumber") was and is a foreign limited partnership organized and existing under and by virtue of the laws of Pennsylvania and authorized to do business in New York State.

2. Upon information and belief and at all times hereinafter mentioned, defendant 84 Lumber's principal place of business was and presently still is located at 1019 Route 519, City of Eighty Four, County of Washington, State of Pennsylvania.

3. Upon information and belief and at all times hereinafter mentioned, defendant 84 Lumber owned and operated commercial premises located at 1170 North Greece Road, Town of Greece, County of Monroe, State of New York.

4. Upon information and belief and at all times hereinafter mentioned, defendant James Barry was an employee of defendant 84 Lumber.

5. Upon information and belief and at all times hereinafter mentioned, defendant James Barry was acting in the course of and within the scope of his employment with defendant 84 Lumber.

6. At all times hereinafter mentioned, plaintiff was employed by Wil-Sites Truck Lines, LLC.

7. On or about July 27, 2022 at approximately 2:30 p.m., plaintiff, while engaged in the scope of said employment, made a delivery of wood products to 84 Lumber at said Town of Greece location using a large flatbed truck.

8. As said delivery of wood products was being unloaded by defendant James Barry, Mr. Barry, while using a forklift, pushed a large piece or pieces of lumber from the top of the load on said flatbed truck onto plaintiff, striking him about the head, face, shoulders and neck.

9. As a result of said incident, plaintiff sustained serious injuries as defined pursuant to New York State Insurance Law §5102(d), including but not limited to his head, neck, left shoulder, left knee, left foot, left wrist, left forearm and post-traumatic stress disorder.

10. As a result of said incident, plaintiff sustained economic loss in excess of basic economic loss as defined pursuant to New York State Insurance Law §5102(a).

11. The incident and plaintiff's resulting injuries were caused by the careless, negligent and/or reckless actions of defendant James Barry also attributable to his employer defendant 84 Lumber.

12. By reason of the foregoing, plaintiff was rendered disabled and was caused to sustain injuries which may be permanent in nature, was disabled from working resulting in loss of income and may suffer future loss of income, was compelled to undergo medical care and will require further medical care and has suffered and continues to suffer mental anguish and pain and has sustained damages and is entitled to collect same against the defendants.

13. By reason of the foregoing, plaintiff has been damaged in excess of the jurisdictional limits of all lower courts in which this action may otherwise have been brought.

**WHEREFORE,** plaintiff demands judgment against the defendants together with costs, disbursements and such other and further relief the court deems just and proper.

DATED: April 3, 2025

**SEGAR & SCIORTINO PLLC**
Stephen A. Segar, Esq.
Attorney(s) for Plaintiff
Office and Post Office Address:
400 Meridian Centre, Suite 320
Rochester, New York 14618
Telephone No.: (585) 475-1100

## VERIFICATION

STATE OF NEW YORK )
COUNTY OF MONROE ) ss:

James Maynard, Jr., being duly sworn, deposes and says that deponent is the plaintiff in the within action, that deponent has read the foregoing complaint and knows the contents thereof, that the same is true to deponent's own knowledge, except as to those matters therein stated to be alleged on information and belief, and that as to those matters deponent believes them to be true.

James Maynard, Jr.

Sworn to before me this
3rd day of April, 2025.

NOTARY PUBLIC

STEPHEN A. SEGAR
Notary Public, State of New York
No. 02SE4886787
Qualified in Monroe County
Commission Expires Feb 17, 20 27

BOND SCHOENECK & KING

350 Linden Oaks, Third Floor | Rochester, NY 14625-2825 | bsk.com

CLAIRE BOPP, ESQ.
cbopp@bsk.com
P: 585.362.4868
F: 585.362.4891

May 19, 2025

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Wil-Sites Truck Lines, LLC
900 Buckeye Park Road
Columbus, OH 43207

Re: *Tender of Complaint of James Maynard, Jr. Pursuant to Indemnification Agreement*

To Whom It May Concern:

We represent 84 Lumber Company and James Barry. We write to provide notice and tender the defense of a claim asserted against the foregoing parties arising from personal injuries allegedly sustained by James Maynard, Jr. on July 27, 2022 while making a delivery of wood products to 84 Lumber store located at 1170 North Greece Road, Rochester, New York 14626. As you may be aware, Mr. Maynard commenced an action in Supreme Court, Monroe County alleging personal injuries arising from the incident. A copy of the Summons and Complaint is enclosed.

This letter is being sent pursuant to the Independent Contractor Hauling Agreement ("the Agreement") executed by Wil-Sites Truck Lines ("Wil-Sites") and 84 Lumber Company ("84") on or about February 14, 2022. Pursuant to Section X of the Agreement, Wil-Sites is required to indemnify, hold harmless and defend 84 for claims and demands for damages resulting from bodily injury, sickness, disease or death sustained by any person, including Wil-Sites and its employees, arising out of or in any way connected with the performance of the Work by Wil-Sites, or by Wil-Site's employees, whether or not such damage is caused or alleged to be caused in whole or in part by the negligence of 84. A copy of the Agreement is enclosed herewith.

Section XI of the Agreement also required Wil-Sites to procure general liability insurance naming 84 as an additional insured. Please immediately report this claim to your primary general liability carriers, excess carriers, and other carriers whose policies cover 84.

Please provide written acknowledgement within ten (10) days of your receipt of this letter and confirm that: (i) Wil-Sites will be providing the Indemnitees defense and indemnification as required by the Agreement; and (ii) Wil-Sites has placed its appropriate liability carrier(s) on notice of this claim. If you need any additional information, or if you have any questions regarding the matter, please feel free to contact me.



EXHIBIT
tabbles
D

We look forward to your prompt attention to this matter. In the meantime, we have and will continue to take appropriate steps to defend the Indemnitees in this matter, and we will seek reimbursement of all costs and fees associated with that defense.

Very truly yours,

BOND, SCHOENECK & KING, PLLC

Claire A. Bopp

Claire Bopp

CGP/slm
Enclosures

STATE OF NEW YORK
SUPREME COURT COUNTY OF MONROE

**JAMES MAYNARD, JR.,**

Plaintiff,

v.

**84 LUMBER COMPANY and JAMES BARRY,**

Defendants.

**SUMMONS**

Index No.:____________

**TO THE ABOVE NAMED DEFENDANTS:**

**YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the plaintiff's attorneys within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default.

Plaintiff designates Monroe County as the place of trial.

The basis of venue is the county where the incident complained of occurred.

The incident complained of occurred at 1170 North Greece Road, Town of Greece, County of Monroe, State of New York

Dated: April 3, 2025
Rochester, New York

**SEGAR & SCIORTINO PLLC**
Stephen A. Segar, Esq.
Attorney(s) for Plaintiff
Office and Post Office Address:
400 Meridian Centre, Suite 320
Rochester, New York 14618
Telephone No.: (585) 475-1100

TO: **84 LUMBER COMPANY**
c/o New York State Secretary of State

**JAMES BARRY**
c/o 84 Lumber Company
1170 North Greece Road
Rochester, New York 14626

STATE OF NEW YORK
SUPREME COURT COUNTY OF MONROE

---

**JAMES MAYNARD, JR.,**

Plaintiff,

v.

**84 LUMBER COMPANY and JAMES BARRY,**

Defendants.

**VERIFIED COMPLAINT**

Index No.:____________

---

Plaintiff James Maynard, Jr., per his attorneys Segar & Sciortino PLLC, complaining of the defendants, alleges:

1. Upon information and belief and at all times hereinafter mentioned, defendant 84 Lumber Company (hereinafter referred to as "84 Lumber") was and is a foreign limited partnership organized and existing under and by virtue of the laws of Pennsylvania and authorized to do business in New York State.

2. Upon information and belief and at all times hereinafter mentioned, defendant 84 Lumber's principal place of business was and presently still is located at 1019 Route 519, City of Eighty Four, County of Washington, State of Pennsylvania.

3. Upon information and belief and at all times hereinafter mentioned, defendant 84 Lumber owned and operated commercial premises located at 1170 North Greece Road, Town of Greece, County of Monroe, State of New York.

4. Upon information and belief and at all times hereinafter mentioned, defendant James Barry was an employee of defendant 84 Lumber.

5. Upon information and belief and at all times hereinafter mentioned, defendant James Barry was acting in the course of and within the scope of his employment with defendant 84 Lumber.

6. At all times hereinafter mentioned, plaintiff was employed by Wil-Sites Truck Lines, LLC.

7. On or about July 27, 2022 at approximately 2:30 p.m., plaintiff, while engaged in the scope of said employment, made a delivery of wood products to 84 Lumber at said Town of Greece location using a large flatbed truck.

8. As said delivery of wood products was being unloaded by defendant James Barry, Mr. Barry, while using a forklift, pushed a large piece or pieces of lumber from the top of the load on said flatbed truck onto plaintiff, striking him about the head, face, shoulders and neck.

9. As a result of said incident, plaintiff sustained serious injuries as defined pursuant to New York State Insurance Law §5102(d), including but not limited to his head, neck, left shoulder, left knee, left foot, left wrist, left forearm and post-traumatic stress disorder.

10. As a result of said incident, plaintiff sustained economic loss in excess of basic economic loss as defined pursuant to New York State Insurance Law §5102(a).

11. The incident and plaintiff's resulting injuries were caused by the careless, negligent and/or reckless actions of defendant James Barry also attributable to his employer defendant 84 Lumber.

12. By reason of the foregoing, plaintiff was rendered disabled and was caused to sustain injuries which may be permanent in nature, was disabled from working resulting in loss of income and may suffer future loss of income, was compelled to undergo medical care and will require further medical care and has suffered and continues to suffer mental anguish and pain and has sustained damages and is entitled to collect same against the defendants.

13. By reason of the foregoing, plaintiff has been damaged in excess of the jurisdictional limits of all lower courts in which this action may otherwise have been brought.

**WHEREFORE**, plaintiff demands judgment against the defendants together with costs, disbursements and such other and further relief the court deems just and proper.

DATED: April 3, 2025

SEGAR & SCIORTINO PLLC
Stephen A. Segar, Esq.
Attorney(s) for Plaintiff
Office and Post Office Address:
400 Meridian Centre, Suite 320
Rochester, New York 14618
Telephone No.: (585) 475-1100

## VERIFICATION

STATE OF NEW YORK )
COUNTY OF MONROE ) ss:

James Maynard, Jr., being duly sworn, deposes and says that deponent is the plaintiff in the within action, that deponent has read the foregoing complaint and knows the contents thereof, that the same is true to deponent's own knowledge, except as to those matters therein stated to be alleged on information and belief, and that as to those matters deponent believes them to be true.

James Maynard, Jr.

Sworn to before me this
3rd day of April, 2025.

NOTARY PUBLIC

STEPHEN A. SEGAR
Notary Public, State of New York
No. 02SE4886787
Qualified In Monroe County
Commission Expires Feb 17, 20 27

84 LUMBER
Build on what we know.

# INDEPENDENT CONTRACTOR HAULING AGREEMENT

This Agreement is made this __14th__ day of __February 2022__ to be effective on the __21st__ day of __February 2022__ between 84 Lumber Company ("84"), a Pennsylvania Limited Partnership having its principal office at 1019 Route 519, Eighty Four, PA 15330-2813, and __Wil-Sites Truck Lines__ (hereinafter "Contractor"), a __LLC__ having its principal office at __900 Buckeye Park Road, Columbus, OH 43207__ __(614) 444-3174__
(Street Address, City, State, Zip Code) (Phone Number)

I. TERM: This Agreement shall be for an initial term of one (1) year from the effective date, and thereafter shall automatically renew and continue for year-to-year terms. Notwithstanding the previous sentence, this Agreement may be terminated (1) by 84, for any reason whatsoever, with or without cause, at anytime during the initial term or any renewal term by giving fifteen (15) days advance written notice of such termination to Contractor at the address listed above; or (2) by Contractor, with or without cause, at the end of the initial term or any renewal term by giving thirty (30) days advance written notice of such termination to 84 at the address listed above.

II. FEES/PAYMENT:

a) Contractor, an independent contractor, agrees to provide supervision, loading, unloading, transportation, and related services (hereinafter referred to as "Work") for the customers of 84 in a good, safe, and workmanlike manner, using suitable equipment, maintained and operated in a responsible and safe manner to deliver materials according to the following rate schedule:

Option 1: Cost per Load (Loaded Mileage only)

| Mileage Zone | Rate Per Load Box Truck Single Axle | Tandem w/Pig | Boom Truck |
|---|---|---|---|
| 0-5 Miles: | $ 80 | 119 | 150 |
| 6-10 Miles: | $ 86 | 131 | 150 |
| 11-20 Miles: | $ 106 | 161 | 177 |
| 21-30 Miles: | $ 123 | 189 | 206 |
| 31-40 Miles: | $ 143 | 216 | 235 |
| 41-50 Miles: | $ 163 | 240 | 293 |
| 50+ Miles: | $ +3.50/mi | +4.00/mi | +4.00/mi |

- **Yard Transfer:** normal zone rate, when loaded both ways each store pays ½ zone rate
- **Truck Transfer:** ½ zone rate if within 20mi, [illegible] zone if greater than 20mi
- **Extra Man Rate:** $40/hour
- **Drop Charge:** $55 on single axle, $70 on tandem pig, $85 on boom truck
- **Job Site Labor:** First 45min N/C, $1/min after
- **Yard Down Time:** First 30min N/C, $1/min after
- **Hand Unloading:** First 15min N/C, $1/min after
- **Call Back Fee:** $50 if driver is sent home and called back to store same day
- **Pick Up:** Charged at zone rate OR drop, whichever applies. Charged at ½ zone rate if in conjunction with a delivery
- **Flat Rate Vehicles:**
  - Hotshot: $425/wk. (1 at #0608, #0610, #0619, #0621, #0626 each)
    - Wil-Sites places approved 84 drivers on insurance with Permissive Use Endorsement. 84 Lumber pays fuel
  - Box Truck: $3400/wk (1 at #0603, #0619 each)
- **6-Story Boom Minimum:** $3250/wk out of #0612. Split b/t 0601, 0605, 0617, 0626, 0632
- **Driver Subsidies:** Refer to attached Addendum A

b) Weekly hauler logs and the entries thereon shall be deemed conclusive and binding upon Contractor unless written objections to entries on a questioned weekly hauler log are received by 84 within thirty (30) days from the date issuance of the weekly hauler log to which the objection applies.

c) Contractor agrees to deliver the following specific materials according to the following rate schedule:

Drywall __.01/sq ft slide off__ __.02/sq ft 1st floor__
__.15/sq ft boom__
Shingles __.25/bundle hand unload on ground__
__.40/bundle boom to roof__

If Contractor is owed any monies by 84 under the provisions of Sec. II above, these monies will only be paid after Contractor has presented to 84 a fully completed and signed trip report and weekly hauler log for each load. 84 will only pay for Contractor's services by check issued from 84's Headquarters. Contractor must present these statements to the 84 Lumber Store Manager every Friday. Any statement not so presented must be held until the following Friday. No cash payments will be made.

d) 84 specifically retains the right to set off amounts which may be owned by 84 to Contractor hereunder against any amounts which may be owed by Contractor to 84 whether hereunder or pursuant to any other agreement, contract, or obligation of Contractor to 84.

III. AREA/AVAILABILITY:

a) Contractor will be available, and will make deliveries, during the following hours:

Monday __First out until Completion__
Tuesday ____
Wednesday ____
Thursday ____
Friday ____
Saturday/Holidays __$29/delivery__
Sunday ____

b) Contractor agrees to deliver material under the terms and conditions of this Agreement for the following 84 locations:

(i) __Store #0603 Rochester, NY__ __Store #0610 Dewitt, NY__ __Store #0619 Victor, NY__
(ii) __Store #0621 Greece, NY__ __Store #0632 Elma, NY__
(iii) __Store #0634 Geneva, NY__ __Store #0635 Chaffee, NY__

IV. COMPLIANCE WITH THE LAW: Contractor has conducted, and is conducting the business(es) of the Contractor in full compliance with all applicable laws, regulations, and requirements of each jurisdiction, whether federal, state or local, in which Contractor operates. Contractor has, from every governmental body (each a "Governmental Entity") all approvals, consents, licenses, permits, and orders (together, the "licenses"), necessary to carry on the businesses of the Contractor as currently conducted. All such licenses are in full force and effect, and no proceeding is pending or, to Contractor's knowledge, threatened which might have the effect of terminating or limiting any license. Contractor is in full compliance with each license and the requirements, therefore, and no statement in any application or other submission made to obtain or maintain any license was false in any material respect. Any employee of Contractor who is performing work which is required to be performed by a licensed individual is so licensed, and to Contractor's knowledge, each such license is in full force and effect. To Contractor's knowledge, no notice has been issued and no civil or criminal litigation, investigation or review is pending or threatened (i) with respect to any alleged violation by Contractor of any law, ordinance, regulation, order, policy or guideline of any governmental entity, or (ii) with respect to any alleged failure to have any or all licenses required in connection with the operation of the businesses of the Contractor.

V. EXECUTIVE ORDER COMPLIANCE:

a) The Contractor will not discriminate against any employee or applicant for employment because of race, color, religion, sex, age, disability national origin or any other category protected by law. The Contractor will take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, color, religion, sex, age, disability, national origin or any other category protected by law. Such action shall include, but not be limited to the following: employment, promotion, demotion, or transfer, recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. The Contractor agrees to post in conspicuous places, available to employees and applicants for employment, notices to be provided by the contracting officer setting forth the provisions of this nondiscrimination clause.

b) The Contractor will, in all solicitations or advertisements for employees placed by or on behalf of the Contractor, state that all qualified applicants will receive consideration for employment without regard to race, color, religion, sex, age, disability national origin or any other category protected by law.

c) The Contractor will send to each labor union or representative of workers with which it/she/he has a collective bargaining agreement or other contract or understanding, a notice to be provided by the agency contracting officer, advising the labor union or workers' representative of the Contractor's commitments under section 202 of Executive Order 11246 of September 24, 1965, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

d) The Contractor will comply with all provisions of Executive Order 11246 of September 24, 1965, and of the rules, regulations, and relevant orders of the Secretary of Labor.

e) The Contractor will furnish all information and reports required by Executive Order 11246 of September 24, 1965, and by the rules, regulations, and orders of the Secretary of Labor, or pursuant thereto, and will permit access to his books, records, and accounts by the contracting agency and the Secretary of Labor for purposes of investigation to ascertain compliance with such rules, regulations, and orders.

f) In the event of the Contractor's non-compliance with the nondiscrimination clauses of this Agreement or with any of such rules, regulations, or orders, this Agreement may be canceled, terminated or suspended in whole or in part and the Contractor may be declared ineligible for further Government contracts in accordance with procedures authorized in Executive Order 11246 of September 24, 1965, and such other sanctions may be imposed and remedies invoked as provided in Executive Order 11246 of September 24, 1965, or by rule, regulation, or order of the Secretary of Labor, or as otherwise provided by law.

g) Contractor will include the provisions of these paragraphs (a) through (g) in every subcontract or purchase order unless exempted by the rules, regulations or orders of the Secretary of Labor issued pursuant to section 204 of Executive Order 11246 of September 24, 1965, so that such provisions will be binding upon each Contractor or vendor. The Contractor will take such action with respect to any subcontract or purchase order as may be directed by the Secretary of Labor as a means of enforcing such provisions including sanctions for noncompliance: Provided, however, that in the event the Contractor becomes involved in, or is threatened with, litigation with a Contractor or vendor as a result of such direction, the Contractor may request the United States to enter into such litigation to protect the interests of the United States.

h) Contractor shall file, and shall cause each of its Subcontractors to file, Compliance Reports with the contracting agency or the Secretary of Labor as may be directed. Compliance Reports shall be filed within such times and shall contain such information as to the practices, policies, programs, and employment policies, programs, and employment statistics of the subcontractor and each Contractor, and shall be in such form, as the Secretary of Labor may prescribe.

i) The Contractor understands that it and its Subcontractors may be required to state whether they have participated in any previous contract subject to the provisions of this Order, or any preceding similar Executive Order, and in that event to submit, on behalf of themselves and their proposed subcontractors, Compliance Reports prior to or as an initial part of their bid or negotiation of a contract.

j) Whenever Contractor has a collective bargaining agreement or other contract or understanding with a labor union or an agency referring workers or providing or supervising apprenticeship or training for such workers, the Compliance Report shall include such information as to such labor union's or agency's practices and policies affecting compliance as the Secretary of Labor may prescribe: Provided, that to the extent such information is within the exclusive possession of a labor union or an agency referring workers or providing or supervising apprenticeship or training and such labor union or agency shall refuse to furnish such information to the subcontractor, the subcontractor shall so certify to the Secretary of Labor as part of its Compliance Report and shall set forth what efforts he has made to obtain such information.

k) The Contractor understands that the Secretary of Labor may direct that the Contractor or any of its Subcontractors shall submit, as part of its Compliance Report, a statement in writing, signed by an authorized officer or agent on behalf of any labor union or any agency referring workers or providing or supervising apprenticeship or other training, with which the Contractor or any of its Subcontractors, with supporting information, to the effect that the signer's practices and policies do not discriminate on the grounds of race, color, religion, sex or national origin, and that the signer either will affirmatively cooperate in the implementation of the policy and provisions of this Order or that it consents and agrees that recruitment, employment, and the terms and conditions of employment under the proposed contract shall be in accordance with the purposes and provisions of the order. In the event that the union, or the agency shall refuse to execute such a statement, the Compliance Report shall so certify and set forth what efforts have been made to secure such a statement and such additional factual material as the Secretary of Labor may require.

l) Pursuant to Executive Order 13496, the Contractor also agrees to post a notice, of such size and in such form, and containing such content as the Secretary of Labor shall prescribe, in conspicuous places in and about its plants and offices where employees covered by the National Labor Relations Act engage in activities relating to the performance of the contract, including all places where notices to employees are customarily posted both physically and electronically. The notice shall include the information contained in the notice published by the Secretary of Labor in the Federal Register (Secretary's Notice).

m) The Contractor will comply with all provisions of the Secretary's Notice, and related rules, regulations, and orders of the Secretary of Labor.

n) In the event that the Contractor does not comply with any of the requirements set forth in subparagraphs (l) or (m) above, the Contractor understands that this Agreement may be cancelled, terminated, or suspended in whole or in part, and the Contractor may be declared ineligible for further Government contracts in accordance with procedures authorized in or adopted pursuant to Executive Order 13496 of January 30, 2009. Such other sanctions or remedies may be imposed as are provided in Executive Order 13496 of January 30, 2009, or by rule, regulation, or order of the Secretary of Labor, or as are otherwise provided by law.

o) The Contractor will include the provisions of sub-paragraphs (l) through (n) above in every sub-subcontract entered into in connection with this contract (unless exempted by rules, regulations, or orders of the Secretary of Labor issued pursuant to section 3 of Executive Order 13496 of January 30, 2009) so that such provisions will be binding upon each of its Subcontractors. The Contractor will take such action with respect to any of its subcontracts as may be directed by the Secretary of Labor as a means of enforcing such provisions, including the imposition of sanctions for non-compliance; provided, however, that if the Contractor becomes involved in litigation with a Subcontractor, or is threatened with such involvement, as a result of such direction, the Contractor may request the United States to enter into such litigation to protect the interests of the United States.

p) If Contractor's business with 84 on federal government contracts is valued at $100,000.00 or more, then Contractor shall comply with the federal requirement of filing the VETS-100A annual report.

q) If Contractor has at least 100 employees, then it shall comply with the requirement of filing an EEO-1 form annually with Equal Employment Opportunity Commission.

VI. DAVIS BACON ACT COMPLIANCE: The Contractor shall comply with the Davis-Bacon Act (40 U.S.C. 276a to a-7) and as supplemented by Department of Labor regulations. Under this Act, Contractor is required to pay wages to laborers and mechanics at a rate not less than the minimum wages specified in a wage determination made by the United States Secretary of Labor. In addition, Contractor shall be responsible to ensure that it complies with any applicable non-federal Prevailing Wage or Living Wage statutes, regulations, or ordinances.

VII. E-VERIFICATION: If Contractor performs any work on a government job, Contractor must use E-Verify for all new employees, as well as all employees who perform work on the contract during the contract period except those who perform support work such as indirect or overhead functions.

VIII. BUY AMERICAN ACT: Buy American Act (41 U.S.C. § 10a-10d) and Trade Agreements Act (19 U.S.C. § 2501, et seq.): 84 Lumber does, from time to time, serve as a prime contractor or subcontractor on U.S. Government Contracts. And depending on the size and nature of any of 84 Lumber's U.S. Government Contracts, 84 Lumber must comply with both the Buy American Act ("the BAA") and The Trade Agreements Act ("the TAA"). The Contractor acknowledges that it understands the requirements of the BAA and the TAA. The Contractor agrees that it will comply with the BAA and TAA and the applicable Federal Acquisition Regulations ("FAR") that implement those Acts. The Contractor also agrees to provide 84 Lumber with all

required information, documentation and certification that the BAA or the TAA require 84 Lumber to provide to the U.S. Government. The Contractor acknowledges that the following FAR clauses are incorporated herein by reference, with the same force and effect as if they were given in full text, and are applicable to this Purchasing Agreement:

A. FAR 52.225-1 BUY AMERICAN ACT—SUPPLIES (FEB 2009)

B. FAR 52.225-3 BUY AMERICAN ACT—FREE TRADE AGREEMENTS —ISRAELI TRADE ACT (JUNE 2009)

C. FAR 52.225-5 TRADE AGREEMENTS (AUG 2009)

D. FAR 52.225-8 DUTY-FREE ENTRY (FEB 2000)

E. FAR 52.225-9 BUY AMERICAN ACT—CONSTRUCTION MATERIALS (FEB 2009)

F. FAR 52.225-11 BUY AMERICAN ACT—CONSTRUCTION MATERIALS UNDER TRADE AGREEMENTS (AUG 2009)

G. FAR 52.225-21 REQUIRED USE OF AMERICAN IRON, STEEL, AND OTHER MANUFACTURED GOODS—BUY AMERICAN ACT—CONSTRUCTION MATERIALS (MAR 2009)

H. FAR 42.225-23 REQUIRED USE OF AMERICAN IRON, STEEL, AND OTHER MANUFACTURED GOODS—BUY AMERICAN ACT—CONSTRUCTION MATERIALS UNDER TRADE AGREEMENTS (AUG 2009)

## IX. OTHER COMPLIANCE ISSUES:

A. Because this Agreement is entered into by the Contractor in support of 84 Lumber's performance of a U.S. Government Contract, as either a prime contractor or a subcontractor, the FAR clauses contained in Exhibit 1 are incorporated by reference and, with the clarifications provided below, are applicable to this Agreement. If the date or substance of any of the clauses in Exhibit 1 is different from the date or substance of the clause actually used or incorporated into 84 Lumber's U.S. Government Contract or 84 Lumber's U.S. Government subcontract, the date or substance of the clause used or incorporated by 84 Lumber's U.S. Government Contract or 84 Lumber's U.S. Government subcontract shall apply instead. The Contracts Disputes Act shall not apply to this Purchasing Agreement.

B. As used in the FAR clauses contained Exhibit 2 and elsewhere in this Agreement, the following clarifications apply:

1. "Commercial Item" means a commercial item as defined in FAR 2.101.
2. "Contract" means this Purchase Agreement.
3. "Contracting Officer means the U.S. Government Contracting Officer for 84 Lumber's U.S. Government Subcontract under which this Agreement is entered.
4. "Contractor" and "Offeror" means the Contractor, as defined in this Agreement, acting as subcontractor to 84 Lumber.
5. "Prime Contract" means the contract between 84 Lumber and the U.S. Government or between 84 Lumber and between 84 Lumber and its higher-tier contractor who has a contract with the U.S. Government.
6. "Subcontract means any contract between the Contractor with lower-tiered subcontractors under this Agreement.

## X. INDEMNIFICATION:

a) In the performance of the Work, the Contractor agrees to indemnify, protect, save, hold harmless and defend 84 and its directors, officers, employees, predecessors, successors, subsidiaries, affiliates, related entities, members, partners, managers, owners, agents, servants, and contractors, harmless from and against any and all loss, costs, damages, suits, and liability whatsoever, and all related expenses, including costs and attorneys' fees, and all claims and demands therefor, whether with or without merit, for damages because of bodily injury, sickness, disease or death at any time resulting therefrom sustained by any person or persons, including 84 customers, Contractor and its employees, Contractor's subcontractors, or agents of Contractor, or on account of damage to real or personal property including the loss or use thereof, resulting from, arising out of or in any way connected with the performance of the Work by the Contractor, or by the Contractor's employees, agents or subcontractors regardless of whether or not such damage is caused or alleged to be caused in whole or in part by the negligence of 84 or any other party indemnified hereunder.

b) The Contractor further agrees to indemnify, protect, save, hold harmless and defend 84, its agent and employees from and against any claims made by employees from any actions, conduct or omissions of the Contractor, its agents or employees, including, but not limited to, charges of discrimination brought under the Equal Employment Opportunity Commission and the Workers Compensation Board (or similar department, commission or bureau), claims and losses alleging failure to comply with federal and state wage and hour laws, wrongful termination, discrimination, denial of due process or other labor-related causes of action resulting from employee conduct, hiring, discipline, or termination. Contractor shall also indemnify, protect, save, hold harmless and defend 84 from employee claims of sexual or other harassment by Contractor or any employee of Contractor.

c) The Contractor further agrees to indemnify, protect, save, hold harmless and defend 84, its agent and employees from and against any and all losses, damages, penalties, costs and expenses, including legal and accounting fees incurred or suffered by 84 which result from or arise out of any federal or state income tax withholding liability or taxes arising under the Federal Insurance Contributions Act or under the Federal Unemployment Tax Act, or similar federal or state tax, resulting from this Agreement.

d) The duty to defend includes the duty to pay reasonable attorneys' fees incurred by 84 in defending such actions, and the duty to indemnify includes the duty to pay any award imposed by an administrative agency, judgment or reached by way of settlement.

e) The Contractor, the Contractor's heirs, successors and assigns, hereby expressly waive and agree to waive any provision of the Worker's Compensation laws of contribution or indemnity in any action at law, or otherwise where Contractor or Contractor's employees, heirs, assigns or anyone otherwise entitled to receive damages by reason of injury or death or brings an action at law against 84.

XI. **INSURANCE:** Contractor shall provide Worker's Compensation Insurance covering contractor's drivers. Contractor shall also provide Commercial General Liability ( The policy should include the Broad Form Commercial General Liability Endorsement or an endorsement adding Blanket Contractual Liability Insurance with limits equal to those outlined) and Automobile Liability Insurance with limits not less than $1,000,000 per occurrence covering bodily injury, death, and property damage suffered by anyone including employees of 84 and/or of Contractor during the course of, and on the site of and/or adjacent to, the operations covered by this Agreement. Contractor shall be responsible for damage to and/or loss of any cargo from 84 regardless of the ownership/title of such cargo. Contractor shall name 84 an additional insured under Contractor's insurance policies by means of an "Additional Insured" endorsement in a form satisfactory to 84. Contractor shall also furnish 84 with a Certificate of Insurance illustrating such insurance policies which certifies that the Contractor has the required coverages in force at all relevant times and that none of the coverages may be cancelled without at least 30 days advance written notice to 84. Failure of Contractor to provide and maintain the above insurance and its specific requirements shall make Contractor the insurer. Failure to maintain insurance under the above terms and conditions shall constitute breach of the Agreement by Contractor and the immediate and automatic termination and forfeiture by contractor of all rights under this Agreement without notice from 84 to Contractor. Certificates of Insurance and notices shall be sent to 84 Lumber Company, ATTN: Hauling Department, Bldg. #5, 1019 Route 519, Eighty Four, PA 15330-2813. Contractor shall maintain, and 84 will only accept, insurance from an insurance company with an A+ Bests Rating, in force at all times during the term of this Agreement. ALL OF CONTRACT'S LIABILITY INSURANCE PREMIUMS MUST BE PAID IN ADVANCE FOR AT LEAST A ONE (1) YEAR PERIOD. NO PARTIAL PAYMENTS WILL BE PERMITTED. CONTRACTOR MUST SUBMIT CERTIFICATION TO 84 FROM ALL OF ITS LIABILITY INSURERS THAT ALL OF THE ANNUAL PREMIUMS HAVE BEEN PAID IN FULL FOR A ONE (1) YEAR PERIOD. CONTRACTOR HEREBY AUTHORIZES 84 TO DEDUCT FROM ANY FEES OR PAYMENTS DUE CONTRACTOR, THE UNPAID PREMIUM AMOUNT DUE FOR CONTRACTOR'S INSURANCE IF A "NOTICE OF CANCELLATION OF INSURANCE FOR NON-PAYMENT" IS RECEIVED BY 84.

## XII. MAINTENANCE / APPEARANCE:

f) Contractor agrees to maintain, repair and service his equipment in a safe and clean condition, and Contractor further agrees to keep all records of such maintenance, repair and service and to make same available for inspection by 84 as 84 shall reasonably request. All expenses necessary to maintain, repair and service equipment in such condition are the Contractor's responsibility.

g) Contractor's employees will wear clean, neat clothes, which will include crepe-soled work boots, blue denim jeans or khaki pants, and a uniform shirt and/or jacket. Any clothing advocating, depicting, or implying drugs, sex, music, alcohol, or anything that does not directly relate to the delivery of building materials from 84 will not be worn by Contractor's employees.

XIII. MISCELLANEOUS:

a) Contractor will acknowledge receipt of each load for delivery, and will furnish receipts signed by customers or their authorized agents for each load delivered and unloaded, with any discrepancies noted thereon. Contractor shall provide safe and timely delivery and unloading of all goods, with time being of the essence of this Agreement. In case any delivery is delayed for any reason, Contractor shall promptly notify 84 by telephone.

b) Contractor shall exercise the highest degree of care in performing this Agreement. Contractor shall supervise the loading of all cargo and shall adequately secure all loads so as to avoid risk or damage to anyone. Contractor shall obtain all required permits and licenses and comply with all laws and regulations relating to the transportation of goods covered by this Agreement or otherwise applicable to performance under this Agreement, solely at Contractor's expense. Contractor shall provide and pay for legal liability and Worker's Compensation insurance coverage, payroll contributions and taxes as required by law and by this Agreement. Contractor shall indemnify and defend 84 and the customers of 84 for whom Contractor performs services hereunder from and against all claims and liability of any kind arising out of Contractor's breach of, or failure of performance under, or otherwise in connection with this Agreement. Contractor hereby warrants and states that he is in full compliance with the Immigration Reform and Control Act of 1986 with respect to himself and respective employees, subcontractors and/or agents.

c) The parties intend that an independent contractor relationship will be created by this Agreement. Contractor is and shall be at all times an independent contractor and not an employee, agent or servant of 84 or of its customers. This Agreement is not a contract of employment and it is expressly agreed by the parties that Contractor is an independent contractor and is not an employee of 84, and is not entitled to any of the benefits offered to 84 employees by reason of their employment. Contractor shall be free from the direct supervision and control of 84 in the performance of Contractor's duties hereunder. Contractor shall have full choice and discretion as to loading and securing of material on the vehicle, routes to delivery site, unloading at delivery site, manpower needed at delivery site, which approved operator to use and all other decisions regarding the loading, transporting and delivery of materials on his equipment.

d) Contractor agrees that during the term of this Agreement, the services set forth herein shall not be provided to any competitor of 84.

e) 84 reserves the right to terminate this Agreement for any reason whatsoever with or without cause by giving fifteen (15) days written notice of such termination to Contractor at the address listed above.

f) This Agreement shall be binding upon Contractor and Contractor's successors, heirs, spouse, dependents and legal representatives and anyone claiming by or through Contractor.

g) The entire agreement of the parties is set forth in this written document and there are no other oral or written understandings, promises, representatives or agreements. This Agreement cannot be modified or amended except by a written document signed by both parties, and this Agreement shall supersede all previous communications, representations, or agreements, either verbal or written between the parties hereto.

h) The waiver or invalidity of any provisions herein shall not affect the validity of any other provision herein.

i) Any claim or controversy arising out of or relating to this Agreement, or the breach thereof, shall be settled by final and binding arbitration in Pittsburgh, Pennsylvania in accordance with the Commercial Arbitration Rules of the American Arbitration Association and judgment upon the award rendered by the arbitrator or arbitrators may be entered in any court having jurisdiction thereof. The parties agree that claims may be brought only in an individual capacity and not as a plaintiff or class member in any purported class or representative proceeding. The parties also agree that the arbitrator may not consolidate or join claims of more than the one claimant and may not preside over any form of representative or class proceeding. If this class action waiver is found to be unenforceable, then all arbitration provisions shall be null and void. This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania.

IN WITNESS WHEREOF, the undersigned parties have executed this Agreement to be effective on the day and year above written.

| WITNESS | CONTRACTOR (Please sign both copies) |
|---|---|
| By: *Bradley J. Sites* | By: [signature] |
| Name: Brad Sites (Print) | Name: Chad Calcagno (Print) |
| Title: Member | Title: President |
| | Contractor's Fed. Tax ID or Social Security No. 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 |

| WITNESS | 84 LUMBER COMPANY |
|---|---|
| By: *Denise Bastian* | By: *Mitchell D. Feldman 2-18-22* |
| Name: Denise Bastian (Print) | Name: Mitchell D. Feldman (Print) |
| Title: Administrative Assistant | Title: V.P., Delivery Services |

THIS AGREEMENT IS NOT VALID UNLESS EXECUTED BY THE 84 DIRECTOR OF DELIVERY SERVICES. NO OTHER 84 EMPLOYEE HAS AUTHORITY, EXPRESS OR IMPLIED, TO SIGN OR CHANGE TERMS AND CONDITIONS IN THIS AGREEMENT.

PLEASE RETURN EXECUTED ☐ AGREEMENT ☐ CERTIFICATE OF INSURANCE ☐ COPY OF CONTRACTOR'S APPLICABLE INTERSTATE AND INTRASTATE AUTHORITY LICENSES AND PERMITS TO THE 84 DELIVERY SERVICES DEPARTMENT

EXHIBIT 1 - FAR CLAUSES INCORPORATED BY REFERENCE

The following FAR clauses apply to this Agreement:

FAR 52.211-5 MATERIAL REQUIREMENTS (AUG 2000)

FAR 52.215-20 REQUIREMENTS FOR COST OR PRICING DATA OR INFORMATION OTHER THAN COST OR PRICING DATA (OCT 1997)

FAR 52.215-21 REQUIREMENTS FOR COST OR PRICING DATA OR INFORMATION OTHER THAN COST OR PRICING DATA - MODIFICATIONS (OCT 1997)

FAR 52.219-8 UTILIZATION OF SMALL BUSINESS CONCERNS (MAY 2004)

FAR 52.222-21 PROHIBITION OF SEGREGATED FACILITIES (FEB 1999)

FAR 52.222-26 EQUAL OPPORTUNITY (MAR 2007)

FAR 52.222-50 COMBATING TRAFFICKING IN PERSONS (FEB 2009)

FAR 52.225-13 RESTRICTIONS ON CERTAIN FOREIGN PURCHASES (JUN 2008)

FAR 52.244-6 SUBCONTRACTS FOR COMMERCIAL ITEMS (JUN 2010)

FAR 52.247-64 PREFERENCE FOR PRIVATELY OWNED U.S. FLAG COMMERCIAL VESSELS (FEB 2006)

FAR 52.203-12 LIMITATION ON PAYMENTS TO INFLUENCE CERTAIN FEDERAL TRANSACTIONS (SEP 2007)

FAR 52.222.35 EQUAL OPPORTUNITY FOR SPECIAL DISABLED VETERANS, VETERANS OF THE VIETNAM ERA, AND OTHER ELIGIBLE BETERANS (SEP 2006)

FAR 52.203-13 CONTRACTOR CODE OF BUSINESS ETHICS AND CONDUCT (APR 2010)

FAR 52.204-2 SECURITY REQUIREMENTS (AUG 1996)

FAR 52.204-9 PERSONAL IDENTITY VERIFICATION OF CONTRACTOR PERSONNEL (SEP 2007)

FAR 52.222-41 SERVICE CONTRACT ACT OF 1965 (NOV 2007)

FAR 52.222-54 EMPLOYMENT ELIGIBILITY VERIFICATION (JAN 2009)

FAR 52.223-11 OZONE-DEPLETING SUBSTANCES (MAY 2001)

FAR 52.227-19 COMMERCIAL COMPUTER SOFTWARE LICENSE (DEC 2007)

FAR 52.245-1 GOVERNMENT PROPERTY (JUNE 2007)

FAR 52.203-11 CERTIFICATION AND DISCLOSURE REGARDING PAYMENTS TO INFLUENCE CERTAIN TRANSACTIONS (SEP 2007)

FAR 52.209-5 CERTIFICATION RESPONSIBILITY MATTERS (APR 2010)

FAR 52.222-22 PREVIOUS CONTRACTS AND COMPLIANCE REPORTS (FEB 1999)

FAR 52.222-25 AFFIRMATIAVE ACTION COMPLIANCE (APR 1984)

FAR 52.227-14 RIGHTS IN DATA - GENERAL (DEC 2007)

FAR 52.232-7 PAYMENTS UNDER TIME-AND-MATERIALS AND LABOR-HOUR CONTRACTS (FEB 2007)

FAR 52.234-1 INDUSTRIAL RESOURCES DEVELOPED UNDER DEFENSE PRODUCTION ACT TITLE III (DEC 1994)

FAR 52.242-13 BANKRUPTCY (JUL 1995)

FAR 52.242-15 STOP-WORK ORDER (AUG 1989)

FAR 52.243-3 CHANGES - TIME-AND-MATERIALS OR LABOR-HOURS (SEP 2000)

FAR 52.246-6 INSPECTION TIME-AND-MATERIAL AND LABOR-HOUR (MAY 2001)

FAR 52.249-6 TERMINATION (COST-REIMBURSEMENT) (MAY 2004)

FAR 52.249-14 EXCUSABLE DELAYS (APR 1984)

FAR 52.222-36 AFFIRMATIVE ACTION FOR WORKERS WITH DISABILITIES (JUN 1998)

FAR 52.203-6 RESTRICTIONS ON SUBCONTRACTOR SALES TO THE GOVERNMENT (SEP 2006)

FAR 52.215-14 INTEGRITY OF UNIT PRICES (OCT 1997)

FAR 52.215-23 LIMITATION ON PASS-THROUGH CHARGES (OCT 2009)

FAR 52.222-37 EMPLOYMENT REPORTS ON SPECIAL DISABLED VETERANS, VETERANS OF THE VIETNAM ERA, AND OTHER ELIGIBLE VETERANS (SEP 2006)

FAR 52.223-14 TOXIC CHEMICAL RELEASE REPORTING (AUG 2003)

FAR 52.227-2 NOTICE AND ASSISTANCE REGARDING PATENT AND COPYRIGHT INFRINGEMENT (DEC 2007)

FAR 52.248-1 VALUE ENGINEERING (FEB 2000)

FAR 52.219-9 SMALL BUSINESS SUBCONTRACTING PLAN (APR 2008)

FAR 52.215-12 SUBCONTRACTOR COST OR PRICING DATA (OCT 1997)

FAR 52.215-13 SUBCONTRACTOR COST OR PRICING DATA - MODIFICATIONS (OCT 1997)

FAR 52.203-14 DISPLAY OF HOTLINE POSTER(S) (DEC 2007)

FAR 52.215-10 PRICE REDUCTION FOR DEFECTIVE COST OR PRICING DATA (OCT 1997)

FAR 52.215-11 PRICE REDUCTION FOR DEFECTIVE COST OR PRICING DATA - MODIFICATIONS (OCT 1997)

FAR 52.215-15 PENSION ADJUSTMENTS AND ASSET REVERSIONS (OCT 2004)

FAR 52.215-16 FACILITIES CAPITAL COST OF MONEY (JUN 2003)

FAR 52.215-17 WAIVER OF FACILITIES CAPITAL COST OF MONEY (OCT 1997)

FAR 52.215-18 REVERSION OR ADJUSTMENT OF PLANS FOR POST-RETIREMENT BENEFITS (PRB) OTHER THAN PENSIONS (JUL 2005)

FAR 52.215-19 NOTIFICATION OF OWNERSHIP CHANGES (OCT 1997)

FAR 52.216-7 ALLOWABLE COST AND PAYMENT (DEC 2002)

FAR 52.222-4 CONTRACT WORK HOURS AND SAFETY STANDARDS ACT - OVERTIME COMPENSATION (JUL 2005)

FAR 52.223-3 HAZARDOUS MATERIAL IDENTIFICATION AND MATERIAL SAFETY DATA (JAN 1997)

FAR 52.223-7 NOTICE OF RADIOACTIVE MATERIALS (JAN 1997)

FAR 52.227-1 AUTHORIZATION AND CONSENT (DEC 2007)

FAR 52.227-9 REFUND OF ROYALTIES (APR 1984)

FAR 52.227-10 FILING OF PATENT APPLICATIONS-CLASSIFIED SUBJECT MATTER (DEC 2007)

FAR 52.227-11 PATENT RIGHTS-OWNERSHIP BY THE CONTRACTOR (SHORT FORM) (DEC 2007)

FAR 52.228-5 INSURANCE -- WORK ON A GOVERNMENT INSTALLATION (JAN 1997)

FAR 52.230-2 COST ACCOUNTING STANDARDS (OCT 2008)

FAR 52.230-3 DISCLOSURE AND CONSISTENCY OF COST ACCOUNTING PRACTICES (OCT 2008)

FAR 52.230-6 ADMINISTRATION OF COST ACCOUNTING STANDARDS (MAR 2008)

FAR 52.233-3 PROTEST AFTER AWARD (AUG 1996)

FAR 52.237-2 PROTECTION OF GOVERNMENT BUILDINGS, EQUIPMENT AND VEGETATION (APR 1984)

FAR 52.243-6 CHANGE ORDER ACCOUNTING (APR 1984)

FAR 52.234-1 INDUSTRIAL RESOURCES DEVELOPED UNDER DEFENSE PRODUCTION ACT TITLE III (DEC 1994)

FAR 52.243-1 CHANGES - FIXED PRICE (AUG 1987)

FAR 52.246-2 INSPECTION OF SUPPLIES - FIXED PRICE (AUG 1996)

FAR 52.246-4 INSPECTION OF SERVICES - FIXED PRICE (AUG 1996)

FAR 52.249-2 TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (FIXED-PRICE) (MAY 2004)

FAR 52.249-8 DEFAULT (FIXED-PRICE SUPPLY AND SERVICE) (APR 1984)

# Wil-Sites 0603, 0610, 0619, 0621, 0632, 0634, 0635 - 02.22

Final Audit Report 2022-02-21

| | |
|---|---|
| Created: | 2022-02-17 |
| By: | Ryan Oakes (ryan.oakes@84lumber.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAMafnAolF-W37Nx2DE7JXzZ4fwOsOsmtN |

## "Wil-Sites 0603, 0610, 0619, 0621, 0632, 0634, 0635 - 02.22" History

Document created by Ryan Oakes (ryan.oakes@84lumber.com)
2022-02-17 - 8:13:56 PM GMT- IP address: 50.206.42.28

Document emailed to Chad Calcagno (chad@wilsitestrucklines.com) for signature
2022-02-17 - 8:14:24 PM GMT

Email viewed by Chad Calcagno (chad@wilsitestrucklines.com)
2022-02-17 - 8:37:35 PM GMT- IP address: 96.11.78.75

Document e-signed by Chad Calcagno (chad@wilsitestrucklines.com)
Signature Date: 2022-02-17 - 8:38:00 PM GMT - Time Source: server- IP address: 96.11.78.75

Document emailed to Bradley J Sites (bsites@dwliftsales.com) for signature
2022-02-17 - 8:38:02 PM GMT

Email viewed by Bradley J Sites (bsites@dwliftsales.com)
2022-02-17 - 8:40:13 PM GMT- IP address: 96.11.78.75

Document e-signed by Bradley J Sites (bsites@dwliftsales.com)
Signature Date: 2022-02-17 - 8:40:50 PM GMT - Time Source: server- IP address: 96.11.78.75

Document emailed to Mitchell D. Feldman 2-18-22 (mitch.feldman@84lumber.com) for signature
2022-02-17 - 8:40:51 PM GMT

Email viewed by Mitchell D. Feldman 2-18-22 (mitch.feldman@84lumber.com)
2022-02-17 - 9:46:28 PM GMT- IP address: 104.28.78.137

Document e-signed by Mitchell D. Feldman 2-18-22 (mitch.feldman@84lumber.com)
Signature Date: 2022-02-18 - 9:43:15 PM GMT - Time Source: server- IP address: 24.3.215.229

Document emailed to Denise Bastian (denise.bastian@84lumber.com) for signature
2022-02-18 - 9:43:17 PM GMT

Email viewed by Denise Bastian (denise.bastian@84lumber.com)
2022-02-21 - 1:27:26 PM GMT- IP address: 50.206.42.28

Document e-signed by Denise Bastian (denise.bastian@84lumber.com)
Signature Date: 2022-02-21 - 1:27:56 PM GMT - Time Source: server- IP address: 50.206.42.28

Agreement completed.
2022-02-21 - 1:27:56 PM GMT

BOND SCHOENECK & KING

350 Linden Oaks, Third Floor | Rochester, NY 14625-2825 | bsk.com

CLAIRE BOPP, ESQ.
cbopp@bsk.com
P: 585.362.4868
F: 585.362.4891

June 13, 2025

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Wil-Sites Truck Lines, LLC
900 Buckeye Park Road
Columbus, OH 43207

Re: *Tender of Complaint of James Maynard, Jr. Pursuant to Indemnification Agreement*

To Whom It May Concern:

My office sent you correspondence dated May 19, 2025, providing notice and requesting tender of the defense of a claim asserted against the foregoing parties arising from personal injuries allegedly sustained by James Maynard, Jr. on July 27, 2022 while making a delivery of wood products to 84 Lumber store located at 1170 North Greece Road, Rochester NY. Pursuant to the Independent Contractor Hauling Agreement ("the Agreement") executed by Wil-Sites Truck Lines ("Wil-Sites") and 84 Lumber Company ("84"), Wil-Sites is required to indemnify, hold harmless and defend 84 for claims and demands for damages resulting from bodily injury sustained by any person, including Wil-Sites and its employees, arising out of or any way connected with the work by Wil-Sites. I am once again enclosing a copy of the Agreement.

We have not received any response from our May 19th correspondence, despite requesting acknowledgement of receipt of same. 84 hereby requests that you provide written acknowledgement immediately upon receipt of this letter and confirm that (1) Wil-Sites will be providing the Indemnitees defense and indemnification as required by the Agreement; and (2) Wil-Sites has placed its appropriate liability carrier(s) on notice of this claim.

We look forward to your prompt attention to this matter.

Very truly yours,

BOND, SCHOENECK & KING, PLLC

Claire A. Bopp

Claire Bopp

CGP/slm
Enclosures



EXHIBIT
E

STATE OF NEW YORK
SUPREME COURT COUNTY OF MONROE

**JAMES MAYNARD, JR.,**

Plaintiff.

v.

**84 LUMBER COMPANY and
JAMES BARRY,**

Defendants.

**SUMMONS**

Index No.:____________

**TO THE ABOVE NAMED DEFENDANTS:**

**YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the plaintiff's attorneys within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default.

Plaintiff designates Monroe County as the place of trial.

The basis of venue is the county where the incident complained of occurred.

The incident complained of occurred at 1170 North Greece Road, Town of Greece, County of Monroe, State of New York

Dated: April 3, 2025
Rochester, New York

**SEGAR & SCIORTINO PLLC**
Stephen A. Segar, Esq.
Attorney(s) for Plaintiff
Office and Post Office Address:
400 Meridian Centre, Suite 320
Rochester, New York 14618
Telephone No.: (585) 475-1100

TO: **84 LUMBER COMPANY**
c/o New York State Secretary of State

**JAMES BARRY**
c/o 84 Lumber Company
1170 North Greece Road
Rochester, New York 14626

STATE OF NEW YORK
SUPREME COURT COUNTY OF MONROE

---

**JAMES MAYNARD, JR.,**

Plaintiff,

v.

**84 LUMBER COMPANY and JAMES BARRY,**

Defendants.

**VERIFIED COMPLAINT**

Index No.:____________

---

Plaintiff James Maynard, Jr., per his attorneys Segar & Sciortino PLLC, complaining of the defendants, alleges:

1. Upon information and belief and at all times hereinafter mentioned, defendant 84 Lumber Company (hereinafter referred to as "84 Lumber") was and is a foreign limited partnership organized and existing under and by virtue of the laws of Pennsylvania and authorized to do business in New York State.

2. Upon information and belief and at all times hereinafter mentioned, defendant 84 Lumber's principal place of business was and presently still is located at 1019 Route 519, City of Eighty Four, County of Washington, State of Pennsylvania.

3. Upon information and belief and at all times hereinafter mentioned, defendant 84 Lumber owned and operated commercial premises located at 1170 North Greece Road, Town of Greece, County of Monroe, State of New York.

4. Upon information and belief and at all times hereinafter mentioned, defendant James Barry was an employee of defendant 84 Lumber.

5. Upon information and belief and at all times hereinafter mentioned, defendant James Barry was acting in the course of and within the scope of his employment with defendant 84 Lumber.

6. At all times hereinafter mentioned, plaintiff was employed by Wil-Sites Truck Lines, LLC.

7. On or about July 27, 2022 at approximately 2:30 p.m., plaintiff, while engaged in the scope of said employment, made a delivery of wood products to 84 Lumber at said Town of Greece location using a large flatbed truck.

8. As said delivery of wood products was being unloaded by defendant James Barry, Mr. Barry, while using a forklift, pushed a large piece or pieces of lumber from the top of the load on said flatbed truck onto plaintiff, striking him about the head, face, shoulders and neck.

9. As a result of said incident, plaintiff sustained serious injuries as defined pursuant to New York State Insurance Law §5102(d), including but not limited to his head, neck, left shoulder, left knee, left foot, left wrist, left forearm and post-traumatic stress disorder.

10. As a result of said incident, plaintiff sustained economic loss in excess of basic economic loss as defined pursuant to New York State Insurance Law §5102(a).

11. The incident and plaintiff's resulting injuries were caused by the careless, negligent and/or reckless actions of defendant James Barry also attributable to his employer defendant 84 Lumber.

12. By reason of the foregoing, plaintiff was rendered disabled and was caused to sustain injuries which may be permanent in nature, was disabled from working resulting in loss of income and may suffer future loss of income, was compelled to undergo medical care and will require further medical care and has suffered and continues to suffer mental anguish and pain and has sustained damages and is entitled to collect same against the defendants.

13. By reason of the foregoing, plaintiff has been damaged in excess of the jurisdictional limits of all lower courts in which this action may otherwise have been brought.

**WHEREFORE**, plaintiff demands judgment against the defendants together with costs, disbursements and such other and further relief the court deems just and proper.

DATED: April 3, 2025

SEGAR & SCIORTINO PLLC
Stephen A. Segar, Esq.
Attorney(s) for Plaintiff
Office and Post Office Address:
400 Meridian Centre, Suite 320
Rochester, New York 14618
Telephone No.: (585) 475-1100

## VERIFICATION

STATE OF NEW YORK )
COUNTY OF MONROE ) ss:

James Maynard, Jr., being duly sworn, deposes and says that deponent is the plaintiff in the within action, that deponent has read the foregoing complaint and knows the contents thereof, that the same is true to deponent's own knowledge, except as to those matters therein stated to be alleged on information and belief, and that as to those matters deponent believes them to be true.

James Maynard, Jr.

Sworn to before me this
3rd day of April, 2025.

NOTARY PUBLIC

STEPHEN A. SEGAR
Notary Public, State of New York
No. 02SE4886787
Qualified in Monroe County
Commission Expires Feb 17, 20 27

84 LUMBER
Build on what we know.

# INDEPENDENT CONTRACTOR HAULING AGREEMENT

This Agreement is made this __14th__ day of __February 2022__ to be effective on the __21st__ day of __February 2022__ between 84 Lumber Company ("84"), a Pennsylvania Limited Partnership having its principal office at 1019 Route 519, Eighty Four, PA 15330-2813, and __Wil-Sites Truck Lines__ (hereinafter "Contractor"), a __LLC__ having its principal office at __900 Buckeye Park Road, Columbus, OH 43207__ (Street Address, City, State, Zip Code) __(614) 444-3174__ (Phone Number)

I. **TERM:** This Agreement shall be for an initial term of one (1) year from the effective date, and thereafter shall automatically renew and continue for year-to-year terms. Notwithstanding the previous sentence, this Agreement may be terminated (1) by 84, for any reason whatsoever, with or without cause, at anytime during the initial term or any renewal term by giving fifteen (15) days advance written notice of such termination to Contractor at the address listed above, or (2) by Contractor, with or without cause, at the end of the initial term or any renewal term by giving thirty (30) days advance written notice of such termination to 84 at the address listed above.

II. **FEES/PAYMENT:**

a) Contractor, an independent contractor, agrees to provide supervision, loading, unloading, transportation, and related services (hereinafter referred to as "Work") for the customers of 84 in a good, safe, and workmanlike manner, using suitable equipment, maintained and operated in a responsible and safe manner to deliver materials according to the following rate schedule:

Option 1: Cost per Load (Loaded Mileage only)

| Mileage Zone | Rate Per Load: Box Truck Single Axle | Tandem w/Pig | Boom Truck |
|---|---|---|---|
| 0-5 Miles: | $ 80 | 119 | 150 |
| 6-10 Miles: | $ 86 | 131 | 150 |
| 11-20 Miles: | $ 106 | 161 | 177 |
| 21-30 Miles: | $ 123 | 189 | 206 |
| 31-40 Miles: | $ 143 | 216 | 235 |
| 41-50 Miles: | $ 163 | 240 | 293 |
| 50+ Miles: | $ +3.50 mi | +4.00 mi | +4.00 mi |

- **Yard Transfer:** normal zone rate, when loaded both ways each store pays ½ zone rate
- **Truck Transfer:** ½ zone rate if within 20mi, ½ zone if greater than 20mi
- **Extra Man Rate:** $40 hour
- **Drop Charge:** $55 on single axle, $70 on tandem pig, $55 on boom truck
- **Job Site Labor:** First 45min N/C, $1 min after
- **Yard Down Time:** First 30min N/C, $1 min after
- **Hand Unloading:** First 15min N/C, $1 min after
- **Call Back Fee:** $50 if driver is sent home and called back to store same day
- **Pick Up:** Charged at zone rate OR drop, whichever applies. Charged at ½ zone rate if in conjunction with a delivery
- **Flat Rate Vehicles:**
  - Hotshot: $425 wk. (1 at #0608, #0610, #0619, #0621, #0626 each)
    - Wil-Sites places approved 84 drivers on insurance with Permissive Use Endorsement. 84 Lumber pays fuel
  - Box Truck: $3000 wk (1 at #0603, #0619 each)
- **6-Story Boom Minimum:** $3250 wk out of #0632. Split b/t 0601, 0608, 0617, 0626, 0632
- **Driver Subsidies:** Refer to attached Addendum A

b) Weekly hauler logs and the entries thereon shall be deemed conclusive and binding upon Contractor unless written objections to entries on a questioned weekly hauler log are received by 84 within thirty (30) days from the date issuance of the weekly hauler log to which the objection applies.

c) Contractor agrees to deliver the following specific materials according to the following rate schedule:

Drywall __.01/sq ft slide off__ .02/sq ft 1st floor__
__.15/sq ft boom__
Shingles __.25/bundle hand unload on ground__
__.40 bundle boom to roof__

If Contractor is owed any monies by 84 under the provisions of Sec. II above, these monies will only be paid after Contractor has presented to 84 a fully completed and signed trip report and weekly hauler log for each load. 84 will only pay for Contractor's services by check issued from 84's Headquarters. Contractor must present these statements to the 84 Lumber Store Manager every Friday. Any statement not so presented must be held until the following Friday. No cash payments will be made.

d) 84 specifically retains the right to set off amounts which may be owed by 84 to Contractor hereunder against any amounts which may be owed by Contractor to 84 whether hereunder or pursuant to any other agreement, contract, or obligation of Contractor to 84.

III. **AREA/AVAILABILITY:**

a) Contractor will be available, and will make deliveries, during the following hours:

Monday __First out until Completion__
Tuesday __↓__
Wednesday __
Thursday __
Friday __
Saturday/Holidays __$29/delivery__
Sunday __

b) Contractor agrees to deliver material under the terms and conditions of this Agreement for the following 84 locations:

(i) __Store #0603 Rochester, NY__ Store #0610 Dewitt, NY__ Store #0619 Victor, NY__
(ii) __Store #0621 Greece, NY__ Store #0632 Elma, NY__
(iii) __Store #0634 Geneva, NY__ Store #0635 Chaffee, NY__

IV. **COMPLIANCE WITH THE LAW:** Contractor has conducted, and is conducting the business(es) of the Contractor in full compliance with all applicable laws, regulations, and requirements of each jurisdiction, whether federal, state or local, in which Contractor operates. Contractor has, from every governmental body (each a "Governmental Entity") all approvals, consents, licenses, permits, and orders (together, the "licenses"), necessary to carry on the businesses of the Contractor as currently conducted. All such licenses are in full force and effect, and no proceeding is pending or, to Contractor's knowledge, threatened which might have the effect of terminating or limiting any license. Contractor is in full compliance with each license and the requirements, therefore, and no statement in any application or other submission made to obtain or maintain any license was false in any material respect. Any employee of Contractor who is performing work which is required to be performed by a licensed individual is so licensed, and to Contractor's knowledge, each such license is in full force and effect. To Contractor's knowledge, no notice has been issued and no civil or criminal litigation, investigation or review is pending or threatened (i) with respect to any alleged violation by Contractor of any law, ordinance, regulation, order, policy or guideline of any governmental entity, or (ii) with respect to any alleged failure to have any or all licenses required in connection with the operation of the businesses of the Contractor.

V. EXECUTIVE ORDER COMPLIANCE:

a) The Contractor will not discriminate against any employee or applicant for employment because of race, color, religion, sex, age, disability national origin or any other category protected by law. The Contractor will take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, color, religion, sex, age, disability, national origin or any other category protected by law. Such action shall include, but not be limited to the following: employment, promotion, demotion, or transfer, recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. The Contractor agrees to post in conspicuous places, available to employees and applicants for employment, notices to be provided by the contracting officer setting forth the provisions of this nondiscrimination clause.

b) The Contractor will, in all solicitations or advertisements for employees placed by or on behalf of the Contractor, state that all qualified applicants will receive consideration for employment without regard to race, color, religion, sex, age, disability national origin or any other category protected by law.

c) The Contractor will send to each labor union or representative of workers with which it/she/he has a collective bargaining agreement or other contract or understanding, a notice to be provided by the agency contracting officer, advising the labor union or workers' representative of the Contractor's commitments under section 202 of Executive Order 11246 of September 24, 1965, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

d) The Contractor will comply with all provisions of Executive Order 11246 of September 24, 1965, and of the rules, regulations, and relevant orders of the Secretary of Labor.

e) The Contractor will furnish all information and reports required by Executive Order 11246 of September 24, 1965, and by the rules, regulations, and orders of the Secretary of Labor, or pursuant thereto, and will permit access to his books, records, and accounts by the contracting agency and the Secretary of Labor for purposes of investigation to ascertain compliance with such rules, regulations, and orders.

f) In the event of the Contractor's non-compliance with the nondiscrimination clauses of this Agreement or with any of such rules, regulations, or orders, this Agreement may be canceled, terminated or suspended in whole or in part and the Contractor may be declared ineligible for further Government contracts in accordance with procedures authorized in Executive Order 11246 of September 24, 1965, and such other sanctions may be imposed and remedies invoked as provided in Executive Order 11246 of September 24, 1965, or by rule, regulation, or order of the Secretary of Labor, or as otherwise provided by law.

g) Contractor will include the provisions of these paragraphs (a) through (g) in every subcontract or purchase order unless exempted by the rules, regulations or orders of the Secretary of Labor issued pursuant to section 204 of Executive Order 11246 of September 24, 1965, so that such provisions will be binding upon each Contractor or vendor. The Contractor will take such action with respect to any subcontract or purchase order as may be directed by the Secretary of Labor as a means of enforcing such provisions including sanctions for noncompliance: Provided, however, that in the event the Contractor becomes involved in, or is threatened with, litigation with a Contractor or vendor as a result of such direction, the Contractor may request the United States to enter into such litigation to protect the interests of the United States.

h) Contractor shall file, and shall cause each of its Subcontractors to file, Compliance Reports with the contracting agency or the Secretary of Labor as may be directed. Compliance Reports shall be filed within such times and shall contain such information as to the practices, policies, programs, and employment policies, programs, and employment statistics of the subcontractor and each Contractor, and shall be in such form, as the Secretary of Labor may prescribe.

i) The Contractor understands that it and its Subcontractors may be required to state whether they have participated in any previous contract subject to the provisions of this Order, or any preceding similar Executive Order, and in that event to submit, on behalf of themselves and their proposed subcontractors, Compliance Reports prior to or as an initial part of their bid or negotiation of a contract.

j) Whenever Contractor has a collective bargaining agreement or other contract or understanding with a labor union or an agency referring workers or providing or supervising apprenticeship or training for such workers, the Compliance Report shall include such information as to such labor union's or agency's practices and policies affecting compliance as the Secretary of Labor may prescribe: Provided, that to the extent such information is within the exclusive possession of a labor union or an agency referring workers or providing or supervising apprenticeship or training and such labor union or agency shall refuse to furnish such information to the subcontractor, the subcontractor shall so certify to the Secretary of Labor as part of its Compliance Report and shall set forth what efforts he has made to obtain such information.

k) The Contractor understands that the Secretary of Labor may direct that the Contractor or any of its Subcontractors shall submit, as part of its Compliance Report, a statement in writing, signed by an authorized officer or agent on behalf of any labor union or any agency referring workers or providing or supervising apprenticeship or other training, with which the Contractor or any of its Subcontractors, with supporting information, to the effect that the signer's practices and policies do not discriminate on the grounds of race, color, religion, sex or national origin, and that the signer either will affirmatively cooperate in the implementation of the policy and provisions of this Order or that it consents and agrees that recruitment, employment, and the terms and conditions of employment under the proposed contract shall be in accordance with the purposes and provisions of the order. In the event that the union, or the agency shall refuse to execute such a statement, the Compliance Report shall so certify and set forth what efforts have been made to secure such a statement and such additional factual material as the Secretary of Labor may require.

l) Pursuant to Executive Order 13496, the Contractor also agrees to post a notice, of such size and in such form, and containing such content as the Secretary of Labor shall prescribe, in conspicuous places in and about its plants and offices where employees covered by the National Labor Relations Act engage in activities relating to the performance of the contract, including all places where notices to employees are customarily posted both physically and electronically. The notice shall include the information contained in the notice published by the Secretary of Labor in the Federal Register (Secretary's Notice).

m) The Contractor will comply with all provisions of the Secretary's Notice, and related rules, regulations, and orders of the Secretary of Labor.

n) In the event that the Contractor does not comply with any of the requirements set forth in subparagraphs (l) or (m) above, the Contractor understands that this Agreement may be cancelled, terminated, or suspended in whole or in part, and the Contractor may be declared ineligible for further Government contracts in accordance with procedures authorized in or adopted pursuant to Executive Order 13496 of January 30, 2009. Such other sanctions or remedies may be imposed as are provided in Executive Order 13496 of January 30, 2009, or by rule, regulation, or order of the Secretary of Labor, or as are otherwise provided by law.

o) The Contractor will include the provisions of sub-paragraphs (l) through (n) above in every sub-subcontract entered into in connection with this contract (unless exempted by rules, regulations, or orders of the Secretary of Labor issued pursuant to section 3 of Executive Order 13496 of January 30, 2009) so that such provisions will be binding upon each of its Subcontractors. The Contractor will take such action with respect to any of its subcontracts as may be directed by the Secretary of Labor as a means of enforcing such provisions, including the imposition of sanctions for non-compliance; provided, however, that if the Contractor becomes involved in litigation with a Subcontractor, or is threatened with such involvement, as a result of such direction, the Contractor may request the United States to enter into such litigation to protect the interests of the United States.

p) If Contractor's business with 84 on federal government contracts is valued at $100,000.00 or more, then Contractor shall comply with the federal requirement of filing the VETS-100A annual report.

q) If Contractor has at least 100 employees, then it shall comply with the requirement of filing an EEO-1 form annually with Equal Employment Opportunity Commission.

VI. DAVIS BACON ACT COMPLIANCE: The Contractor shall comply with the Davis-Bacon Act (40 U.S.C. 276a to a-7) and as supplemented by Department of Labor regulations. Under this Act, Contractor is required to pay wages to laborers and mechanics at a rate not less than the minimum wages specified in a wage determination made by the United States Secretary of Labor. In addition, Contractor shall be responsible to ensure that it complies with any applicable non-federal Prevailing Wage or Living Wage statutes, regulations, or ordinances.

VII. E-VERIFICATION: If Contractor performs any work on a government job, Contractor must use E-Verify for all new employees, as well as all employees who perform work on the contract during the contract period except those who perform support work such as indirect or overhead functions.

VIII. BUY AMERICAN ACT: Buy American Act (41 U.S.C. § 10a-10d) and Trade Agreements Act (19 U.S.C. § 2501, et seq.). 84 Lumber does, from time to time, serve as a prime contractor or subcontractor on U.S. Government Contracts. And depending on the size and nature of any of 84 Lumber's U.S. Government Contracts, 84 Lumber must comply with both the Buy American Act ("the BAA") and The Trade Agreements Act ("the TAA"). The Contractor acknowledges that it understands the requirements of the BAA and the TAA. The Contractor agrees that it will comply with the BAA and TAA and the applicable Federal Acquisition Regulations ("FAR") that implement those Acts. The Contractor also agrees to provide 84 Lumber with all

required information, documentation and certification that the BAA or the TAA require 84 Lumber to provide to the U.S. Government. The Contractor acknowledges that the following FAR clauses are incorporated herein by reference, with the same force and effect as if they were given in full text, and are applicable to this Purchasing Agreement:

A. FAR 52.225-1 BUY AMERICAN ACT—SUPPLIES (FEB 2009)

B. FAR 52.225-3 BUY AMERICAN ACT—FREE TRADE AGREEMENTS —ISRAELI TRADE ACT (JUNE 2009)

C. FAR 52.225-5 TRADE AGREEMENTS (AUG 2009)

D. FAR 52.225-8 DUTY-FREE ENTRY (FEB 2000)

E. FAR 52.225-9 BUY AMERICAN ACT—CONSTRUCTION MATERIALS (FEB 2009)

F. FAR 52.225-11 BUY AMERICAN ACT—CONSTRUCTION MATERIALS UNDER TRADE AGREEMENTS (AUG 2009)

G. FAR 52.225-21 REQUIRED USE OF AMERICAN IRON, STEEL, AND OTHER MANUFACTURED GOODS—BUY AMERICAN ACT—CONSTRUCTION MATERIALS (MAR 2009)

H. FAR 42.225-23 REQUIRED USE OF AMERICAN IRON, STEEL, AND OTHER MANUFACTURED GOODS—BUY AMERICAN ACT—CONSTRUCTION MATERIALS UNDER TRADE AGREEMENTS (AUG 2009)

**IX. OTHER COMPLIANCE ISSUES:**

A. Because this Agreement is entered into by the Contractor in support of 84 Lumber's performance of a U.S. Government Contract, as either a prime contractor or a subcontractor, the FAR clauses contained in Exhibit 1 are incorporated by reference and, with the clarifications provided below, are applicable to this Agreement. If the date or substance of any of the clauses in Exhibit 1 is different from the date or substance of the clause actually used or incorporated into 84 Lumber's U.S. Government Contract or 84 Lumber's U.S. Government subcontract, the date or substance of the clause used or incorporated by 84 Lumber's U.S. Government Contract or 84 Lumber's U.S. Government subcontract shall apply instead. The Contracts Disputes Act shall not apply to this Purchasing Agreement.

B. As used in the FAR clauses contained Exhibit 2 and elsewhere in this Agreement, the following clarifications apply:

1. "Commercial Item" means a commercial item as defined in FAR 2.101.
2. "Contract" means this Purchase Agreement.
3. "Contracting Officer means the U.S. Government Contracting Officer for 84 Lumber's U.S. Government Subcontract under which this Agreement is entered.
4. "Contractor" and "Offeror" means the Contractor, as defined in this Agreement, acting as subcontractor to 84 Lumber.
5. "Prime Contract" means the contract between 84 Lumber and the U.S. Government or between 84 Lumber and between 84 Lumber and its higher-tier contractor who has a contract with the U.S. Government.
6. "Subcontract means any contract between the Contractor with lower-tiered subcontractors under this Agreement

**X. INDEMNIFICATION:**

a) In the performance of the Work, the Contractor agrees to indemnify, protect, save, hold harmless and defend 84 and its directors, officers, employees, predecessors, successors, subsidiaries, affiliates, related entities, members, partners, managers, owners, agents, servants, and contractors, harmless from and against any and all loss, costs, damages, suits, and liability whatsoever, and all related expenses, including costs and attorneys' fees, and all claims and demands therefor, whether with or without merit, for damages because of bodily injury, sickness, disease or death at any time resulting therefrom sustained by any person or persons, including 84 customers, Contractor and its employees, Contractor's subcontractors, or agents of Contractor, or on account of damage to real or personal property including the loss or use thereof, resulting from, arising out of or in any way connected with the performance of the Work by the Contractor, or by the Contractor's employees, agents or subcontractors regardless of whether or not such damage is caused or alleged to be caused in whole or in part by the negligence of 84 or any other party indemnified hereunder.

b) The Contractor further agrees to indemnify, protect, save, hold harmless and defend 84, its agent and employees from and against any claims made by employees from any actions, conduct or omissions of the Contractor, its agents or employees, including, but not limited to, charges of discrimination brought under the Equal Employment Opportunity Commission and the Workers Compensation Board (or similar department, commission or bureau), claims and losses alleging failure to comply with federal and state wage and hour laws, wrongful termination, discrimination, denial of due process or other labor-related causes of action resulting from employee conduct, hiring, discipline, or termination. Contractor shall also indemnify, protect, save, hold harmless and defend 84 from employee claims of sexual or other harassment by Contractor or any employee of Contractor.

c) The Contractor further agrees to indemnify, protect, save, hold harmless and defend 84, its agent and employees from and against any and all losses, damages, penalties, costs and expenses, including legal and accounting fees incurred or suffered by 84 which result from or arise out of any federal or state income tax withholding liability or taxes arising under the Federal Insurance Contributions Act or under the Federal Unemployment Tax Act, or similar federal or state tax, resulting from this Agreement.

d) The duty to defend includes the duty to pay reasonable attorneys' fees incurred by 84 in defending such actions, and the duty to indemnify includes the duty to pay any award imposed by an administrative agency, judgment or reached by way of settlement.

e) The Contractor, the Contractor's heirs, successors and assigns, hereby expressly waive and agree to waive any provision of the Worker's Compensation laws of contribution or indemnity in any action at law, or otherwise where Contractor or Contractor's employees, heirs, assigns or anyone otherwise entitled to receive damages by reason of injury or death or brings an action at law against 84.

**XI. INSURANCE:** Contractor shall provide Worker's Compensation Insurance covering contractor's drivers. Contractor shall also provide Commercial General Liability ( The policy should include the Broad Form Commercial General Liability Endorsement or an endorsement adding Blanket Contractual Liability Insurance with limits equal to those outlined) and Automobile Liability Insurance with limits not less than $1,000,000 per occurrence covering bodily injury, death, and property damage suffered by anyone including employees of 84 and/or of Contractor during the course of, and on the site of and/or adjacent to, the operations covered by this Agreement. Contractor shall be responsible for damage to and/or loss of any cargo from 84 regardless of the ownership/title of such cargo. Contractor shall name 84 an additional insured under Contractor's insurance policies by means of an "Additional Insured" endorsement in a form satisfactory to 84. Contractor shall also furnish 84 with a Certificate of Insurance illustrating such insurance policies which certifies that the Contractor has the required coverages in force at all relevant times and that none of the coverages may be cancelled without at least 30 days advance written notice to 84. Failure of Contractor to provide and maintain the above insurance and its specific requirements shall make Contractor the insurer. Failure to maintain insurance under the above terms and conditions shall constitute breach of the Agreement by Contractor and the immediate and automatic termination and forfeiture by contractor of all rights under this Agreement without notice from 84 to Contractor. Certificates of Insurance and notices shall be sent to 84 Lumber Company, ATTN: Hauling Department, Bldg. #5, 1019 Route 519, Eighty Four, PA 15330-2813. Contractor shall maintain, and 84 will only accept, insurance from an insurance company with an A+ Bests Rating, in force at all times during the term of this Agreement. ALL OF CONTRACT'S LIABILITY INSURANCE PREMIUMS MUST BE PAID IN ADVANCE FOR AT LEAST A ONE (1) YEAR PERIOD. NO PARTIAL PAYMENTS WILL BE PERMITTED. CONTRACTOR MUST SUBMIT CERTIFICATION TO 84 FROM ALL OF ITS LIABILITY INSURERS THAT ALL OF THE ANNUAL PREMIUMS HAVE BEEN PAID IN FULL FOR A ONE (1) YEAR PERIOD. CONTRACTOR HEREBY AUTHORIZES 84 TO DEDUCT FROM ANY FEES OR PAYMENTS DUE CONTRACTOR, THE UNPAID PREMIUM AMOUNT DUE FOR CONTRACTOR'S INSURANCE IF A "NOTICE OF CANCELLATION OF INSURANCE FOR NON-PAYMENT" IS RECEIVED BY 84.

**XII. MAINTENANCE / APPEARANCE:**

f) Contractor agrees to maintain, repair and service his equipment in a safe and clean condition, and Contractor further agrees to keep all records of such maintenance, repair and service and to make same available for inspection by 84 as 84 shall reasonably request. All expenses necessary to maintain, repair and service equipment in such condition are the Contractor's responsibility.

g) Contractor's employees will wear clean, neat clothes, which will include crepe-soled work boots, blue denim jeans or khaki pants, and a uniform shirt and/or jacket. Any clothing advocating, depicting, or implying drugs, sex, music, alcohol, or anything that does not directly relate to the delivery of building materials from 84 will not be worn by Contractor's employees.

## XIII. MISCELLANEOUS:

a) Contractor will acknowledge receipt of each load for delivery, and will furnish receipts signed by customers or their authorized agents for each load delivered and unloaded, with any discrepancies noted thereon. Contractor shall provide safe and timely delivery and unloading of all goods, with time being of the essence of this Agreement. In case any delivery is delayed for any reason, Contractor shall promptly notify 84 by telephone.

b) Contractor shall exercise the highest degree of care in performing this Agreement. Contractor shall supervise the loading of all cargo and shall adequately secure all loads so as to avoid risk or damage to anyone. Contractor shall obtain all required permits and licenses and comply with all laws and regulations relating to the transportation of goods covered by this Agreement or otherwise applicable to performance under this Agreement, solely at Contractor's expense. Contractor shall provide and pay for legal liability and Worker's Compensation insurance coverage, payroll contributions and taxes as required by law and by this Agreement. Contractor shall indemnify and defend 84 and the customers of 84 for whom Contractor performs services hereunder from and against all claims and liability of any kind arising out of Contractor's breach of, or failure of performance under, or otherwise in connection with this Agreement. Contractor hereby warrants and states that he is in full compliance with the Immigration Reform and Control Act of 1986 with respect to himself and respective employees, subcontractors and/or agents.

c) The parties intend that an independent contractor relationship will be created by this Agreement. Contractor is and shall be at all times an independent contractor and not an employee, agent or servant of 84 or of its customers. This Agreement is not a contract of employment and it is expressly agreed by the parties that Contractor is an independent contractor and is not an employee of 84, and is not entitled to any of the benefits offered to 84 employees by reason of their employment. Contractor shall be free from the direct supervision and control of 84 in the performance of Contractor's duties hereunder. Contractor shall have full choice and discretion as to loading and securing of material on the vehicle, routes to delivery site, unloading at delivery site, manpower needed at delivery site, which approved operator to use and all other decisions regarding the loading, transporting and delivery of materials on his equipment.

d) Contractor agrees that during the term of this Agreement, the services set forth herein shall not be provided to any competitor of 84.

e) 84 reserves the right to terminate this Agreement for any reason whatsoever with or without cause by giving fifteen (15) days written notice of such termination to Contractor at the address listed above.

f) This Agreement shall be binding upon Contractor and Contractor's successors, heirs, spouse, dependents and legal representatives and anyone claiming by or through Contractor.

g) The entire agreement of the parties is set forth in this written document and there are no other oral or written understandings, promises, representatives or agreements. This Agreement cannot be modified or amended except by a written document signed by both parties; and this Agreement shall supersede all previous communications, representations, or agreements, either verbal or written between the parties hereto.

h) The waiver or invalidity of any provisions herein shall not affect the validity of any other provision herein.

i) Any claim or controversy arising out of or relating to this Agreement, or the breach thereof, shall be settled by final and binding arbitration in Pittsburgh, Pennsylvania in accordance with the Commercial Arbitration Rules of the American Arbitration Association and judgment upon the award rendered by the arbitrator or arbitrators may be entered in any court having jurisdiction thereof. The parties agree that claims may be brought only in an individual capacity and not as a plaintiff or class member in any purported class or representative proceeding. The parties also agree that the arbitrator may not consolidate or join claims of more than the one claimant and may not preside over any form of representative or class proceeding. If this class action waiver is found to be unenforceable, then all arbitration provisions shall be null and void. This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania.

IN WITNESS WHEREOF, the undersigned parties have executed this Agreement to be effective on the day and year above written.

WITNESS

By: *Bradley T Sites*

Name: Brad Sites
Print

Title: Member

CONTRACTOR (Please sign both copies)

By: [signature]

Name: Chad Calcagno
Print

Title: President

Contractor's Fed. Tax ID or Social Security No. 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

WITNESS

By: *Denise Bastian*

Name: Denise Bastian
Print

Title: Administrative Assistant

84 LUMBER COMPANY

By: *Mitchell D. Feldman 2-18-22*

Name: Mitchell D. Feldman
Print

Title: V.P., Delivery Services

THIS AGREEMENT IS NOT VALID UNLESS EXECUTED BY THE 84 DIRECTOR OF DELIVERY SERVICES. NO OTHER 84 EMPLOYEE HAS AUTHORITY, EXPRESS OR IMPLIED, TO SIGN OR CHANGE TERMS AND CONDITIONS IN THIS AGREEMENT.

PLEASE RETURN EXECUTED ☐ AGREEMENT ☐ CERTIFICATE OF INSURANCE ☐ COPY OF CONTRACTOR'S APPLICABLE INTERSTATE AND INTRASTATE AUTHORITY LICENSES AND PERMITS TO THE 84 DELIVERY SERVICES DEPARTMENT

# EXHIBIT 1 - FAR CLAUSES INCORPORATED BY REFERENCE

The following FAR clauses apply to this Agreement:

FAR 52.211-5 MATERIAL REQUIREMENTS (AUG 2000)

FAR 52.215-20 REQUIREMENTS FOR COST OR PRICNG DATA OR INFORMATION OTHER THAN COST OR PRICING DATA (OCT 1997)

FAR 52.215-21 REQUIREMENTS FOR COST OR PRICNG DATA OR INFORMATION OTHER THAN COST OR PRICING DATA - MODIFICATIONS (OCT 1997)

FAR 52.219-8 UTILIZATION OF SMALL BUSINESS CONCERNS (MAY 2004)

FAR 52.222-21 PROHIBITION OF SEGREGATED FACILITIES (FEB 1999)

FAR 52.222-26 EQUAL OPPORTUNITY (MAR 2007)

FAR 52.222-50 COMBATING TRAFFICKING IN PERSONS (FEB 2009)

FAR 52.225-13 RESTRICTIONS ON CERTAIN FOREIGN PURCHASES (JUN 2008)

FAR 52.244-6 SUBCONTRACTS FOR COMMERCIAL ITEMS (JUN 2010)

FAR 52.247-64 PREFERENCE FOR PRIVATELY OWNED U.S. FLAG COMMERCIAL VESSELS (FEB 2006)

FAR 52.203-12 LIMITATION ON PAYMENTS TO INFLUENCE CERTAIN FEDERAL TRANSACTIONS (SEP 2007)

FAR 52.222.35 EQUAL OPPORTUNITY FOR SPECIAL DISABLED VETERANS, VETERANS OF THE VIETNAM ERA, AND OTHER ELIGIBLE BETERANS (SEP 2006)

FAR 52.203-13 CONTRACTOR CODE OF BUSINESS ETHICS AND CONDUCT (APR 2010)

FAR 52.204-2 SECURITY REQUIREMENTS (AUG 1996)

FAR 52.204-9 PERSONAL IDENTITY VERIFICATION OF CONTRACTOR PERSONNEL (SEP 2007)

FAR 52.222-41 SERVICE CONTRACT ACT OF 1965 (NOV 2007)

FAR 52.222-54 EMPLOYMENT ELIGIBILITY VERIFICATION (JAN 2009)

FAR 52.223-11 OZONE-DEPLETING SUBSTANCES (MAY 2001)

FAR 52.227-19 COMMERCIAL COMPUTER SOFTWARE LICENSE (DEC 2007)

FAR 52.245-1 GOVERNMENT PROPERTY (JUNE 2007)

FAR 52.203-11 CERTIFICATION AND DISCLOSURE REGARDING PAYMENTS TO INFLUENCE CERTAIN TRANSACTIONS (SEP 2007)

FAR 52.209-5 CERTIFICATION RESPONSIBILITY MATTERS (APR 2010)

FAR 52.222-22 PREVIOUS CONTRACTS AND COMPLIANCE REPORTS (FEB 1999)

FAR 52.222-25 AFFIRMATIAVE ACTION COMPLIANCE (APR 1984)

FAR 52.227-14 RIGHTS IN DATA - GENERAL (DEC 2007)

FAR 52.232-7 PAYMENTS UNDER TIME-AND-MATERIALS AND LABOR-HOUR CONTRACTS (FEB 2007)

FAR 52.234-1 INDUSTRIAL RESOURCES DEVELOPED UNDER DEFENSE PRODUCTION ACT TITLE III (DEC 1994)

FAR 52.242-13 BANKRUPTCY (JUL 1995)

FAR 52.242-15 STOP-WORK ORDER (AUG 1989)

FAR 52.243-3 CHANGES - TIME-AND-MATERIALS OR LABOR-HOURS (SEP 2000)

FAR 52.246-6 INSPECTION TIME-AND-MATERIAL AND LABOR-HOUR (MAY 2001)

FAR 52.249-6 TERMINATION (COST-REIMBURSEMENT) (MAY 2004)

FAR 52.249-14 EXCUSABLE DELAYS (APR 1984)

FAR 52.222-36 AFFIRMATIVE ACTION FOR WORKERS WITH DISABILITIES (JUN 1998)

FAR 52.203-6 RESTRICTIONS ON SUBCONTRACTOR SALES TO THE GOVERNMENT (SEP 2006)

FAR 52.215-14 INTEGRITY OF UNIT PRICES (OCT 1997)

FAR 52.215-23 LIMITATION ON PASS-THROUGH CHARGES (OCT 2009)

FAR 52.222-37 EMPLOYMENT REPORTS ON SPECIAL DISABLED VETERANS, VETERANS OF THE VIETNAM ERA, AND OTHER ELIGIBLE VETERANS (SEP 2006)

FAR 52.223-14 TOXIC CHEMICAL RELEASE REPORTING (AUG 2003)

FAR 52.227-2 NOTICE AND ASSISTANCE REGARDING PATENT AND COPYRIGHT INFRINGEMENT (DEC 2007)

FAR 52.248-1 VALUE ENGINEERING (FEB 2000)

FAR 52.219-9 SMALL BUSINESS SUBCONTRACTING PLAN (APR 2008)

FAR 52.215-12 SUBCONTRACTOR COST OR PRICING DATA (OCT 1997)

FAR 52.215-13 SUBCONTRACTOR COST OR PRICING DATA - MODIFICATIONS (OCT 1997)

FAR 52.203-14 DISPLAY OF HOTLINE POSTER(S) (DEC 2007)

FAR 52.215-10 PRICE REDUCTION FOR DEFECTIVE COST OR PRICING DATA (OCT 1997)

FAR 52.215-11 PRICE REDUCTION FOR DEFECTIVE COST OR PRICING DATA - MODIFICATIONS (OCT 1997)

FAR 52.215-15 PENSION ADJUSTMENTS AND ASSET REVERSIONS (OCT 2004)

FAR 52.215-16 FACILITIES CAPITAL COST OF MONEY (JUN 2003)

FAR 52.215-17 WAIVER OF FACILITIES CAPITAL COST OF MONEY (OCT 1997)

FAR 52.215-18 REVERSION OR ADJUSTMENT OF PLANS FOR POST-RETIREMENT BENEFITS (PRB) OTHER THAN PENSIONS (JUL 2005)

FAR 52.215-19 NOTIFICATION OF OWNERSHIP CHANGES (OCT 1997)

FAR 52.216-7 ALLOWABLE COST AND PAYMENT (DEC 2002)

FAR 52.222-4 CONTRACT WORK HOURS AND SAFETY STANDARDS ACT - OVERTIME COMPENSATION (JUL 2005)

FAR 52.223-3 HAZARDOUS MATERIAL IDENTIFICATION AND MATERIAL SAFETY DATA (JAN 1997)

FAR 52.223-7 NOTICE OF RADIOACTIVE MATERIALS (JAN 1997)

FAR 52.227-1 AUTHORIZATION AND CONSENT (DEC 2007)

FAR 52.227-9 REFUND OF ROYALTIES (APR 1984)

FAR 52.227-10 FILING OF PATENT APPLICATIONS-CLASSIFIED SUBJECT MATTER (DEC 2007)

FAR 52.227-11 PATENT RIGHTS-OWNERSHIP BY THE CONTRACTOR (SHORT FORM) (DEC 2007)

FAR 52.228-5 INSURANCE -- WORK ON A GOVERNMENT INSTALLATION (JAN 1997)

FAR 52.230-2 COST ACCOUNTING STANDARDS (OCT 2008)

FAR 52.230-3 DISCLOSURE AND CONSISTENCY OF COST ACCOUNTING PRACTICES (OCT 2008)

FAR 52.230-6 ADMINISTRATION OF COST ACCOUNTING STANDARDS (MAR 2008)

FAR 52.233-3 PROTEST AFTER AWARD (AUG 1996)

FAR 52.237-2 PROTECTION OF GOVERNMENT BUILDINGS, EQUIPMENT AND VEGETATION (APR 1984)

FAR 52.243-6 CHANGE ORDER ACCOUNTING (APR 1984)

FAR 52.234-1 INDUSTRIAL RESOURCES DEVELOPED UNDER DEFENSE PRODUCTION ACT TITLE III (DEC 1994)

FAR 52.243-1 CHANGES - FIXED PRICE (AUG 1987)

FAR 52.246-2 INSPECTION OF SUPPLIES - FIXED PRICE (AUG 1996)

FAR 52.246-4 INSPECTION OF SERVICES - FIXED PRICE (AUG 1996)

FAR 52.249-2 TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (FIXED-PRICE) (MAY 2004)

FAR 52.249-8 DEFAULT (FIXED-PRICE SUPPLY AND SERVICE) (APR 1984)

# Wil-Sites 0603, 0610, 0619, 0621, 0632, 0634, 0635 - 02.22

Final Audit Report 2022-02-21

| | |
|---|---|
| Created: | 2022-02-17 |
| By: | Ryan Oakes (ryan.oakes@84lumber.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAMafnAolF-W37Nx2DE7JXzZ4fwOsOsmtN |

## "Wil-Sites 0603, 0610, 0619, 0621, 0632, 0634, 0635 - 02.22" History

Document created by Ryan Oakes (ryan.oakes@84lumber.com)
2022-02-17 - 8:13:56 PM GMT- IP address: 50.206.42.28

Document emailed to Chad Calcagno (chad@wilsitestrucklines.com) for signature
2022-02-17 - 8:14:24 PM GMT

Email viewed by Chad Calcagno (chad@wilsitestrucklines.com)
2022-02-17 - 8:37:35 PM GMT- IP address: 96.11.78.75

Document e-signed by Chad Calcagno (chad@wilsitestrucklines.com)
Signature Date: 2022-02-17 - 8:38:00 PM GMT - Time Source: server- IP address: 96.11.78.75

Document emailed to Bradley J Sites (bsites@dwliftsales.com) for signature
2022-02-17 - 8:38:02 PM GMT

Email viewed by Bradley J Sites (bsites@dwliftsales.com)
2022-02-17 - 8:40:13 PM GMT- IP address: 96.11.78.75

Document e-signed by Bradley J Sites (bsites@dwliftsales.com)
Signature Date: 2022-02-17 - 8:40:50 PM GMT - Time Source: server- IP address: 96.11.78.75

Document emailed to Mitchell D. Feldman 2-18-22 (mitch.feldman@84lumber.com) for signature
2022-02-17 - 8:40:51 PM GMT

Email viewed by Mitchell D. Feldman 2-18-22 (mitch.feldman@84lumber.com)
2022-02-17 - 9:46:28 PM GMT- IP address: 104.28.78.137

Document e-signed by Mitchell D. Feldman 2-18-22 (mitch.feldman@84lumber.com)
Signature Date: 2022-02-18 - 9:43:15 PM GMT - Time Source: server- IP address: 24.3.215.229

Adobe Sign

Document emailed to Denise Bastian (denise.bastian@84lumber.com) for signature
2022-02-18 - 9:43:17 PM GMT

Email viewed by Denise Bastian (denise.bastian@84lumber.com)
2022-02-21 - 1:27:26 PM GMT- IP address: 50.206.42.28

Document e-signed by Denise Bastian (denise.bastian@84lumber.com)
Signature Date: 2022-02-21 - 1:27:56 PM GMT - Time Source: server- IP address: 50.206.42.28

Agreement completed.
2022-02-21 - 1:27:56 PM GMT

STATE OF NEW YORK
SUPREME COURT COUNTY OF MONROE

JAMES MAYNARD, JR.,

Plaintiff,

v.

84 LUMBER COMPANY and JAMES BARRY,

Defendants.

**THIRD-PARTY SUMMONS**

Index No. E2025008258

84 LUMBER COMPANY,
1019 Route 519
Eighty Four, PA 15330

Defendant/Third-Party Plaintiff,

v.

WIL-SITES TRUCK LINES, LLC
900 Buckeye Park Road
Columbus, OH 43207

Third-Party Defendant.

**TO THIRD-PARTY DEFENDANT:**

**YOU ARE SUMMONED** to appear in this action by serving your answer to the Third-Party Complaint on the Third-Party Plaintiff's attorney within the time limits stated below.

Monroe County is designated as the county where this action will be tried, because that is the venue of the primary action and because one or more parties resides and/or has a principal place of business in that county.



EXHIBIT
tabbies
F

**TIME LIMITS TO ANSWER:**

1) If this summons is served by delivery to you personally within New York State, you must answer the third-party complaint within TWENTY (20) days after such delivery.

2) If this summons is not served by delivery to you personally within New York State, and not served pursuant to CPLR 312-a, you must answer the third-party complaint within THIRTY (30) days after service is complete.

3) If this summons is served pursuant to CPLR 312-a, see accompanying STATEMENT OF SERVICE BY MAIL for time limits to answer.

**IF YOU FAIL TO ANSWER THE THIRD-PARTY COMPLAINT** within the time stated, judgment will be entered against you for the relief demanded in the third-party complaint.

Dated: June 26, 2025

**BOND, SCHOENECK & KING, PLLC**

By: Claire G. Bopp

Brian Laudadio, Esq.
Claire G. Bopp, Esq.
*Attorneys for Defendant//Third-Party Plaintiff 84 Lumber Company*
350 Linden Oaks, Third Floor
Rochester, New York 14625-2825
Phone: (585) 362-4700
blaudadio@bsk.com
cbopp@bsk.com

STATE OF NEW YORK
SUPREME COURT COUNTY OF MONROE

JAMES MAYNARD, JR.,

Plaintiff,

v.

84 LUMBER COMPANY and JAMES BARRY,

Defendants.

**THIRD-PARTY COMPLAINT**

Index No. E2025008258

84 LUMBER COMPANY,

Defendant/Third-Party Plaintiff,

v.

WIL-SITES TRUCK LINES, LLC

Third-Party Defendant.

Defendant/Third-Party Plaintiff 84 LUMBER COMPANY, by and through its attorneys, Bond, Schoeneck & King, PLLC, as and for its Third-Party Complaint against Third-Party Defendant, WIL-SITES TRUCK LINES, LLC states the following:

1. Defendant/Third-Party Plaintiff 84 Lumber Company ("84") is a Pennsylvania Limited Partnership having its principal place office at 1019 Route 519, Eight Four, PA 15330.

2. Upon information and belief, at all times relevant herein, Third-Party Defendant Wil-Sites Truck Lines, LLC ("Wil-Sites") was and is an Ohio Limited Liability Company with a principal office located at 900 Buckeye Park Road, Columbus, OH 43207.

3. At all times relevant herein, 84 owned and operated the building located at 1170 North Greece Road, Town of Greece, County of Monroe, State of New York ("the Subject Premises").

4. On or around April 16, 2025, Plaintiff in the primary action filed a Complaint ("the Complaint") in the Monroe County Clerk's office. A copy of the Summons and Complaint is filed as NYSCEF Doc. No. 1.

5. Defendant/Third-Party Plaintiff appeared by filing its Answer on June 24, 2025 and denied the material allegations in the Complaint. A copy of the Answer is filed as NYSCEF Doc. No. 3.

6. In February 2022, Third-Party Defendant Wil-Sites contractually agreed to provide hauling services for 84, including supervision, loading, unloading and transportation of materials to stores owned and operated by 84, including the Subject Premises (hereinafter "the Work").

7. Third-Party Defendant Wil-Sites and Defendant/Third-Party Plaintiff 84 entered into an Independent Contract Hauling Agreement on or about February 14, 2022 ("the Agreement"), a copy of which is attached hereto as **Exhibit A**.

8. Pursuant to Section X of the Agreement, Third-Party Defendant Wil-Sites is required to indemnify, hold harmless and defend 84 for claims and demands for damages resulting from bodily injury, sickness, disease or death sustained by any person, including Wil-Sites and its employees, arising out of or in any way connected with the performance of the Work by Wil-Sites, or by Wil-Sites' employees (*see* **Exhibit A**).

9. Plaintiff in the primary action alleges, among other things, that on July 27, 2022, while engaged in the scope of his employment by Third-Party Defendant Wil-Sites, he was injured while making a delivery of wood products to 84 at the Subject Premises.

10. Upon information and belief, the incident that is the basis for the primary action was exclusively caused by the alleged failure of Third-Party Defendant, Wil-Sites, without any culpable conduct on the part of Defendant/Third-Party Plaintiff.

11. Upon information and belief, if there is liability for this incident, the injuries allegedly suffered by Plaintiff were the result of the negligence, omission, breach of statutory obligation or duty of Third-Party Defendant, Wil-Sites.

**AS AND FOR A FIRST CAUSE OF ACTION FOR CONTRACTUAL INDEMNIFICATION**

12. Defendant/Third-Party Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 11 of this Third-Party Complaint with the same force and effect as if set forth herein.

13. Defendant/Third-Party Plaintiff denies any negligence, carelessness, fault, or statutory violations on its part with respect to the occurrence described in the Complaint, but if Plaintiff recovers judgment in this action against Defendant/Third-Party Plaintiff, then Defendant/Third-Party Plaintiff is entitled to contractual defense and indemnification from Third-Party Defendant Wil-Sites, based upon Section X of the Agreement entered into on or about February 14, 2022, included herein by reference, in which Third-Party Defendant agreed to defend, indemnify and hold harmless Defendant/Third-Party Plaintiff against any claims for damages because of bodily injury, sickness, disease or death sustained by any person arising out of or in any way connected with the performance of the Work by Wil-Sites.

14. Defendants/Third-Party Plaintiff tendered defense and indemnification of the primary action to Third-Party Defendant, Wil-Sites, pursuant to the terms of the Agreement.

15. Defendant/Third-Party Plaintiff is entitled to complete contractual indemnification from Third-Party Defendant, Wil-Sites, pursuant to the Agreement.

16. Third-Party Defendant, Wil-Sites, has breached the Agreement in failing to fully acknowledge and accept its obligation to indemnify Defendant/Third-Party Plaintiff for any and all damages recovered in the primary action.

17. If Plaintiff suffered any injuries through negligence, other than as a result of his own, and if Plaintiff should recover judgment against Defendant/Third-Party Plaintiff, then Third-Party Defendant, Wil-Sites, is contractually obligated to defend and indemnify Defendant/Third-Party Plaintiff for the entire amount of any such judgment or verdict that Plaintiff may recover against it, including damages, costs, expenses and all liabilities incurred, pursuant to the Agreement.

**AS AND FOR A SECOND CAUSE OF ACTION FOR COMMON-LAW INDEMNIFICATION**

18. Defendant/Third-Party Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 17 of this Third-Party Complaint with the same force and effect as if set forth herein.

19. Defendant/Third-Party Plaintiff denies any negligence, carelessness, fault, or statutory violations on its part with respect to the occurrence described in the Complaint, but if Plaintiff recovers judgment in this action against Defendant/Third-Party Plaintiff, its liability will have been brought about or caused by reason of the primary negligence, carelessness, fault, statutory violations, or other culpable conduct on the part of Third-Party Defendant, Wil-Sites.

20. Should Plaintiff recover judgment against Defendant/Third-Party Plaintiff, Third-Party Defendant Wil-Sites, shall be liable over to Defendant/Third-Party Plaintiff for such judgment on the basis of common-law indemnification.

**AS AND FOR A THIRD CAUSE OF ACTION FOR CONTRIBUTION**

21. Defendant/Third-Party Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 20 of this Third-Party Complaint with the same force and effect as if set forth herein.

22. Defendant/Third-Party Plaintiff denies any negligence, carelessness, fault, or statutory violations on its part with respect to the occurrence described in the Complaint, but if Plaintiff recovers judgment in this action against Defendant/Third-Party Plaintiff, its liability will have been brought about or caused by reason of the primary negligence, carelessness, fault, statutory violations, or other culpable conduct on the part of Third-Party Defendant, Wil-Sites.

23. Should Plaintiff recover judgment against Defendant/Third-Party Plaintiff, Third-Party Defendant, Wil-Sites, shall be liable over to Defendant/Third-Party Plaintiff for such judgment on the basis of contribution to the extent of its relative responsibility for the damages caused and the judgment obtained.

**WHEREFORE,** Defendant/Third-Party Plaintiff respectfully requests judgment, common-law indemnification, contractual indemnification and contractual damages against Third-Party Defendant, Wil-Sites, for any and all of the damages allegedly suffered by Plaintiff in the primary action, including any verdict, as well as the defense costs and attorney's fees expended in the defense of the primary action by Defendant/Third-Party Plaintiff, together with the costs and disbursements of this action and such other and further relief as this Court deems just, proper and equitable.

Dated: June 26, 2025

**BOND, SCHOENECK & KING, PLLC**

By: Claire G. Bopp

Brian Lauddio, Esq.
Claire G. Bopp, Esq.
*Attorneys for Defendant//Third-Party Plaintiff*
*84 Lumber Company*
350 Linden Oaks, Third Floor
Rochester, New York 14625-2825
Phone: (585) 362-4700
blaudadio@bsk.com
cbopp@bsk.com

TO: Wil-Sites Truck Lines, LLC,
900 Buckeye Park Road
Columbus, OH 43207

CC: Stephen A. Segar, Esq.
**SEGAR & SCIORTINO PLLC**
Attorneys for Plaintiff
400 Meridian Centre, Suite 320
Rochester, New York 14618

84 LUMBER

LEGAL DEPARTMENT

1019 ROUTE 519
EIGHTY FOUR, PENNSYLVANIA 15330-2813
PHONE: 724-228-8820 • FAX: 887-332-0024

DAVE MORGAN
Deputy General Counsel
E-Mail Address:
Dave.Morgan@84lumber.com

July 28, 2025

VIA UPS OVERNIGHT AND EMAIL

chad@wilsitestrucklines.com

Wil Sites Truck Lines, LLC.

c/o Chad Calcagno

900 Buckeye Park Road

Columbus, OH 43207

RE: Maynard, James v. 84 Lumber Co. and Barry, James

DOI: 07/27/2022; Case Number: E2025008258

Mr. Calcagno:

As a follow up to our correspondences dated May 19, 2025, and June 13, 2025 (see attached), 84 hereby requests that you provide written acknowledgement immediately upon receipt of this letter and confirm that Wil -Sites and your carrier, Great West Casualty Insurance Company will be providing 84 indemnification and defense as required by the Hauling Agreement. If 84 does not receive a prompt response from Wil Sites/ Great West Casualty Insurance Company; fess will continue to be incurred and 84 will seek reimbursement from Wil Sites and their insured, Great West Casualty Insurance Company.

Your prompt response is required and appreciated. Should you have any questions or concerns, please feel free to contact me.

Very truly yours,

Dave Morgan, Esq.

Deputy General Counsel

DJM/tg (encl.)

EXHIBIT

G

cc: Dave Rumbaugh (VIA EMAIL ONLY- Dave.Rumbaugh@84lumber.com)

BOND SCHOENECK & KING

350 Linden Oaks, Third Floor | Rochester, NY 14625-2825 | bsk.com

CLAIRE BOPP, ESQ.
cbopp@bsk.com
P: 585.362.4868
F: 585.362.4891

May 19, 2025

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Wil-Sites Truck Lines, LLC
900 Buckeye Park Road
Columbus, OH 43207

Re: *Tender of Complaint of James Maynard, Jr. Pursuant to Indemnification Agreement*

To Whom It May Concern:

We represent 84 Lumber Company and James Barry. We write to provide notice and tender the defense of a claim asserted against the foregoing parties arising from personal injuries allegedly sustained by James Maynard, Jr. on July 27, 2022 while making a delivery of wood products to 84 Lumber store located at 1170 North Greece Road, Rochester, New York 14626. As you may be aware, Mr. Maynard commenced an action in Supreme Court, Monroe County alleging personal injuries arising from the incident. A copy of the Summons and Complaint is enclosed.

This letter is being sent pursuant to the Independent Contractor Hauling Agreement ("the Agreement") executed by Wil-Sites Truck Lines ("Wil-Sites") and 84 Lumber Company ("84") on or about February 14, 2022. Pursuant to Section X of the Agreement, Wil-Sites is required to indemnify, hold harmless and defend 84 for claims and demands for damages resulting from bodily injury, sickness, disease or death sustained by any person, including Wil-Sites and its employees, arising out of or in any way connected with the performance of the Work by Wil-Sites, or by Wil-Site's employees, whether or not such damage is caused or alleged to be caused in whole or in part by the negligence of 84. A copy of the Agreement is enclosed herewith.

Section XI of the Agreement also required Wil-Sites to procure general liability insurance naming 84 as an additional insured. Please immediately report this claim to your primary general liability carriers, excess carriers, and other carriers whose policies cover 84.

Please provide written acknowledgement within ten (10) days of your receipt of this letter and confirm that: (i) Wil-Sites will be providing the Indemnitees defense and indemnification as required by the Agreement; and (ii) Wil-Sites has placed its appropriate liability carrier(s) on notice of this claim. If you need any additional information, or if you have any questions regarding the matter, please feel free to contact me.

We look forward to your prompt attention to this matter. In the meantime. we have and will continue to take appropriate steps to defend the Indemnitees in this matter. and we will seek reimbursement of all costs and fees associated with that defense.

Very truly yours,

BOND, SCHOENECK & KING, PLLC

Claire A. Bopp

Claire Bopp

CGP/slm
Enclosures

STATE OF NEW YORK
SUPREME COURT COUNTY OF MONROE

---

**JAMES MAYNARD, JR.,**

Plaintiff,

v.

**84 LUMBER COMPANY and JAMES BARRY,**

Defendants.

**SUMMONS**

Index No.:______________

---

**TO THE ABOVE NAMED DEFENDANTS:**

**YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the plaintiff's attorneys within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default.

Plaintiff designates Monroe County as the place of trial.

The basis of venue is the county where the incident complained of occurred.

The incident complained of occurred at 1170 North Greece Road, Town of Greece, County of Monroe, State of New York

Dated: April 3, 2025
Rochester, New York

**SEGAR & SCIORTINO PLLC**
Stephen A. Segar, Esq.
Attorney(s) for Plaintiff
Office and Post Office Address:
400 Meridian Centre, Suite 320
Rochester, New York 14618
Telephone No.: (585) 475-1100

TO: **84 LUMBER COMPANY**
c/o New York State Secretary of State

**JAMES BARRY**
c/o 84 Lumber Company
1170 North Greece Road
Rochester, New York 14626

FILED: MONROE COUNTY CLERK 04/16/2025 10:12 AM
NYSCEF DOC. NO. 1
INDEX NO. E2025008258
RECEIVED NYSCEF: 04/16/2025

STATE OF NEW YORK
SUPREME COURT COUNTY OF MONROE

---

**JAMES MAYNARD, JR.,**

Plaintiff,

v.

**84 LUMBER COMPANY and JAMES BARRY,**

Defendants.

---

**VERIFIED COMPLAINT**

Index No.:____________

Plaintiff James Maynard, Jr., per his attorneys Segar & Sciortino PLLC, complaining of the defendants, alleges:

1. Upon information and belief and at all times hereinafter mentioned, defendant 84 Lumber Company (hereinafter referred to as "84 Lumber") was and is a foreign limited partnership organized and existing under and by virtue of the laws of Pennsylvania and authorized to do business in New York State.

2. Upon information and belief and at all times hereinafter mentioned, defendant 84 Lumber's principal place of business was and presently still is located at 1019 Route 519, City of Eighty Four, County of Washington, State of Pennsylvania.

3. Upon information and belief and at all times hereinafter mentioned, defendant 84 Lumber owned and operated commercial premises located at 1170 North Greece Road, Town of Greece, County of Monroe, State of New York.

4. Upon information and belief and at all times hereinafter mentioned, defendant James Barry was an employee of defendant 84 Lumber.

5. Upon information and belief and at all times hereinafter mentioned, defendant James Barry was acting in the course of and within the scope of his employment with defendant 84 Lumber.

6. At all times hereinafter mentioned, plaintiff was employed by Wil-Sites Truck Lines, LLC.

7. On or about July 27, 2022 at approximately 2:30 p.m., plaintiff, while engaged in the scope of said employment, made a delivery of wood products to 84 Lumber at said Town of Greece location using a large flatbed truck.

8. As said delivery of wood products was being unloaded by defendant James Barry, Mr. Barry, while using a forklift, pushed a large piece or pieces of lumber from the top of the load on said flatbed truck onto plaintiff, striking him about the head, face, shoulders and neck.

9. As a result of said incident, plaintiff sustained serious injuries as defined pursuant to New York State Insurance Law §5102(d), including but not limited to his head, neck, left shoulder, left knee, left foot, left wrist, left forearm and post-traumatic stress disorder.

10. As a result of said incident, plaintiff sustained economic loss in excess of basic economic loss as defined pursuant to New York State Insurance Law §5102(a).

11. The incident and plaintiff's resulting injuries were caused by the careless, negligent and/or reckless actions of defendant James Barry also attributable to his employer defendant 84 Lumber.

12. By reason of the foregoing, plaintiff was rendered disabled and was caused to sustain injuries which may be permanent in nature, was disabled from working resulting in loss of income and may suffer future loss of income, was compelled to undergo medical care and will require further medical care and has suffered and continues to suffer mental anguish and pain and has sustained damages and is entitled to collect same against the defendants.

13. By reason of the foregoing, plaintiff has been damaged in excess of the jurisdictional limits of all lower courts in which this action may otherwise have been brought.

**WHEREFORE**, plaintiff demands judgment against the defendants together with costs, disbursements and such other and further relief the court deems just and proper.

DATED: April 3, 2025

**SEGAR & SCIORTINO PLLC**
Stephen A. Segar, Esq.
Attorney(s) for Plaintiff
Office and Post Office Address:
400 Meridian Centre, Suite 320
Rochester, New York 14618
Telephone No.: (585) 475-1100

# VERIFICATION

STATE OF NEW YORK )
COUNTY OF MONROE ) ss:

James Maynard, Jr., being duly sworn, deposes and says that deponent is the plaintiff in the within action, that deponent has read the foregoing complaint and knows the contents thereof, that the same is true to deponent's own knowledge, except as to those matters therein stated to be alleged on information and belief, and that as to those matters deponent believes them to be true.

James Maynard, Jr.

Sworn to before me this
3rd day of April, 2025.

NOTARY PUBLIC

STEPHEN A. SEGAR
Notary Public, State of New York
No. 02SE4886787
Qualified in Monroe County
Commission Expires Feb 17, 20 27

84 LUMBER
Build on what we know.

INDEPENDENT CONTRACTOR HAULING AGREEMENT

This Agreement is made this 14th day of February 2022 to be effective on the 21st day of February 2022 between 84 Lumber Company ("84"), a Pennsylvania Limited Partnership having its principal office at 1019 Route 519, Eighty Four, PA 15330-2813 and Wil-Sites Truck Lines (hereinafter "Contractor"), a LLC having its principal office at 900 Buckeye Park Road, Columbus, OH 43207 (614) 444-3174
(Street Address, City, State, Zip Code) (Phone Number)

I. **TERM:** This Agreement shall be for an initial term of one (1) year from the effective date, and thereafter shall automatically renew and continue for year-to-year terms. Notwithstanding the previous sentence, this Agreement may be terminated (1) by 84, for any reason whatsoever, with or without cause, at anytime during the initial term or any renewal term by giving fifteen (15) days advance written notice of such termination to Contractor at the address listed above, or (2) by Contractor, with or without cause, at the end of the initial term or any renewal term by giving thirty (30) days advance written notice of such termination to 84 at the address listed above.

II. **FEES/PAYMENT**

a) Contractor, an independent contractor, agrees to provide supervision, loading, unloading, transportation and related services (hereinafter referred to as "Work") for the customers of 84 in a good, safe and workmanlike manner, using suitable equipment, maintained and operated in a responsible and safe manner to deliver materials according to the following rate schedule.

**Option 1** Cost per Load (Loaded Mileage only)

| Mileage Zone | Rate Per Load: Box Truck Single Axle | Tandem w/Pig | Boom Truck |
|---|---|---|---|
| 0-5 Miles | $ 80 | 119 | 150 |
| 6-10 Miles | $ 86 | 131 | 150 |
| 11-20 Miles | $ 100 | 161 | 172 |
| 21-30 Miles | $ 123 | 189 | 206 |
| 31-40 Miles | $ 143 | 216 | 235 |
| 41-50 Miles | $ 153 | 240 | 293 |
| 50+ Miles | $ +3.50/mi | +4.00/mi | +4.00/mi |

- **Yard Transfer:** [illegible]
- **Truck Transfer:** [illegible]
- **Extra Man Rate:** [illegible]
- **Drop Charge:** $55 [illegible]
- **Job Site Labor:** [illegible]
- **Yard Down Time:** [illegible]
- **Hand Unloading:** [illegible]
- **Call Back Fee:** $50 [illegible]
- **Pick Up:** [illegible]
- **Flat Rate Vehicles:**
  - [illegible]
    - [illegible]
  - [illegible]
- **6-Story Boom Minimum:** [illegible]
- **Driver Subsidies: Refer to attached Addendum A**

b) Weekly hauler logs and the entries thereon shall be deemed conclusive and binding upon Contractor unless written objections to entries on a questioned weekly hauler log are received by 84 within thirty (30) days from the date issuance of the weekly hauler log to which the objection applies.

c) Contractor agrees to deliver the following specific materials according to the following rate schedule:

Drywall .01 sq ft slide off .02 sq ft 1st floor
.15 sq ft boom
Shingles .25 bundle hand unload on ground
.40 bundle boom to roof

If Contractor is owed any monies by 84 under the provisions of Sec. II above, these monies will only be paid after Contractor has presented to 84 a fully completed and signed trip report and weekly hauler log for each load. 84 will only pay for Contractor's services by check issued from 84's Headquarters. Contractor must present these statements to the 84 Lumber Store Manager every Friday. Any statement not so presented must be held until the following Friday. <u>No cash payments will be made.</u>

d) 84 specifically retains the right to set off amounts which may be owned by 84 to Contractor hereunder against any amounts which may be owed by Contractor to 84 whether hereunder or pursuant to any other agreement, contract, or obligation of Contractor to 84.

III. **AREA/AVAILABILITY:**

a) Contractor will be available, and will make deliveries, during the following hours:

Monday First out until Completion
Tuesday ↓
Wednesday
Thursday
Friday
Saturday/Holidays $20 delivery
Sunday

b) Contractor agrees to deliver material under the terms and conditions of this Agreement for the following 84 locations:

(i) Store #0603 Rochester, NY Store #0610 Dewitt, NY Store #0619 Victor, NY
(ii) Store #0621 Greece, NY Store #0632 Elma, NY
(iii) Store #0634 Geneva, NY Store #0635 Chaffee, NY

IV. **COMPLIANCE WITH THE LAW:** Contractor has conducted, and is conducting the business(es) of the Contractor in full compliance with all applicable laws, regulations, and requirements of each jurisdiction, whether federal, state or local, in which Contractor operates. Contractor has, from every governmental body (each a "Governmental Entity") all approvals, consents, licenses, permits, and orders (together the "licenses") necessary to carry on the businesses of the Contractor as currently conducted. All such licenses are in full force and effect, and no proceeding is pending or, to Contractor's knowledge, threatened which might have the effect of terminating or limiting any license. Contractor is in full compliance with each license and the requirements, therefore, and no statement in any application or other submission made to obtain or maintain any license was false in any material respect. Any employee of Contractor who is performing work which is required to be performed by a licensed individual is so licensed, and to Contractor's knowledge, each such license is in full force and effect. To Contractor's knowledge, no notice has been issued and no civil or criminal litigation, investigation or review is pending or threatened (i) with respect to any alleged violation by Contractor of any law, ordinance, regulation, order, policy or guideline of any governmental entity, or (ii) with respect to any alleged failure to have any or all licenses required in connection with the operation of the businesses of the Contractor.

V. **EXECUTIVE ORDER COMPLIANCE:**

a) The Contractor will not discriminate against any employee or applicant for employment because of race, color, religion, sex, age, disability national origin or any other category protected by law. The Contractor will take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, color, religion, sex, age, disability, national origin or any other category protected by law. Such action shall include, but not be limited to the following: employment, promotion, demotion, or transfer, recruitment or recruitment advertising, layoff or termination; rates of pay or other forms of compensation, and selection for training, including apprenticeship. The Contractor agrees to post in conspicuous places, available to employees and applicants for employment, notices to be provided by the contracting officer setting forth the provisions of this nondiscrimination clause.

b) The Contractor will, in all solicitations or advertisements for employees placed by or on behalf of the Contractor, state that all qualified applicants will receive consideration for employment without regard to race, color, religion, sex, age, disability, national origin or any other category protected by law.

c) The Contractor will send to each labor union or representative of workers with which it/she/he has a collective bargaining agreement or other contract or understanding, a notice to be provided by the agency contracting officer, advising the labor union or workers' representative of the Contractor's commitments under section 202 of Executive Order 11246 of September 24, 1965, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

d) The Contractor will comply with all provisions of Executive Order 11246 of September 24, 1965, and of the rules, regulations, and relevant orders of the Secretary of Labor.

e) The Contractor will furnish all information and reports required by Executive Order 11246 of September 24, 1965, and by the rules, regulations, and orders of the Secretary of Labor, or pursuant thereto, and will permit access to his books, records, and accounts by the contracting agency and the Secretary of Labor for purposes of investigation to ascertain compliance with such rules, regulations and orders.

f) In the event of the Contractor's non-compliance with the nondiscrimination clauses of this Agreement or with any of such rules, regulations, or orders, this Agreement may be canceled, terminated or suspended in whole or in part and the Contractor may be declared ineligible for further Government contracts in accordance with procedures authorized in Executive Order 11246 of September 24, 1965, and such other sanctions may be imposed and remedies invoked as provided in Executive Order 11246 of September 24, 1965, or by rule, regulation, or order of the Secretary of Labor, or as otherwise provided by law.

g) Contractor will include the provisions of these paragraphs (a) through (g) in every subcontract or purchase order unless exempted by the rules, regulations or orders of the Secretary of Labor issued pursuant to section 204 of Executive Order 11246 of September 24, 1965, so that such provisions will be binding upon each Contractor or vendor. The Contractor will take such action with respect to any subcontract or purchase order as may be directed by the Secretary of Labor as a means of enforcing such provisions including sanctions for noncompliance. Provided, however, that in the event the Contractor becomes involved in, or is threatened with, litigation with a Contractor or vendor as a result of such direction, the Contractor may request the United States to enter into such litigation to protect the interests of the United States.

h) Contractor shall file, and shall cause each of its Subcontractors to file, Compliance Reports with the contracting agency or the Secretary of Labor as may be directed. Compliance Reports shall be filed within such times and shall contain such information as to the practices, policies, programs, and employment policies, programs, and employment statistics of the subcontractor and each Contractor, and shall be in such form as the Secretary of Labor may prescribe.

i) The Contractor understands that it and its Subcontractors may be required to state whether they have participated in any previous contract subject to the provisions of this Order, or any preceding similar Executive Order, and in that event to submit, on behalf of themselves and their proposed subcontractors, Compliance Reports prior to or as an initial part of their bid or negotiation of a contract.

j) Whenever Contractor has a collective bargaining agreement or other contract or understanding with a labor union or an agency referring workers or providing or supervising apprenticeship or training for such workers, the Compliance Report shall include such information as to such labor union's or agency's practices and policies affecting compliance as the Secretary of Labor may prescribe. Provided, that to the extent such information is within the exclusive possession of a labor union or an agency referring workers or providing or supervising apprenticeship or training and such labor union or agency shall refuse to furnish such information to the subcontractor, the subcontractor shall so certify to the Secretary of Labor as part of its Compliance Report and shall set forth what efforts he has made to obtain such information.

k) The Contractor understands that the Secretary of Labor may direct that the Contractor or any of its Subcontractors shall submit, as part of its Compliance Report, a statement in writing, signed by an authorized officer or agent on behalf of any labor union or any agency referring workers or providing or supervising apprenticeship or other training, with which the Contractor or any of its Subcontractors, with supporting information, to the effect that the signer's practices and policies do not discriminate on the grounds of race, color, religion, sex or national origin, and that the signer either will affirmatively cooperate in the implementation of the policy and provisions of this Order or that it consents and agrees that recruitment, employment, and the terms and conditions of employment under the proposed contract shall be in accordance with the purposes and provisions of the order. In the event that the union, or the agency shall refuse to execute such a statement, the Compliance Report shall so certify and set forth what efforts have been made to secure such a statement and such additional factual material as the Secretary of Labor may require.

l) Pursuant to Executive Order 13496, the Contractor also agrees to post a notice, of such size and in such form, and containing such content as the Secretary of Labor shall prescribe, in conspicuous places in and about its plants and offices where employees covered by the National Labor Relations Act engage in activities relating to the performance of the contract, including all places where notices to employees are customarily posted both physically and electronically. The notice shall include the information contained in the notice published by the Secretary of Labor in the Federal Register (Secretary's Notice).

m) The Contractor will comply with all provisions of the Secretary's Notice, and related rules, regulations, and orders of the Secretary of Labor.

n) In the event that the Contractor does not comply with any of the requirements set forth in subparagraphs (l) or (m) above, the Contractor understands that this Agreement may be cancelled, terminated, or suspended in whole or in part, and the Contractor may be declared ineligible for further Government contracts in accordance with procedures authorized in or adopted pursuant to Executive Order 13496 of January 30, 2009. Such other sanctions or remedies may be imposed as are provided in Executive Order 13496 of January 30, 2009, or by rule, regulation, or order of the Secretary of Labor, or as are otherwise provided by law.

o) The Contractor will include the provisions of sub-paragraphs (l) through (n) above in every sub-subcontract entered into in connection with this contract (unless exempted by rules, regulations, or orders of the Secretary of Labor issued pursuant to section 3 of Executive Order 13496 of January 30, 2009) so that such provisions will be binding upon each of its Subcontractors. The Contractor will take such action with respect to any of its subcontracts as may be directed by the Secretary of Labor as a means of enforcing such provisions, including the imposition of sanctions for non-compliance, provided, however, that if the Contractor becomes involved in litigation with a Subcontractor, or is threatened with such involvement, as a result of such direction, the Contractor may request the United States to enter into such litigation to protect the interests of the United States.

p) If Contractor's business with 84 on federal government contracts is valued at $100,000.00 or more, then Contractor shall comply with the federal requirement of filing the VETS-100A annual report.

q) If Contractor has at least 100 employees, then it shall comply with the requirement of filing an EEO-1 form annually with Equal Employment Opportunity Commission.

VI. **DAVIS BACON ACT COMPLIANCE:** The Contractor shall comply with the Davis-Bacon Act (40 U.S.C. 276a to a-7) and as supplemented by Department of Labor regulations. Under this Act, Contractor is required to pay wages to laborers and mechanics at a rate not less than the minimum wages specified in a wage determination made by the United States Secretary of Labor. In addition, Contractor shall be responsible to ensure that it complies with any applicable non-federal Prevailing Wage or Living Wage statutes, regulations, or ordinances.

VII. **E-VERIFICATION:** If Contractor performs any work on a government job, Contractor must use E-Verify for all new employees, as well as all employees who perform work on the contract during the contract period except those who perform support work such as indirect or overhead functions.

VIII. **BUY AMERICAN ACT:** Buy American Act (41 U.S.C. § 10a-10d) and Trade Agreements Act (19 U.S.C. § 2501, et seq.). 84 Lumber does, from time to time, serve as a prime contractor or subcontractor on U.S. Government Contracts. And depending on the size and nature of any of 84 Lumber's U.S. Government Contracts, 84 Lumber must comply with both the Buy American Act ("the BAA") and The Trade Agreements Act ("the TAA"). The Contractor acknowledges that it understands the requirements of the BAA and the TAA. The Contractor agrees that it will comply with the BAA and TAA and the applicable Federal Acquisition Regulations ("FAR") that implement those Acts. The Contractor also agrees to provide 84 Lumber with all

306007

required information, documentation and certification that the BAA or the TAA require 84 Lumber to provide to the U.S. Government. The Contractor acknowledges that the following FAR clauses are incorporated herein by reference with the same force and effect as if they were given in full text, and are applicable to this Purchasing Agreement

A FAR 52.225-1 BUY AMERICAN ACT—SUPPLIES (FEB 2009)

B FAR 52.225-3 BUY AMERICAN ACT—FREE TRADE AGREEMENTS —ISRAELI TRADE ACT (JUNE 2009)

C FAR 52.225-5 TRADE AGREEMENTS (AUG 2009)

D FAR 52.225-8 DUTY-FREE ENTRY (FEB 2000)

E FAR 52.225-9 BUY AMERICAN ACT—CONSTRUCTION MATERIALS (FEB 2009)

F FAR 52.225-11 BUY AMERICAN ACT—CONSTRUCTION MATERIALS UNDER TRADE AGREEMENTS (AUG 2009)

G FAR 52.225-21 REQUIRED USE OF AMERICAN IRON, STEEL, AND OTHER MANUFACTURED GOODS—BUY AMERICAN ACT—CONSTRUCTION MATERIALS (MAR 2009)

H FAR 52.225-23 REQUIRED USE OF AMERICAN IRON, STEEL, AND OTHER MANUFACTURED GOODS—BUY AMERICAN ACT—CONSTRUCTION MATERIALS UNDER TRADE AGREEMENTS (AUG 2009)

## IX. OTHER COMPLIANCE ISSUES:

A Because this Agreement is entered into by the Contractor in support of 84 Lumber's performance of a U.S. Government Contract, as either a prime contractor or a subcontractor, the FAR clauses contained in Exhibit 1 are incorporated by reference and, with the clarifications provided below, are applicable to this Agreement. If the date or substance of any of the clauses in Exhibit 1 is different from the date or substance of the clause actually used or incorporated into 84 Lumber's U.S. Government Contract or 84 Lumber's U.S. Government subcontract, the date or substance of the clause used or incorporated by 84 Lumber's U.S. Government Contract or 84 Lumber's U.S. Government subcontract shall apply instead. The Contracts Disputes Act shall not apply to this Purchasing Agreement

B As used in the FAR clauses contained Exhibit 2 and elsewhere in this Agreement, the following clarifications apply

1 "Commercial Item" means a commercial item as defined in FAR 2.101
2 "Contract" means this Purchase Agreement
3 "Contracting Officer means the U.S. Government Contracting Officer for 84 Lumber's U.S. Government Subcontract under which this Agreement is entered
4 "Contractor" and "Offeror" means the Contractor, as defined in this Agreement, acting as subcontractor to 84 Lumber
5 "Prime Contract" means the contract between 84 Lumber and the U.S. Government or between 84 Lumber and between 84 Lumber and its higher-tier contracter who has a contract with the U.S. Government
6 "Subcontract means any contract between the Contractor with lower-tiered subcontractors under this Agreement

## X. INDEMNIFICATION:

a) In the performance of the Work, the Contractor agrees to indemnify, protect, save, hold harmless and defend 84 and its directors, officers, employees, predecessors, successors, subsidiaries, affiliates, related entities, members, partners, managers, owners, agents, servants and contractors, harmless from and against any and all loss, costs, damages, suits, and liability whatsoever, and all related expenses including costs and attorneys' fees, and all claims and demands therefor, whether with or without merit, for damages because of bodily injury, sickness, disease or death at any time resulting therefrom sustained by any person or persons including 84 customers, Contractor and its employees, Contractor's subcontractors, or agents of Contractor, or on account of damage to real or personal property including the loss or use thereof, resulting from, arising out of or in any way connected with the performance of the Work by the Contractor, or by the Contractor's employees, agents or subcontractors regardless of whether or not such damage is caused or alleged to be caused in whole or in part by the negligence of 84 or any other party indemnified hereunder

b) The Contractor further agrees to indemnify, protect, save, hold harmless and defend 84, its agent and employees from and against any claims made by employees from any actions, conduct or omissions of the Contractor, its agents or employees, including, but not limited to, charges of discrimination brought under the Equal Employment Opportunity Commission and the Workers Compensation Board (or similar department, commission or bureau), claims and losses alleging failure to comply with federal and state wage and hour laws, wrongful termination, discrimination, denial of due process or other labor-related causes of action resulting from employee conduct, hiring, discipline or termination. Contractor shall also indemnify, protect, save, hold harmless and defend 84 from employee claims of sexual or other harassment by Contractor or any employee of Contractor

c) The Contractor further agrees to indemnify, protect, save, hold harmless and defend 84, its agent and employees from and against any and all losses, damages, penalties, costs and expenses, including legal and accounting fees incurred or suffered by 84 which result from or arise out of any federal or state income tax withholding liability or taxes arising under the Federal Insurance Contributions Act or under the Federal Unemployment Tax Act, or similar federal or state tax, resulting from this Agreement

d) The duty to defend includes the duty to pay reasonable attorneys' fees incurred by 84 in defending such actions, and the duty to indemnify includes the duty to pay any award imposed by an administrative agency, judgment or reached by way of settlement

e) The Contractor, the Contractor's heirs, successors and assigns hereby expressly waive and agree to waive any provision of the Worker's Compensation laws of contribution or indemnity in any action at law, or otherwise where Contractor or Contractor's employees, heirs, assigns or anyone otherwise entitled to receive damages by reason of injury or death or brings an action at law against 84

## XI. INSURANCE:

Contractor shall provide Worker's Compensation Insurance covering contractor's drivers. Contractor shall also provide Commercial General Liability (The policy should include the Broad Form Commercial General Liability Endorsement or an endorsement adding Blanket Contractual Liability Insurance with limits equal to those outlined) and Automobile Liability Insurance with limits not less than $1,000,000 per occurrence covering bodily injury, death, and property damage suffered by anyone including employees of 84 and/or of Contractor during the course of, and on the site of and/or adjacent to, the operations covered by this Agreement. Contractor shall be responsible for damage to and/or loss of any cargo from 84 regardless of the ownership/title of such cargo. Contractor shall name 84 an additional insured under Contractor's insurance policies by means of an "Additional Insured" endorsement in a form satisfactory to 84. Contractor shall also furnish 84 with a Certificate of Insurance illustrating such insurance policies which certifies that the Contractor has the required coverages in force at all relevant times and that none of the coverages may be cancelled without at least 30 days advance written notice to 84. Failure of Contractor to provide and maintain the above insurance and its specific requirements shall make Contractor the insurer. Failure to maintain insurance under the above terms and conditions shall constitute breach of the Agreement by Contractor and the immediate and automatic termination and forfeiture by contractor of all rights under this Agreement without notice from 84 to Contractor. Certificates of Insurance and notices shall be sent to 84 Lumber Company, ATTN: Hauling Department, Bldg. #5, 1019 Route 519, Eighty Four, PA 15330-2813. Contractor shall maintain, and 84 will only accept, insurance from an insurance company with an A- Bests Rating in force at all times during the term of this Agreement. ALL OF CONTRACT'S LIABILITY INSURANCE PREMIUMS MUST BE PAID IN ADVANCE FOR AT LEAST A ONE (1) YEAR PERIOD. NO PARTIAL PAYMENTS WILL BE PERMITTED. CONTRACTOR MUST SUBMIT CERTIFICATION TO 84 FROM ALL OF ITS LIABILITY INSURERS THAT ALL OF THE ANNUAL PREMIUMS HAVE BEEN PAID IN FULL FOR A ONE (1) YEAR PERIOD. CONTRACTOR HEREBY AUTHORIZES 84 TO DEDUCT FROM ANY FEES OR PAYMENTS DUE CONTRACTOR, THE UNPAID PREMIUM AMOUNT DUE FOR CONTRACTOR'S INSURANCE IF A "NOTICE OF CANCELLATION OF INSURANCE FOR NON-PAYMENT" IS RECEIVED BY 84

## XII. MAINTENANCE / APPEARANCE:

f) Contractor agrees to maintain, repair and service his equipment in a safe and clean condition, and Contractor further agrees to keep all records of such maintenance, repair and service and to make same available for inspection by 84 as 84 shall reasonably request. All expenses necessary to maintain, repair and service equipment in such condition are the Contractor's responsibility

g) Contractor's employees will wear clean, neat clothes, which will include crepe-soled work boots, blue denim jeans or khaki pants, and a uniform shirt and/or jacket. Any clothing advocating, depicting, or implying drugs, sex, music, alcohol, or anything that does not directly relate to the delivery of building materials from 84 will not be worn by Contractor's employees

**XIII. MISCELLANEOUS:**

a) Contractor will acknowledge receipt of each load for delivery and will furnish receipts signed by customers or their authorized agents for each load delivered and unloaded with any discrepancies noted thereon. Contractor shall provide safe and timely delivery and unloading of all goods with time being of the essence of this Agreement. In case any delivery is delayed for any reason, Contractor shall promptly notify 84 by telephone.

b) Contractor shall exercise the highest degree of care in performing this Agreement. Contractor shall supervise the loading of all cargo and shall adequately secure all loads so as to avoid risk or damage to anyone. Contractor shall obtain all required permits and licenses and comply with all laws and regulations relating to the transportation of goods covered by this Agreement or otherwise applicable to performance under this Agreement, solely at Contractor's expense. Contractor shall provide and pay for legal liability and Worker's Compensation insurance coverage, payroll contributions and taxes as required by law and by this Agreement. Contractor shall indemnify and defend 84 and the customers of 84 for whom Contractor performs services hereunder from and against all claims and liability of any kind arising out of Contractor's breach of or failure of performance under, or otherwise in connection with this Agreement. Contractor hereby warrants and states that he is in full compliance with the Immigration Reform and Control Act of 1986 with respect to himself and respective employees, subcontractors and/or agents.

c) The parties intend that an independent contractor relationship will be created by this Agreement. Contractor is and shall be at all times an independent contractor and not an employee, agent or servant of 84 or of its customers. This Agreement is not a contract of employment and it is expressly agreed by the parties that Contractor is an independent contractor and is not an employee of 84, and is not entitled to any of the benefits offered to 84 employees by reason of their employment. Contractor shall be free from the direct supervision and control of 84 in the performance of Contractor's duties hereunder. Contractor shall have full choice and discretion as to loading and securing of material on the vehicle, routes to delivery site, unloading at delivery site, manpower needed at delivery site, which approved operator to use and all other decisions regarding the loading, transporting and delivery of materials on his equipment.

d) Contractor agrees that during the term of this Agreement the services set forth herein shall not be provided to any competitor of 84.

e) 84 reserves the right to terminate this Agreement for any reason whatsoever with or without cause by giving fifteen (15) days written notice of such termination to Contractor at the address listed above.

f) This Agreement shall be binding upon Contractor and Contractor's successors, heirs, spouse, dependents and legal representatives and anyone claiming by or through Contractor.

g) The entire agreement of the parties is set forth in this written document and there are no other oral or written understandings, promises, representatives or agreements. This Agreement cannot be modified or amended except by a written document signed by both parties, and this Agreement shall supersede all previous communications, representations, or agreements, either verbal or written between the parties hereto.

h) The waiver or invalidity of any provisions herein shall not affect the validity of any other provision herein.

i) Any claim or controversy arising out of or relating to this Agreement, or the breach thereof, shall be settled by final and binding arbitration in Pittsburgh, Pennsylvania in accordance with the Commercial Arbitration Rules of the American Arbitration Association and judgment upon the award rendered by the arbitrator or arbitrators may be entered in any court having jurisdiction thereof. The parties agree that claims may be brought only in an individual capacity and not as a plaintiff or class member in any purported class or representative proceeding. The parties also agree that the arbitrator may not consolidate or join claims of more than the one claimant and may not preside over any form of representative or class proceeding. If this class action waiver is found to be unenforceable, then all arbitration provisions shall be null and void. This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania.

IN WITNESS WHEREOF, the undersigned parties have executed this Agreement to be effective on the day and year above written.

| WITNESS | CONTRACTOR (Please sign both copies) |
|---|---|
| By: Bradley T. Sites | By: [signature] |
| Name: Brad Sites (Print) | Name: Chad Calcagno (Print) |
| Title: Member | Title: President |
| | Contractor's Fed. Tax ID or Social Security No. 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 |

| WITNESS | 84 LUMBER COMPANY |
|---|---|
| By: Denise Bastian | By: Mitchell D. Feldman [illegible] |
| Name: Denise Bastian (Print) | Name: Mitchell D. Feldman (Print) |
| Title: Administrative Assistant | Title: V.P. Delivery Services |

THIS AGREEMENT [illegible] UNLESS EXECUTED BY THE 84 DIRECTOR OF DELIVERY SERVICES. NO OTHER 84 EMPLOYEE HAS AUTHORITY, EXPRESS OR IMPLIED, TO SIGN OR CHANGE TERMS AND CONDITIONS IN THIS AGREEMENT.

**PLEASE RETURN EXECUTED ☐ AGREEMENT ☐ CERTIFICATE OF INSURANCE ☐ COPY OF CONTRACTOR'S APPLICABLE INTERSTATE AND INTRASTATE AUTHORITY LICENSES AND PERMITS TO THE 84 DELIVERY SERVICES DEPARTMENT**

# EXHIBIT I – FAR CLAUSES INCORPORATED BY REFERENCE

The following FAR clauses apply to this Agreement

FAR 52.211-5 MATERIAL REQUIREMENTS (AUG 2000)

FAR 52.215-20 REQUIREMENTS FOR COST OR PRICING DATA OR INFORMATION OTHER THAN COST OR PRICING DATA (OCT 1997)

FAR 52.215-21 REQUIREMENTS FOR COST OR PRICING DATA OR INFORMATION OTHER THAN COST OR PRICING DATA - MODIFICATIONS (OCT 1997)

FAR 52.219-8 UTILIZATION OF SMALL BUSINESS CONCERNS (MAY 2004)

FAR 52.222-21 PROHIBITION OF SEGREGATED FACILITIES (FEB 1999)

FAR 52.222-26 EQUAL OPPORTUNITY (MAR 2007)

FAR 52.222-50 COMBATING TRAFFICKING IN PERSONS (FEB 2009)

FAR 52.225-13 RESTRICTIONS ON CERTAIN FOREIGN PURCHASES (JUN 2008)

FAR 52.244-6 SUBCONTRACTS FOR COMMERCIAL ITEMS (JUN 2010)

FAR 52.247-64 PREFERENCE FOR PRIVATELY OWNED U.S. FLAG COMMERCIAL VESSELS (FEB 2006)

FAR 52.203-12 LIMITATION ON PAYMENTS TO INFLUENCE CERTAIN FEDERAL TRANSACTIONS (SEP 2007)

FAR 52.222-35 EQUAL OPPORTUNITY FOR SPECIAL DISABLED VETERANS, VETERANS OF THE VIETNAM ERA, AND OTHER ELIGIBLE BETERANS (SEP 2006)

FAR 52.203-13 CONTRACTOR CODE OF BUSINESS ETHICS AND CONDUCT (APR 2010)

FAR 52.204-2 SECURITY REQUIREMENTS (AUG 1996)

FAR 52.204-9 PERSONAL IDENTITY VERIFICATION OF CONTRACTOR PERSONNEL (SEP 2007)

FAR 52.222-41 SERVICE CONTRACT ACT OF 1965 (NOV 2007)

FAR 52.222-54 EMPLOYMENT ELIGIBILITY VERIFICATION (JAN 2009)

FAR 52.223-11 OZONE-DEPLETING SUBSTANCES (MAY 2001)

FAR 52.227-19 COMMERCIAL COMPUTER SOFTWARE LICENSE (DEC 2007)

FAR 52.245-1 GOVERNMENT PROPERTY (JUNE 2007)

FAR 52.203-11 CERTIFICATION AND DISCLOSURE REGARDING PAYMENTS TO INFLUENCE CERTAIN TRANSACTIONS (SEP 2007)

FAR 52.209-5 CERTIFICATION RESPONSIBILITY MATTERS (APR 2010)

FAR 52.222-22 PREVIOUS CONTRACTS AND COMPLIANCE REPORTS (FEB 1999)

FAR 52.222-25 AFFIRMATIAVE ACTION COMPLIANCE (APR 1984)

FAR 52.227-14 RIGHTS IN DATA - GENERAL (DEC 2007)

FAR 52.232-7 PAYMENTS UNDER TIME-AND-MATERIALS AND LABOR-HOUR CONTRACTS (FEB 2007)

FAR 52.234-1 INDUSTRIAL RESOURCES DEVELOPED UNDER DEFENSE PRODUCTION ACT TITLE III (DEC 1994)

FAR 52.242-13 BANKRUPTCY (JUL 1995)

FAR 52.242-15 STOP-WORK ORDER (AUG 1989)

FAR 52.243-3 CHANGES - TIME-AND-MATERIALS OR LABOR-HOURS (SEP 2000)

FAR 52.246-6 INSPECTION TIME-AND-MATERIAL AND LABOR-HOUR (MAY 2001)

FAR 52.249-6 TERMINATION (COST-REIMBURSEMENT) (MAY 2004)

FAR 52.249-14 EXCUSABLE DELAYS (APR 1984)

FAR 52.222-36 AFFIRMATIVE ACTION FOR WORKERS WITH DISABILITIES (JUN 1998)

FAR 52.203-6 RESTRICTIONS ON SUBCONTRACTOR SALES TO THE GOVERNMENT (SEP 2006)

FAR 52.215-14 INTEGRITY OF UNIT PRICES (OCT 1997)

FAR 52.215-23 LIMITATION ON PASS-THROUGH CHARGES (OCT 2009)

FAR 52.222-37 EMPLOYMENT REPORTS ON SPECIAL DISABLED VETERANS, VETERANS OF THE VIETNAM ERA, AND OTHER ELIGIBLE VETERANS (SEP 2006)

FAR 52.223-14 TOXIC CHEMICAL RELEASE REPORTING (AUG 2003)

FAR 52.227-2 NOTICE AND ASSISTANCE REGARDING PATENT AND COPYRIGHT INFRINGEMENT (DEC 2007)

FAR 52.248-1 VALUE ENGINEERING (FEB 2000)

FAR 52.219-9 SMALL BUSINESS SUBCONTRACTING PLAN (APR 2008)

FAR 52.215-12 SUBCONTRACTOR COST OR PRICING DATA (OCT 1997)

FAR 52.215-13 SUBCONTRACTOR COST OR PRICING DATA - MODIFICATIONS (OCT 1997)

FAR 52.203-14 DISPLAY OF HOTLINE POSTER(S) (DEC 2007)

FAR 52.215-10 PRICE REDUCTION FOR DEFECTIVE COST OR PRICING DATA (OCT 1997)

FAR 52.215-11 PRICE REDUCTION FOR DEFECTIVE COST OR PRICING DATA - MODIFICATIONS (OCT 1997)

FAR 52.215-15 PENSION ADJUSTMENTS AND ASSET REVERSIONS (OCT 2004)

FAR 52.215-16 FACILITIES CAPITAL COST OF MONEY (JUN 2003)

FAR 52.215-17 WAIVER OF FACILITIES CAPITAL COST OF MONEY (OCT 1997)

FAR 52.215-18 REVERSION OR ADJUSTMENT OF PLANS FOR POST-RETIREMENT BENEFITS (PRB) OTHER THAN PENSIONS (JUL 2005)

FAR 52.215-19 NOTIFICATION OF OWNERSHIP CHANGES (OCT 1997)

FAR 52.216-7 ALLOWABLE COST AND PAYMENT (DEC 2002)

FAR 52.222-4 CONTRACT WORK HOURS AND SAFETY STANDARDS ACT - OVERTIME COMPENSATION (JUL 2005)

FAR 52.223-3 HAZARDOUS MATERIAL IDENTIFICATION AND MATERIAL SAFETY DATA (JAN 1997)

FAR 52.223-7 NOTICE OF RADIOACTIVE MATERIALS (JAN 1997)

FAR 52.227-1 AUTHORIZATION AND CONSENT (DEC 2007)

FAR 52.227-9 REFUND OF ROYALTIES (APR 1984)

FAR 52.227-10 FILING OF PATENT APPLICATIONS-CLASSIFIED SUBJECT MATTER (DEC 2007)

FAR 52.227-11 PATENT RIGHTS-OWNERSHIP BY THE CONTRACTOR (SHORT FORM) (DEC 2007)

FAR 52.228-5 INSURANCE – WORK ON A GOVERNMENT INSTALLATION (JAN 1997)

FAR 52.230-2 COST ACCOUNTING STANDARDS (OCT 2008)

FAR 52.230-3 DISCLOSURE AND CONSISTENCY OF COST ACCOUNTING PRACTICES (OCT 2008)

FAR 52.230-6 ADMINISTRATION OF COST ACCOUNTING STANDARDS (MAR 2008)

FAR 52.233-3 PROTEST AFTER AWARD (AUG 1996)

FAR 52.237-2 PROTECTION OF GOVERNMENT BUILDINGS, EQUIPMENT AND VEGETATION (APR 1984)

FAR 52.243-6 CHANGE ORDER ACCOUNTING (APR 1984)

FAR 52.234-1 INDUSTRIAL RESOURCES DEVELOPED UNDER DEFENSE PRODUCTION ACT TITLE III (DEC 1994)

FAR 52.243-1 CHANGES - FIXED PRICE (AUG 1987)

FAR 52.246-2 INSPECTION OF SUPPLIES - FIXED PRICE (AUG 1996)

FAR 52.246-4 INSPECTION OF SERVICES - FIXED PRICE (AUG 1996)

FAR 52.249-2 TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (FIXED-PRICE) (MAY 2004)

FAR 52.249-8 DEFAULT (FIXED-PRICE SUPPLY AND SERVICE) (APR 1984)

# Wil-Sites 0603, 0610, 0619, 0621, 0632, 0634, 0635 - 02.22

Final Audit Report 2022-02-21

| | |
|---|---|
| Created: | 2022-02-17 |
| By: | Ryan Oakes (ryan.oakes@84lumber.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAMafnAolF-W37Nx2DE7JXzZ4fwOsOsmtN |

## "Wil-Sites 0603, 0610, 0619, 0621, 0632, 0634, 0635 - 02.22" Hi story

Document created by Ryan Oakes (ryan.oakes@84lumber.com)
2022-02-17 - 8:13:56 PM GMT- IP address: 50.206.42.28

Document emailed to Chad Calcagno (chad@wilsitestrucklines.com) for signature
2022-02-17 - 8:14:24 PM GMT

Email viewed by Chad Calcagno (chad@wilsitestrucklines.com)
2022-02-17 - 8:37:35 PM GMT- IP address: 96.11.78.75

Document e-signed by Chad Calcagno (chad@wilsitestrucklines.com)
Signature Date: 2022-02-17 - 8:38:00 PM GMT - Time Source: server- IP address: 96.11.78.75

Document emailed to Bradley J Sites (bsites@dwliftsales.com) for signature
2022-02-17 - 8:38:02 PM GMT

Email viewed by Bradley J Sites (bsites@dwliftsales.com)
2022-02-17 - 8:40:13 PM GMT- IP address: 96.11.78.75

Document e-signed by Bradley J Sites (bsites@dwliftsales.com)
Signature Date: 2022-02-17 - 8:40:50 PM GMT - Time Source: server- IP address: 96.11.78.75

Document emailed to Mitchell D. Feldman 2-18-22 (mitch.feldman@84lumber.com) for signature
2022-02-17 - 8:40:51 PM GMT

Email viewed by Mitchell D. Feldman 2-18-22 (mitch.feldman@84lumber.com)
2022-02-17 - 9:46:28 PM GMT- IP address: 104.28.78.137

Document e-signed by Mitchell D. Feldman 2-18-22 (mitch.feldman@84lumber.com)
Signature Date: 2022-02-18 - 9:43:15 PM GMT - Time Source: server- IP address: 24.3.215.229

Document emailed to Denise Bastian (denise.bastian@84lumber.com) for signature
2022-02-18 - 9:43:17 PM GMT

Email viewed by Denise Bastian (denise.bastian@84lumber.com)
2022-02-21 - 1:27:26 PM GMT- IP address: 50.206.42.28

Document e-signed by Denise Bastian (denise.bastian@84lumber.com)
Signature Date: 2022-02-21 - 1:27:56 PM GMT - Time Source: server- IP address: 50.206.42.28

Agreement completed.
2022-02-21 - 1:27:56 PM GMT

BOND SCHOENECK & KING

350 Linden Oaks, Third Floor | Rochester, NY 14625-2825 | bsk.com

CLAIRE BOPP, ESQ.
cbopp@bsk.com
P: 585.362.4868
F: 585.362.4891

June 13, 2025

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Wil-Sites Truck Lines, LLC
900 Buckeye Park Road
Columbus, OH 43207

Re: *Tender of Complaint of James Maynard, Jr. Pursuant to Indemnification Agreement*

To Whom It May Concern:

My office sent you correspondence dated May 19, 2025, providing notice and requesting tender of the defense of a claim asserted against the foregoing parties arising from personal injuries allegedly sustained by James Maynard, Jr. on July 27, 2022 while making a delivery of wood products to 84 Lumber store located at 1170 North Greece Road, Rochester NY. Pursuant to the Independent Contractor Hauling Agreement ("the Agreement") executed by Wil-Sites Truck Lines ("Wil-Sites") and 84 Lumber Company ("84"), Wil-Sites is required to indemnify, hold harmless and defend 84 for claims and demands for damages resulting from bodily injury sustained by any person, including Wil-Sites and its employees, arising out of or any way connected with the work by Wil-Sites. I am once again enclosing a copy of the Agreement.

We have not received any response from our May 19th correspondence, despite requesting acknowledgement of receipt of same. 84 hereby requests that you provide written acknowledgement immediately upon receipt of this letter and confirm that (1) Wil-Sites will be providing the Indemnitees defense and indemnification as required by the Agreement; and (2) Wil-Sites has placed its appropriate liability carrier(s) on notice of this claim.

We look forward to your prompt attention to this matter.

Very truly yours,

BOND, SCHOENECK & KING, PLLC

Claire A. Bopp

Claire Bopp

CGP/slm
Enclosures

FILED: MONROE COUNTY CLERK 04/16/2025 10:12 AM
NYSCEF DOC. NO. 1

INDEX NO. E2025008258
RECEIVED NYSCEF: 04/16/2025

STATE OF NEW YORK
SUPREME COURT COUNTY OF MONROE

---

**JAMES MAYNARD, JR.,**

Plaintiff.

v.

**84 LUMBER COMPANY and**
**JAMES BARRY,**

Defendants.

---

**SUMMONS**

Index No.:______________

**TO THE ABOVE NAMED DEFENDANTS:**

**YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the plaintiff's attorneys within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default.

Plaintiff designates Monroe County as the place of trial.

The basis of venue is the county where the incident complained of occurred.

The incident complained of occurred at 1170 North Greece Road, Town of Greece, County of Monroe, State of New York

Dated: April 3, 2025
Rochester, New York

**SEGAR & SCIORTINO PLLC**
Stephen A. Segar, Esq.
Attorney(s) for Plaintiff
Office and Post Office Address:
400 Meridian Centre, Suite 320
Rochester, New York 14618
Telephone No.: (585) 475-1100

TO: **84 LUMBER COMPANY**
c/o New York State Secretary of State

**JAMES BARRY**
c/o 84 Lumber Company
1170 North Greece Road
Rochester, New York 14626

STATE OF NEW YORK
SUPREME COURT COUNTY OF MONROE

---

**JAMES MAYNARD, JR.,**

Plaintiff,

v.

**84 LUMBER COMPANY and JAMES BARRY,**

Defendants.

**VERIFIED COMPLAINT**

Index No.:____________

---

Plaintiff James Maynard, Jr., per his attorneys Segar & Sciortino PLLC, complaining of the defendants, alleges:

1. Upon information and belief and at all times hereinafter mentioned, defendant 84 Lumber Company (hereinafter referred to as "84 Lumber") was and is a foreign limited partnership organized and existing under and by virtue of the laws of Pennsylvania and authorized to do business in New York State.

2. Upon information and belief and at all times hereinafter mentioned, defendant 84 Lumber's principal place of business was and presently still is located at 1019 Route 519, City of Eighty Four, County of Washington, State of Pennsylvania.

3. Upon information and belief and at all times hereinafter mentioned, defendant 84 Lumber owned and operated commercial premises located at 1170 North Greece Road, Town of Greece, County of Monroe, State of New York.

4. Upon information and belief and at all times hereinafter mentioned, defendant James Barry was an employee of defendant 84 Lumber.

5. Upon information and belief and at all times hereinafter mentioned, defendant James Barry was acting in the course of and within the scope of his employment with defendant 84 Lumber.

6. At all times hereinafter mentioned, plaintiff was employed by Wil-Sites Truck Lines, LLC.

7. On or about July 27, 2022 at approximately 2:30 p.m., plaintiff, while engaged in the scope of said employment, made a delivery of wood products to 84 Lumber at said Town of Greece location using a large flatbed truck.

8. As said delivery of wood products was being unloaded by defendant James Barry, Mr. Barry, while using a forklift, pushed a large piece or pieces of lumber from the top of the load on said flatbed truck onto plaintiff, striking him about the head, face, shoulders and neck.

9. As a result of said incident, plaintiff sustained serious injuries as defined pursuant to New York State Insurance Law §5102(d), including but not limited to his head, neck, left shoulder, left knee, left foot, left wrist, left forearm and post-traumatic stress disorder.

10. As a result of said incident, plaintiff sustained economic loss in excess of basic economic loss as defined pursuant to New York State Insurance Law §5102(a).

11. The incident and plaintiff's resulting injuries were caused by the careless. negligent and/or reckless actions of defendant James Barry also attributable to his employer defendant 84 Lumber.

12. By reason of the foregoing. plaintiff was rendered disabled and was caused to sustain injuries which may be permanent in nature. was disabled from working resulting in loss of income and may suffer future loss of income. was compelled to undergo medical care and will require further medical care and has suffered and continues to suffer mental anguish and pain and has sustained damages and is entitled to collect same against the defendants.

13. By reason of the foregoing. plaintiff has been damaged in excess of the jurisdictional limits of all lower courts in which this action may otherwise have been brought.

**WHEREFORE.** plaintiff demands judgment against the defendants together with costs. disbursements and such other and further relief the court deems just and proper.

DATED: April 3. 2025

**SEGAR & SCIORTINO PLLC**
Stephen A. Segar. Esq.
Attorney(s) for Plaintiff
Office and Post Office Address:
400 Meridian Centre. Suite 320
Rochester. New York 14618
Telephone No.: (585) 475-1100

## VERIFICATION

STATE OF NEW YORK )
COUNTY OF MONROE ) ss:

James Maynard, Jr., being duly sworn, deposes and says that deponent is the plaintiff in the within action, that deponent has read the foregoing complaint and knows the contents thereof, that the same is true to deponent's own knowledge, except as to those matters therein stated to be alleged on information and belief, and that as to those matters deponent believes them to be true.

James Maynard, Jr.

Sworn to before me this
3rd day of April, 2025.

NOTARY PUBLIC

STEPHEN A. SEGAR
Notary Public, State of New York
No. 02SE4886787
Qualified in Monroe County
Commission Expires Feb 17, 20 27

84 LUMBER
Build on what we know.

# INDEPENDENT CONTRACTOR HAULING AGREEMENT

This Agreement is made this __14th__ day of __February 2022__ to be effective on the __21st__ day of __February 2022__ between 84 Lumber Company ("84"), a Pennsylvania Limited Partnership having its principal office at 1019 Route 519, Eighty Four, PA 15330-2813 and __Wil-Sites Truck Lines__ (hereinafter "Contractor"), a __LLC__ having its principal office at __900 Buckeye Park Road, Columbus, OH 43207__ __(614) 444-3174__
(Street Address, City, State, Zip Code) (Phone Number)

I. **TERM:** This Agreement shall be for an initial term of one (1) year from the effective date, and thereafter shall automatically renew and continue for year-to-year terms. Notwithstanding the previous sentence, this Agreement may be terminated (1) by 84 for any reason whatsoever, with or without cause, at anytime during the initial term or any renewal term by giving fifteen (15) days advance written notice of such termination to Contractor at the address listed above, or (2) by Contractor, with or without cause, at the end of the initial term or any renewal term by giving thirty (30) days advance written notice of such termination to 84 at the address listed above.

II. **FEES/PAYMENT**

a) Contractor, an independent contractor, agrees to provide supervision, loading, unloading, transportation and related services (hereinafter referred to as "Work") for the customers of 84 in a good, safe, and workmanlike manner, using suitable equipment, maintained and operated in a responsible and safe manner to deliver materials according to the following rate schedule:

**Option 1 Cost per Load (Loaded Mileage only)**

| Mileage Zone | Rate Per Load: Box Truck Single Axle | Tandem w Pig | Boom Truck |
|---|---|---|---|
| 0-5 Miles | $ 80 | 119 | 150 |
| 6-10 Miles | $ 86 | 131 | 150 |
| 11-20 Miles | $ 106 | 161 | 122 |
| 21-30 Miles | $ 123 | 189 | 206 |
| 31-40 Miles | $ 143 | 216 | 235 |
| 41-50 Miles | $ 163 | 246 | 293 |
| 50+ Miles | $ +3.50/mi | +4.00/mi | +4.00/mi |

- **Yard Transfer:** [illegible]
- **Truck Transfer:** [illegible]
- **Extra Man Rate:** [illegible]
- **Drop Charge:** $55 on single axle, $75 on tandem [illegible]
- **Job Site Labor:** First 45min N/C, $1 min after
- **Yard Down Time:** First [illegible] N/C, $1 min after
- **Hand Unloading:** First 15min N/C, $1 min after
- **Call Back Fee:** $50 if driver is sent home and called back [illegible] same day
- **Pick Ups:** [illegible]
- **Flat Rate Vehicles**
  - [illegible]
    - [illegible]
  - [illegible]
- **6-Story Boom Minimum:** [illegible]
- **Driver Subsidies: Refer to attached Addendum A**

b) Weekly hauler logs and the entries thereon shall be deemed conclusive and binding upon Contractor unless written objections to entries on a questioned weekly hauler log are received by 84 within thirty (30) days from the date issuance of the weekly hauler log to which the objection applies.

c) Contractor agrees to deliver the following specific materials according to the following rate schedule:

Drywall __.01 sq ft slide off__ .02 sq ft 1st floor__
__.15 sq ft boom__
Shingles __.25 bundle hand unload on ground__
__.40 bundle boom to roof__

If Contractor is owed any monies by 84 under the provisions of Sec. II above, these monies will only be paid after Contractor has presented to 84 a fully completed and signed trip report and weekly hauler log for each load. 84 will only pay for Contractor's services by check issued from 84's Headquarters. Contractor must present these statements to the 84 Lumber Store Manager every Friday. Any statement not so presented must be held until the following Friday. No cash payments will be made.

d) 84 specifically retains the right to set off amounts which may be owned by 84 to Contractor hereunder against any amounts which may be owed by Contractor to 84 whether hereunder or pursuant to any other agreement, contract, or obligation of Contractor to 84.

III. **AREA/AVAILABILITY:**

a) Contractor will be available, and will make deliveries, during the following hours:

Monday __First out until Completion__
Tuesday ____
Wednesday ____
Thursday ____
Friday ____
Saturday Holidays __$20/delivery__
Sunday ____

b) Contractor agrees to deliver material under the terms and conditions of this Agreement for the following 84 locations:

(i) __Store #0401 Rochester, NY__ Store #0610 Dewitt, NY__ Store #0619 Victor, NY__
(ii) __Store #0621 Greece, NY__ Store #0632 Elma, NY__
(iii) __Store #0631 Geneva, NY__ Store #0635 Chaffee, NY__

IV. **COMPLIANCE WITH THE LAW:** Contractor has conducted, and is conducting the business(es) of the Contractor in full compliance with all applicable laws, regulations, and requirements of each jurisdiction, whether federal, state or local, in which Contractor operates. Contractor has from every governmental body (each a "Governmental Entity") all approvals, consents, licenses, permits, and orders (together, the "licenses") necessary to carry on the businesses of the Contractor as currently conducted. All such licenses are in full force and effect, and no proceeding is pending or, to Contractor's knowledge, threatened which might have the effect of terminating or limiting any license. Contractor is in full compliance with each license and the requirements therefore, and no statement in any application or other submission made to obtain or maintain any license was false in any material respect. Any employee of Contractor who is performing work which is required to be performed by a licensed individual is so licensed, and to Contractor's knowledge, each such license is in full force and effect. To Contractor's knowledge, no notice has been issued and no civil or criminal litigation, investigation or review is pending or threatened (i) with respect to any alleged violation by Contractor of any law, ordinance, regulation, order, policy or guideline of any governmental entity, or (ii) with respect to any alleged failure to have any or all licenses required in connection with the operation of the businesses of the Contractor.

V. **EXECUTIVE ORDER COMPLIANCE:**

a) The Contractor will not discriminate against any employee or applicant for employment because of race, color, religion, sex, age, disability, national origin or any other category protected by law. The Contractor will take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, color, religion, sex, age, disability, national origin or any other category protected by law. Such action shall include, but not be limited to the following: employment, promotion, demotion, or transfer, recruitment or recruitment advertising, layoff or termination, rates of pay or other forms of compensation, and selection for training, including apprenticeship. The Contractor agrees to post in conspicuous places, available to employees and applicants for employment, notices to be provided by the contracting officer setting forth the provisions of this nondiscrimination clause.

b) The Contractor will, in all solicitations or advertisements for employees placed by or on behalf of the Contractor, state that all qualified applicants will receive consideration for employment without regard to race, color, religion, sex, age, disability, national origin or any other category protected by law.

c) The Contractor will send to each labor union or representative of workers with which it/she/he has a collective bargaining agreement or other contract or understanding, a notice to be provided by the agency contracting officer, advising the labor union or workers' representative of the Contractor's commitments under section 202 of Executive Order 11246 of September 24, 1965, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

d) The Contractor will comply with all provisions of Executive Order 11246 of September 24, 1965, and of the rules, regulations, and relevant orders of the Secretary of Labor.

e) The Contractor will furnish all information and reports required by Executive Order 11246 of September 24, 1965, and by the rules, regulations, and orders of the Secretary of Labor, or pursuant thereto, and will permit access to his books, records, and accounts by the contracting agency and the Secretary of Labor for purposes of investigation to ascertain compliance with such rules, regulations, and orders.

f) In the event of the Contractor's non-compliance with the nondiscrimination clauses of this Agreement or with any of such rules, regulations, or orders, this Agreement may be canceled, terminated or suspended in whole or in part and the Contractor may be declared ineligible for further Government contracts in accordance with procedures authorized in Executive Order 11246 of September 24, 1965, and such other sanctions may be imposed and remedies invoked as provided in Executive Order 11246 of September 24, 1965, or by rule, regulation, or order of the Secretary of Labor, or as otherwise provided by law.

g) Contractor will include the provisions of these paragraphs (a) through (g) in every subcontract or purchase order unless exempted by the rules, regulations or orders of the Secretary of Labor issued pursuant to section 204 of Executive Order 11246 of September 24, 1965, so that such provisions will be binding upon each Contractor or vendor. The Contractor will take such action with respect to any subcontract or purchase order as may be directed by the Secretary of Labor as a means of enforcing such provisions including sanctions for noncompliance. Provided, however, that in the event the Contractor becomes involved in, or is threatened with, litigation with a Contractor or vendor as a result of such direction, the Contractor may request the United States to enter into such litigation to protect the interests of the United States.

h) Contractor shall file, and shall cause each of its Subcontractors to file, Compliance Reports with the contracting agency or the Secretary of Labor as may be directed. Compliance Reports shall be filed within such times and shall contain such information as to the practices, policies, programs, and employment policies, programs, and employment statistics of the subcontractor and each Contractor, and shall be in such form, as the Secretary of Labor may prescribe.

i) The Contractor understands that it and its Subcontractors may be required to state whether they have participated in any previous contract subject to the provisions of this Order, or any preceding similar Executive Order, and in that event to submit, on behalf of themselves and their proposed subcontractors, Compliance Reports prior to or as an initial part of their bid or negotiation of a contract.

j) Whenever Contractor has a collective bargaining agreement or other contract or understanding with a labor union or an agency referring workers or providing or supervising apprenticeship or training for such workers, the Compliance Report shall include such information as to such labor union's or agency's practices and policies affecting compliance as the Secretary of Labor may prescribe. Provided, that to the extent such information is within the exclusive possession of a labor union or an agency referring workers or providing or supervising apprenticeship or training and such labor union or agency shall refuse to furnish such information to the subcontractor, the subcontractor shall so certify to the Secretary of Labor as part of its Compliance Report and shall set forth what efforts he has made to obtain such information.

k) The Contractor understands that the Secretary of Labor may direct that the Contractor or any of its Subcontractors shall submit, as part of its Compliance Report, a statement in writing, signed by an authorized officer or agent on behalf of any labor union or any agency referring workers or providing or supervising apprenticeship or other training, with which the Contractor or any of its Subcontractors, with supporting information, to the effect that the signer's practices and policies do not discriminate on the grounds of race, color, religion, sex or national origin, and that the signer either will affirmatively cooperate in the implementation of the policy and provisions of this Order or that it consents and agrees that recruitment, employment, and the terms and conditions of employment under the proposed contract shall be in accordance with the purposes and provisions of the order. In the event that the union, or the agency shall refuse to execute such a statement, the Compliance Report shall so certify and set forth what efforts have been made to secure such a statement and such additional factual material as the Secretary of Labor may require.

l) Pursuant to Executive Order 13496, the Contractor also agrees to post a notice, of such size and in such form, and containing such content as the Secretary of Labor shall prescribe, in conspicuous places in and about its plants and offices where employees covered by the National Labor Relations Act engage in activities relating to the performance of the contract, including all places where notices to employees are customarily posted both physically and electronically. The notice shall include the information contained in the notice published by the Secretary of Labor in the Federal Register (Secretary's Notice).

m) The Contractor will comply with all provisions of the Secretary's Notice, and related rules, regulations, and orders of the Secretary of Labor.

n) In the event that the Contractor does not comply with any of the requirements set forth in subparagraphs (l) or (m) above, the Contractor understands that this Agreement may be cancelled, terminated, or suspended in whole or in part, and the Contractor may be declared ineligible for further Government contracts in accordance with procedures authorized in or adopted pursuant to Executive Order 13496 of January 30, 2009. Such other sanctions or remedies may be imposed as are provided in Executive Order 13496 of January 30, 2009, or by rule, regulation, or order of the Secretary of Labor, or as are otherwise provided by law.

o) The Contractor will include the provisions of sub-paragraphs (l) through (n) above in every sub-subcontract entered into in connection with this contract (unless exempted by rules, regulations, or orders of the Secretary of Labor issued pursuant to section 3 of Executive Order 13496 of January 30, 2009) so that such provisions will be binding upon each of its Subcontractors. The Contractor will take such action with respect to any of its subcontracts as may be directed by the Secretary of Labor as a means of enforcing such provisions, including the imposition of sanctions for non-compliance, provided, however, that if the Contractor becomes involved in litigation with a Subcontractor, or is threatened with such involvement, as a result of such direction, the Contractor may request the United States to enter into such litigation to protect the interests of the United States.

p) If Contractor's business with 84 on federal government contracts is valued at $100,000.00 or more, then Contractor shall comply with the federal requirement of filing the VETS-100A annual report.

q) If Contractor has at least 100 employees, then it shall comply with the requirement of filing an EEO-1 form annually with Equal Employment Opportunity Commission.

VI. **DAVIS BACON ACT COMPLIANCE:** The Contractor shall comply with the Davis-Bacon Act (40 U.S.C. 276a to a-7) and as supplemented by Department of Labor regulations. Under this Act, Contractor is required to pay wages to laborers and mechanics at a rate not less than the minimum wages specified in a wage determination made by the United States Secretary of Labor. In addition, Contractor shall be responsible to ensure that it complies with any applicable non-federal Prevailing Wage or Living Wage statutes, regulations, or ordinances.

VII. **E-VERIFICATION:** If Contractor performs any work on a government job, Contractor must use E-Verify for all new employees, as well as all employees who perform work on the contract during the contract period except those who perform support work such as indirect or overhead functions.

VIII. **BUY AMERICAN ACT:** Buy American Act (41 U.S.C. § 10a-10d) and Trade Agreements Act (19 U.S.C. § 2501, et seq.). 84 Lumber does, from time to time, serve as a prime contractor or subcontractor on U.S. Government Contracts. And depending on the size and nature of any of 84 Lumber's U.S. Government Contracts, 84 Lumber must comply with both the Buy American Act ("the BAA") and The Trade Agreements Act ("the TAA"). The Contractor acknowledges that it understands the requirements of the BAA and the TAA. The Contractor agrees that it will comply with the BAA and TAA and the applicable Federal Acquisition Regulations ("FAR") that implement those Acts. The Contractor also agrees to provide 84 Lumber with all

required information documentation and certification that the BAA or the TAA require 84 Lumber to provide to the U S Government The Contractor acknowledges that the following FAR clauses are incorporated herein by reference, with the same force and effect as if they were given in full text, and are applicable to this Purchasing Agreement

A FAR 52 225-1 BUY AMERICAN ACT—SUPPLIES (FEB 2009)

B FAR 52 225-3 BUY AMERICAN ACT—FREE TRADE AGREEMENTS—ISRAELI TRADE ACT (JUNE 2009)

C FAR 52 225-5 TRADE AGREEMENTS (AUG 2009)

D FAR 52 225-8 DUTY-FREE ENTRY (FEB 2000)

E FAR 52 225-9 BUY AMERICAN ACT—CONSTRUCTION MATERIALS (FEB 2009)

F FAR 52 225-11 BUY AMERICAN ACT—CONSTRUCTION MATERIALS UNDER TRADE AGREEMENTS (AUG 2009)

G FAR 52 225-21 REQUIRED USE OF AMERICAN IRON, STEEL, AND OTHER MANUFACTURED GOODS—BUY AMERICAN ACT—CONSTRUCTION MATERIALS (MAR 2009)

H FAR 42 225-23 REQUIRED USE OF AMERICAN IRON, STEEL, AND OTHER MANUFACTURED GOODS—BUY AMERICAN ACT—CONSTRUCTION MATERIALS UNDER TRADE AGREEMENTS (AUG 2009)

## IX. OTHER COMPLIANCE ISSUES:

A Because this Agreement is entered into by the Contractor in support of 84 Lumber's performance of a U S Government Contract, as either a prime contractor or a subcontractor, the FAR clauses contained in Exhibit 1 are incorporated by reference and, with the clarifications provided below, are applicable to this Agreement If the date or substance of any of the clauses in Exhibit 1 is different from the date or substance of the clause actually used or incorporated into 84 Lumber's U.S Government Contract or 84 Lumber's U S Government subcontract the date or substance of the clause used or incorporated by 84 Lumber's U S Government Contract or 84 Lumber's U S Government subcontract shall apply instead The Contracts Disputes Act shall not apply to this Purchasing Agreement

B As used in the FAR clauses contained Exhibit 2 and elsewhere in this Agreement the following clarifications apply

1 "Commercial Item" means a commercial item as defined in FAR 2 101
2 "Contract" means that Purchase Agreement
3 "Contracting Officer means the U S Government Contracting Officer for 84 Lumber's U S Government Subcontract under which this Agreement is entered
4 "Contractor" and "Offeror" means the Contractor, as defined in this Agreement acting as subcontractor to 84 Lumber
5 "Prime Contract" means the contract between 84 Lumber and the U S Government or between 84 Lumber and between 84 Lumber and its higher-tier contractor who has a contract with the U S Government
6 "Subcontract means any contract between the Contractor with lower-tiered subcontractors under this Agreement

## X. INDEMNIFICATION:

a) In the performance of the Work the Contractor agrees to indemnify, protect, save hold harmless and defend 84 and its directors, officers employees, predecessors, successors, subsidiaries, affiliates related entities, members, partners, managers, owners, agents, servants, and contractors, harmless from and against any and all loss, costs, damages suits, and liability whatsoever, and all related expenses, including costs and attorneys' fees and all claims and demands therefor, whether with or without merit for damages because of bodily injury, sickness, disease or death at any time resulting therefrom sustained by any person or persons including 84 customers, Contractor and its employees, Contractor's subcontractors, or agents of Contractor, or on account of damage to real or personal property including the loss or use thereof, resulting from, arising out of or in any way connected with the performance of the Work by the Contractor, or by the Contractor's employees, agents or subcontractors regardless of whether or not such damage is caused or alleged to be caused in whole or in part by the negligence of 84 or any other party indemnified hereunder

b) The Contractor further agrees to indemnify, protect, save, hold harmless and defend 84 its agent and employees from and against any claims made by employees from any actions, conduct or omissions of the Contractor, its agents or employees, including, but not limited to, charges of discrimination brought under the Equal Employment Opportunity Commission and the Workers Compensation Board (or similar department commission or bureau), claims and losses alleging failure to comply with federal and state wage and hour laws, wrongful termination, discrimination, denial of due process or other labor-related causes of action resulting from employee conduct, hiring, discipline, or termination Contractor shall also indemnify, protect, save, hold harmless and defend 84 from employee claims of sexual or other harassment by Contractor or any employee of Contractor.

c) The Contractor further agrees to indemnify, protect save, hold harmless and defend 84, its agent and employees from and against any and all losses damages, penalties, costs and expenses including legal and accounting fees incurred or suffered by 84 which result from or arise out of any federal or state income tax withholding liability or taxes arising under the Federal Insurance Contributions Act or under the Federal Unemployment Tax Act, or similar federal or state tax resulting from this Agreement

d) The duty to defend includes the duty to pay reasonable attorneys' fees incurred by 84 in defending such actions, and the duty to indemnify includes the duty to pay any award imposed by an administrative agency, judgment or reached by way of settlement

e) The Contractor, the Contractor's heirs, successors and assigns hereby expressly waive and agree to waive any provision of the Worker's Compensation laws of contribution or indemnity in any action at law, or otherwise where Contractor or Contractor's employees, heirs, assigns or anyone otherwise entitled to receive damages by reason of injury or death or brings an action at law against 84

## XI. INSURANCE:

Contractor shall provide Worker's Compensation Insurance covering contractor's drivers Contractor shall also provide Commercial General Liability (The policy should include the Broad Form Commercial General Liability Endorsement or an endorsement adding Blanket Contractual Liability Insurance with limits equal to those outlined) and Automobile Liability Insurance with limits not less than $1,000,000 per occurrence covering bodily injury, death, and property damage suffered by anyone including employees of 84 and/or of Contractor during the course of, and on the site of and/or adjacent to, the operations covered by this Agreement Contractor shall be responsible for damage to and/or loss of any cargo from 84 regardless of the ownership/title of such cargo Contractor shall name 84 as an additional insured under Contractor's insurance policies by means of an "Additional Insured" endorsement in a form satisfactory to 84 Contractor shall also furnish 84 with a Certificate of Insurance illustrating such insurance policies which certifies that the Contractor has the required coverages in force at all relevant times and that none of the coverages may be cancelled without at least 30 days advance written notice to 84 Failure of Contractor to provide and maintain the above insurance and its specific requirements shall make Contractor the insurer Failure to maintain insurance under the above terms and conditions shall constitute breach of the Agreement by Contractor and the immediate and automatic termination and forfeiture by contractor of all rights under this Agreement without notice from 84 to Contractor Certificates of Insurance and notices shall be sent to 84 Lumber Company, ATTN Hauling Department Bldg #5 1019 Route 519, Eighty Four PA 15330-2813. Contractor shall maintain, and 84 will only accept, insurance from an insurance company with an A- Bests Rating, in force at all times during the term of this Agreement ALL OF CONTRACT'S LIABILITY INSURANCE PREMIUMS MUST BE PAID IN ADVANCE FOR AT LEAST A ONE (1) YEAR PERIOD NO PARTIAL PAYMENTS WILL BE PERMITTED CONTRACTOR MUST SUBMIT CERTIFICATION TO 84 FROM ALL OF ITS LIABILITY INSURERS THAT ALL OF THE ANNUAL PREMIUMS HAVE BEEN PAID IN FULL FOR A ONE (1) YEAR PERIOD CONTRACTOR HEREBY AUTHORIZES 84 TO DEDUCT FROM ANY FEES OR PAYMENTS DUE CONTRACTOR, THE UNPAID PREMIUM AMOUNT DUE FOR CONTRACTOR'S INSURANCE IF A "NOTICE OF CANCELLATION OF INSURANCE FOR NON-PAYMENT" IS RECEIVED BY 84

## XII. MAINTENANCE / APPEARANCE:

f) Contractor agrees to maintain, repair and service his equipment in a safe and clean condition, and Contractor further agrees to keep all records of such maintenance, repair and service and to make same available for inspection by 84 as 84 shall reasonably request All expenses necessary to maintain repair and service equipment in such condition are the Contractor's responsibility

g) Contractor's employees will wear clean neat clothes, which will include crepe-soled work boots, blue denim jeans or khaki pants, and a uniform shirt and/or jacket Any clothing advocating, depicting, or implying drugs, sex, music, alcohol, or anything that does not directly relate to the delivery of building materials from 84 will not be worn by Contractor's employees

## XIII. MISCELLANEOUS:

a) Contractor will acknowledge receipt of each load for delivery and will furnish receipts signed by customers or their authorized agents for each load delivered and unloaded with any discrepancies noted thereon. Contractor shall provide safe and timely delivery and unloading of all goods with time being of the essence of this Agreement. In case any delivery is delayed for any reason Contractor shall promptly notify 84 by telephone.

b) Contractor shall exercise the highest degree of care in performing this Agreement. Contractor shall supervise the loading of all cargo and shall adequately secure all loads so as to avoid risk or damage to anyone. Contractor shall obtain all required permits and licenses and comply with all laws and regulations relating to the transportation of goods covered by this Agreement or otherwise applicable to performance under this Agreement solely at Contractor's expense. Contractor shall provide and pay for legal liability and Worker's Compensation insurance coverage, payroll contributions and taxes as required by law and by this Agreement. Contractor shall indemnify and defend 84 and the customers of 84 for whom Contractor performs services hereunder from and against all claims and liability of any kind arising out of Contractor's breach of, or failure of performance under, or otherwise in connection with this Agreement. Contractor hereby warrants and states that he is in full compliance with the Immigration Reform and Control Act of 1986 with respect to himself and respective employees, subcontractors and/or agents.

c) The parties intend that an independent contractor relationship will be created by this Agreement. Contractor is and shall be at all times an independent contractor and not an employee, agent or servant of 84 or of its customers. This Agreement is not a contract of employment and it is expressly agreed by the parties that Contractor is an independent contractor and is not an employee of 84, and is not entitled to any of the benefits offered to 84 employees by reason of their employment. Contractor shall be free from the direct supervision and control of 84 in the performance of Contractor's duties hereunder. Contractor shall have full choice and discretion as to loading and securing of material on the vehicle, routes to delivery site, unloading at delivery site, manpower needed at delivery site, which approved operator to use and all other decisions regarding the loading, transporting and delivery of materials on his equipment.

d) Contractor agrees that during the term of this Agreement, the services set forth herein shall not be provided to any competitor of 84.

e) 84 reserves the right to terminate this Agreement for any reason whatsoever with or without cause by giving fifteen (15) days written notice of such termination to Contractor at the address listed above.

f) This Agreement shall be binding upon Contractor and Contractor's successors, heirs, spouse, dependents and legal representatives and anyone claiming by or through Contractor.

g) The entire agreement of the parties is set forth in this written document and there are no other oral or written understandings, promises, representatives or agreements. This Agreement cannot be modified or amended except by a written document signed by both parties, and this Agreement shall supersede all previous communications, representations, or agreements, either verbal or written between the parties hereto.

h) The waiver or invalidity of any provisions herein shall not affect the validity of any other provision herein.

i) Any claim or controversy arising out of or relating to this Agreement, or the breach thereof, shall be settled by final and binding arbitration in Pittsburgh, Pennsylvania in accordance with the Commercial Arbitration Rules of the American Arbitration Association and judgment upon the award rendered by the arbitrator or arbitrators may be entered in any court having jurisdiction thereof. The parties agree that claims may be brought only in an individual capacity and not as a plaintiff or class member in any purported class or representative proceeding. The parties also agree that the arbitrator may not consolidate or join claims of more than the one claimant and may not preside over any form of representative or class proceeding. If this class action waiver is found to be unenforceable, then all arbitration provisions shall be null and void. This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania.

IN WITNESS WHEREOF, the undersigned parties have executed this Agreement to be effective on the day and year above written.

| WITNESS | CONTRACTOR (Please sign both copies) |
|---|---|
| By [signature] | By [signature] |
| Name Brad Sites (Print) | Name Chad Calcagno (Print) |
| Title Member | Title President |
| | Contractor's Fed. Tax ID or Social Security No. 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 |

| WITNESS | 84 LUMBER COMPANY |
|---|---|
| By [signature] | By [signature] |
| Name Denise Bastian (Print) | Name Mitchell D. Feldman (Print) |
| Title Administrative Assistant | Title V.P. Delivery Services |

THIS AGREEMENT IS NOT VALID UNLESS EXECUTED BY THE 84 DIRECTOR OF DELIVERY SERVICES. NO OTHER 84 EMPLOYEE HAS AUTHORITY, EXPRESS OR IMPLIED, TO SIGN OR CHANGE TERMS AND CONDITIONS IN THIS AGREEMENT.

PLEASE RETURN EXECUTED ☐ AGREEMENT ☐ CERTIFICATE OF INSURANCE ☐ COPY OF CONTRACTOR'S APPLICABLE INTERSTATE AND INTRASTATE AUTHORITY LICENSES AND PERMITS TO THE 84 DELIVERY SERVICES DEPARTMENT

**EXHIBIT 1 – FAR CLAUSES INCORPORATED BY REFERENCE**

The following FAR clauses apply to this Agreement

FAR 52.211-5 MATERIAL REQUIREMENTS (AUG 2000)

FAR 52.215-20 REQUIREMENTS FOR COST OR PRICING DATA OR INFORMATION OTHER THAN COST OR PRICING DATA (OCT 1997)

FAR 52.215-21 REQUIREMENTS FOR COST OR PRICING DATA OR INFORMATION OTHER THAN COST OR PRICING DATA - MODIFICATIONS (OCT 1997)

FAR 52.219-8 UTILIZATION OF SMALL BUSINESS CONCERNS (MAY 2004)

FAR 52.222-21 PROHIBITION OF SEGREGATED FACILITIES (FEB 1999)

FAR 52.222-26 EQUAL OPPORTUNITY (MAR 2007)

FAR 52.222-50 COMBATING TRAFFICKING IN PERSONS (FEB 2009)

FAR 52.225-13 RESTRICTIONS ON CERTAIN FOREIGN PURCHASES (JUN 2008)

FAR 52.244-6 SUBCONTRACTS FOR COMMERCIAL ITEMS (JUN 2010)

FAR 52.247-64 PREFERENCE FOR PRIVATELY OWNED U.S. FLAG COMMERCIAL VESSELS (FEB 2006)

FAR 52.203-12 LIMITATION ON PAYMENTS TO INFLUENCE CERTAIN FEDERAL TRANSACTIONS (SEP 2007)

FAR 52.222.35 EQUAL OPPORTUNITY FOR SPECIAL DISABLED VETERANS, VETERANS OF THE VIETNAM ERA, AND OTHER ELIGIBLE BETERANS (SEP 2006)

FAR 52.203-13 CONTRACTOR CODE OF BUSINESS ETHICS AND CONDUCT (APR 2010)

FAR 52.204-2 SECURITY REQUIREMENTS (AUG 1996)

FAR 52.204-9 PERSONAL IDENTITY VERIFICATION OF CONTRACTOR PERSONNEL (SEP 2007)

FAR 52.222-41 SERVICE CONTRACT ACT OF 1965 (NOV 2007)

FAR 52.222-54 EMPLOYMENT ELIGIBILITY VERIFICATION (JAN 2009)

FAR 52.223-11 OZONE-DEPLETING SUBSTANCES (MAY 2001)

FAR 52.227-19 COMMERCIAL COMPUTER SOFTWARE LICENSE (DEC 2007)

FAR 52.245-1 GOVERNMENT PROPERTY (JUNE 2007)

FAR 52.203-11 CERTIFICATION AND DISCLOSURE REGARDING PAYMENTS TO INFLUENCE CERTAIN TRANSACTIONS (SEP 2007)

FAR 52.209-5 CERTIFICATION RESPONSIBILITY MATTERS (APR 2010)

FAR 52.222-22 PREVIOUS CONTRACTS AND COMPLIANCE REPORTS (FEB 1999)

FAR 52.222-25 AFFIRMATIAVE ACTION COMPLIANCE (APR 1984)

FAR 52.227-14 RIGHTS IN DATA - GENERAL (DEC 2007)

FAR 52.232-7 PAYMENTS UNDER TIME-AND-MATERIALS AND LABOR-HOUR CONTRACTS (FEB 2007)

FAR 52.234-1 INDUSTRIAL RESOURCES DEVELOPED UNDER DEFENSE PRODUCTION ACT TITLE III (DEC 1994)

FAR 52.242-13 BANKRUPTCY (JUL 1995)

FAR 52.242-15 STOP-WORK ORDER (AUG 1989)

FAR 52.243-3 CHANGES - TIME-AND-MATERIALS OR LABOR-HOURS (SEP 2000)

FAR 52.246-6 INSPECTION TIME-AND-MATERIAL AND LABOR-HOUR (MAY 2001)

FAR 52.249-6 TERMINATION (COST-REIMBURSEMENT) (MAY 2004)

FAR 52.249-14 EXCUSABLE DELAYS (APR 1984)

FAR 52.222-36 AFFIRMATIVE ACTION FOR WORKERS WITH DISABILITIES (JUN 1998)

FAR 52.203-6 RESTRICTIONS ON SUBCONTRACTOR SALES TO THE GOVERNMENT (SEP 2006)

FAR 52.215-14 INTEGRITY OF UNIT PRICES (OCT 1997)

FAR 52.215-23 LIMITATION ON PASS-THROUGH CHARGES (OCT 2009)

FAR 52 222-37 EMPLOYMENT REPORTS ON SPECIAL DISABLED VETERANS, VETERANS OF THE VIETNAM ERA, AND OTHER ELIGIBLE VETERANS (SEP 2006)

FAR 52 223-14 TOXIC CHEMICAL RELEASE REPORTING (AUG 2003)

FAR 52 227-2 NOTICE AND ASSISTANCE REGARDING PATENT AND COPYRIGHT INFRINGEMENT (DEC 2007)

FAR 52 248-1 VALUE ENGINEERING (FEB 2000)

FAR 52 219-9 SMALL BUSINESS SUBCONTRACTING PLAN (APR 2008)

FAR 52 215-12 SUBCONTRACTOR COST OR PRICING DATA (OCT 1997)

FAR 52 215-13 SUBCONTRACTOR COST OR PRICING DATA - MODIFICATIONS (OCT 1997)

FAR 52 203-14 DISPLAY OF HOTLINE POSTER(S) (DEC 2007)

FAR 52 215-10 PRICE REDUCTION FOR DEFECTIVE COST OR PRICING DATA (OCT 1997)

FAR 52 215-11 PRICE REDUCTION FOR DEFECTIVE COST OR PRICING DATA - MODIFICATIONS (OCT 1997)

FAR 52 215-15 PENSION ADJUSTMENTS AND ASSET REVERSIONS (OCT 2004)

FAR 52 215-16 FACILITIES CAPITAL COST OF MONEY (JUN 2003)

FAR 52 215-17 WAIVER OF FACILITIES CAPITAL COST OF MONEY (OCT 1997)

FAR 52 215-18 REVERSION OR ADJUSTMENT OF PLANS FOR POST-RETIREMENT BENEFITS (PRB) OTHER THAN PENSIONS (JUL 2005)

FAR 52 215-19 NOTIFICATION OF OWNERSHIP CHANGES (OCT 1997)

FAR 52 216-7 ALLOWABLE COST AND PAYMENT (DEC 2002)

FAR 52 222-4 CONTRACT WORK HOURS AND SAFETY STANDARDS ACT - OVERTIME COMPENSATION (JUL 2005)

FAR 52 223-3 HAZARDOUS MATERIAL IDENTIFICATION AND MATERIAL SAFETY DATA (JAN 1997)

FAR 52 223-7 NOTICE OF RADIOACTIVE MATERIALS (JAN 1997)

FAR 52 227-1 AUTHORIZATION AND CONSENT (DEC 2007)

FAR 52 227-9 REFUND OF ROYALTIES (APR 1984)

FAR 52 227-10 FILING OF PATENT APPLICATIONS-CLASSIFIED SUBJECT MATTER (DEC 2007)

FAR 52 227-11 PATENT RIGHTS-OWNERSHIP BY THE CONTRACTOR (SHORT FORM) (DEC 2007)

FAR 52 228-5 INSURANCE – WORK ON A GOVERNMENT INSTALLATION (JAN 1997)

FAR 52 230-2 COST ACCOUNTING STANDARDS (OCT 2008)

FAR 52 230-3 DISCLOSURE AND CONSISTENCY OF COST ACCOUNTING PRACTICES (OCT 2008)

FAR 52 230-6 ADMINISTRATION OF COST ACCOUNTING STANDARDS (MAR 2008)

FAR 52 233-3 PROTEST AFTER AWARD (AUG 1996)

FAR 52 237-2 PROTECTION OF GOVERNMENT BUILDINGS, EQUIPMENT AND VEGETATION (APR 1984)

FAR 52 243-6 CHANGE ORDER ACCOUNTING (APR 1984)

FAR 52 234-1 INDUSTRIAL RESOURCES DEVELOPED UNDER DEFENSE PRODUCTION ACT TITLE III (DEC 1994)

FAR 52 243-1 CHANGES - FIXED PRICE (AUG 1987)

FAR 52 246-2 INSPECTION OF SUPPLIES - FIXED PRICE (AUG 1996)

FAR 52 246-4 INSPECTION OF SERVICES - FIXED PRICE (AUG 1996)

FAR 52 249-2 TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (FIXED-PRICE) (MAY 2004)

FAR 52 249-8 DEFAULT (FIXED-PRICE SUPPLY AND SERVICE) (APR 1984)

# Wil-Sites 0603, 0610, 0619, 0621, 0632, 0634, 0635 - 02.22

Final Audit Report 2022-02-21

| | |
|---|---|
| Created: | 2022-02-17 |
| By: | Ryan Oakes (ryan.oakes@84lumber.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAMafnAolF-W37Nx2DE7JXzZ4fwOsOsmtN |

## "Wil-Sites 0603, 0610, 0619, 0621, 0632, 0634, 0635 - 02.22" History

Document created by Ryan Oakes (ryan.oakes@84lumber.com)
2022-02-17 - 8:13:56 PM GMT- IP address: 50.206.42.28

Document emailed to Chad Calcagno (chad@wilsitestrucklines.com) for signature
2022-02-17 - 8:14:24 PM GMT

Email viewed by Chad Calcagno (chad@wilsitestrucklines.com)
2022-02-17 - 8:37:35 PM GMT- IP address: 96.11.78.75

Document e-signed by Chad Calcagno (chad@wilsitestrucklines.com)
Signature Date: 2022-02-17 - 8:38:00 PM GMT - Time Source: server- IP address: 96.11.78.75

Document emailed to Bradley J Sites (bsites@dwliftsales.com) for signature
2022-02-17 - 8:38:02 PM GMT

Email viewed by Bradley J Sites (bsites@dwliftsales.com)
2022-02-17 - 8:40:13 PM GMT- IP address: 96.11.78.75

Document e-signed by Bradley J Sites (bsites@dwliftsales.com)
Signature Date: 2022-02-17 - 8:40:50 PM GMT - Time Source: server- IP address: 96.11.78.75

Document emailed to Mitchell D. Feldman 2-18-22 (mitch.feldman@84lumber.com) for signature
2022-02-17 - 8:40:51 PM GMT

Email viewed by Mitchell D. Feldman 2-18-22 (mitch.feldman@84lumber.com)
2022-02-17 - 9:46:28 PM GMT- IP address: 104.28.78.137

Document e-signed by Mitchell D. Feldman 2-18-22 (mitch.feldman@84lumber.com)
Signature Date: 2022-02-18 - 9:43:15 PM GMT - Time Source: server- IP address: 24.3.215.229

Document emailed to Denise Bastian (denise.bastian@84lumber.com) for signature
2022-02-18 - 9:43:17 PM GMT

Email viewed by Denise Bastian (denise.bastian@84lumber.com)
2022-02-21 - 1:27:26 PM GMT- IP address: 50.206.42.28

Document e-signed by Denise Bastian (denise.bastian@84lumber.com)
Signature Date: 2022-02-21 - 1:27:56 PM GMT - Time Source: server- IP address: 50.206.42.28

Agreement completed.
2022-02-21 - 1:27:56 PM GMT

STATE OF NEW YORK
SUPREME COURT : COUNTY OF MONROE

---

JAMES MAYNARD, JR.,

Plaintiff,

vs.

84 LUMBER COMPANY and
JAMES BARRY,

Defendants.

---

84 LUMBER COMPANY,

Defendant/Third-Party Plaintiff,

vs.

WIL-SITES TRUCK LINES, LLC,

Third-Party Defendant.

---

**ANSWER WITH COUNTERCLAIM/CROSS-CLAIM TO THIRD-PARTY COMPLAINT**

Index No.: E2025008258

Third-party defendant, WIL-SITES TRUCK LINES, LLC (hereinafter referred to as "WIL-SITES"), by and through its attorneys, ADDELMAN CROSS & BALDWIN, PC, as and for its Answer to defendant/third-party plaintiff, 84 Lumber Company's (hereinafter referred to as "84 Lumber") Third-Party Complaint, herein:

1. Denies knowledge and information sufficient to form a belief as to the allegations contained in Paragraphs 1, 3, 4, 5 and 9.

2. Denies the allegations contained in Paragraphs 10, 11, 13, 15, 16, 17, 19, 20, 22 and 23.

EXHIBIT
tabbies
H

3. WIL-SITES respectfully submits that the allegations contained in Paragraphs 6, 8 and 14 call for a legal conclusion, and therefore, do not require a response by WIL-SITES. To the extent that an answer is required in response to Paragraphs 6, 8 and 14, WIL-SITES denies all allegations contained therein.

4. In response to the allegations contained in Paragraph 2, WIL-SITES admits that it was and is an Ohio Limited Liability Company with a principal office located at 1250 Walcutt Road, Columbus, Ohio 43228.

5. In response to the allegations contained in Paragraph 7, WIL-SITES admits that it entered into an Independent Contractor Hauling Agreement on or about February 14, 2022, with an effective date of February 21, 2022, with 84 Lumber.

6. WIL-SITES denies each and every allegation not heretofore specifically admitted, denied or otherwise controverted.

**AS AND FOR A FIRST AFFIRMATIVE DEFENSE,**
**WIL-SITES ALLEGES**
**UPON INFORMATION AND BELIEF:**

7. The Third-Party Complaint fails to state a cause of action against WIL-SITES and must be dismissed.

**AS AND FOR A SECOND AFFIRMATIVE DEFENSE,**
**WIL-SITES ALLEGES**
**UPON INFORMATION AND BELIEF:**

8. Any injury and damages alleged in plaintiff's Verified Complaint and 84 Lumber's Third-Party Complaint were worsened by the failure of plaintiff and 84 Lumber to act to mitigate severe injury and damage.

**AS AND FOR A THIRD AFFIRMATIVE DEFENSE,
WIL-SITES ALLEGES
UPON INFORMATION AND BELIEF:**

9. That WIL-SITES' liability, if any, is limited pursuant to Article 16 of the CPLR.

**AS AND FOR A FOURTH AFFIRMATIVE DEFENSE,
WIL-SITES ALLEGES
UPON INFORMATION AND BELIEF:**

10. In the event that plaintiff recovers damages in this action which have been paid or are payable by a collateral source, WIL-SITES will seek an offset to such damages pursuant to Article 45 of the CPLR.

**AS AND FOR A FIFTH AFFIRMATIVE DEFENSE,
WIL-SITES ALLEGES
UPON INFORMATION AND BELIEF:**

11. The culpable conduct of the plaintiff and/or 84 Lumber, if not the sole cause of the damages sustained by plaintiff and/or 84 Lumber in the accident alleged in the Verified Complaint and/or the Third-Party Complaint, contributed to such injuries and damages, and any damages otherwise recoverable by plaintiff and/or 84 Lumber in this action shall be diminished in proportion to which plaintiff's and/or 84 Lumber's culpable conduct caused such damages.

**AS AND FOR A SIXTH AFFIRMATIVE DEFENSE,
WIL-SITES ALLEGES
UPON INFORMATION AND BELIEF:**

12. That the plaintiff and/or 84 Lumber herein assumed the risk of each and every condition, circumstance or activity which may have caused or contributed to the accident or injuries alleged in the Verified Complaint and/or Third-Party Complaint.

**AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE,
WIL-SITES ALLEGES
UPON INFORMATION AND BELIEF:**

13. Plaintiff has failed to sustain a grave injury as defined by New York State Workers' Compensation Law Section 11.

**AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE,
WIL-SITES ALLEGES
UPON INFORMATION AND BELIEF:**

14. Plaintiff has failed to sustain a serious injury as defined by Section 5102 of the New York State Insurance Law.

**AS AND FOR A NINTH AFFIRMATIVE DEFENSE,
WIL-SITES ALLEGES
UPON INFORMATION AND BELIEF:**

15. The plaintiff's claim is barred by the applicable provisions of the New York State Workers' Compensation Law, and therefore, plaintiff's sole and exclusive remedy is under the New York State Workers' Compensation Law.

**AS AND FOR A TENTH AFFIRMATIVE DEFENSE,
WIL-SITES ALLEGES
UPON INFORMATION AND BELIEF:**

16. That said causes of action were not commenced within the time limit required by the State of New York, and therefore, are time barred by the applicable statute of limitations.

**AS AND FOR AN ELEVENTH AFFIRMATIVE DEFENSE,
WIL-SITES ALLEGES
UPON INFORMATION AND BELIEF:**

17. The Third-Party Complaint was not property served upon WIL-SITES, and therefore, this Court lacks jurisdiction over WIL-SITES.

**AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE,
WIL-SITES ALLEGES
UPON INFORMATION AND BELIEF:**

18. That in the event plaintiff gives releases or covenants not to sue or not to enforce a judgment to one or two or more of persons claimed to be liable for the same injury alleged in plaintiff's Verified Complaint, WIL-SITES will seek an offset pursuant to Section 15-108 of the General Obligations Law.

**AS AND FOR A THIRTEENTH AFFIRMATIVE DEFENSE,
WIL-SITES ALLEGES
UPON INFORMATION AND BELIEF:**

19. WIL-SITES affirmatively alleges, in the alternative, that any damages sustained by plaintiff as alleged in the Verified Complaint and/or 84 Lumber as alleged in the Third-Party Complaint are the result of the direct, proximate, intervening, and/or superseding acts and/or omissions to act of parties other than WIL-SITES.

**AS AND FOR A COUNTERCLAIM/CROSS-CLAIM
AGAINST ALL DEFENDANTS/THIRD-PARTY PLAINTIFF/PLAINTIFF:**

20. That if the plaintiff sustained injuries and damages as alleged in the Verified Complaint by reason or fault other than his own, and judgment is recovered against WIL-SITES, then the liability of WIL-SITES will have been brought about by reason of the culpable conduct of plaintiff, defendant, James Barry, and 84 Lumber, without any such culpable conduct on the part of WIL-SITES who is thereby entitled to contractual and/or common law indemnity and/or contribution for all or part of any such judgment and in such amount as shall be determined ultimately at the trial of this action.

**WHEREFORE**, WIL-SITES demands judgment dismissing 84 Lumber's Third-Party Complaint, together with the costs and disbursements of this action, and further demands pursuant to Section 1401 of the CPLR and/or other applicable law, that the ultimate rights of the parties as between themselves be determined.

DATED: Buffalo, New York
October 14, 2025

*/s/ Tara N. Karch Cross, Esq.*
Tara N. Karch Cross, Esq.
ADDELMAN CROSS & BALDWIN, PC
Attorneys for Third-Party Defendant
Wil-Sites Truck Lines, LLC
5680 Main Street
Buffalo, New York 14221
Telephone: (716) 475-9532

TO: Brian Laudadio, Esq.
Claire G. Bopp, Esq.
BOND, SCHOENECK & KING, PLLC
Attorneys for Defendant/Third-Party Plaintiff, 84 Lumber Company
Attorneys for Defendant, James Barry
350 Linden Oaks, Third Floor
Rochester, New York 14625-2825

Stephen A. Segar, Esq.
SEGAR & SCIORTINO PLLC
Attorneys for Plaintiff
400 Meridian Centre, Suite 320
Rochester, New York 14618

**AFFIRMATION OF SERVICE**

Tara N. Karch Cross, Esq. hereby affirms, pursuant to CPLR §2106, that on this date the foregoing Answer with Counterclaim/Cross-claim to Third-Party Complaint was electronically filed with the New York State Courts Electronic Filing System and sent to the following via regular mail:

Brian Laudadio, Esq.
Claire G. Bopp, Esq.
BOND, SCHOENECK & KING, PLLC
Attorneys for Defendant/Third-Party Plaintiff, 84 Lumber Company
Attorneys for Defendant, James Barry
350 Linden Oaks, Third Floor
Rochester, New York 14625-2825

Stephen A. Segar, Esq.
SEGAR & SCIORTINO PLLC
Attorneys for Plaintiff
400 Meridian Centre, Suite 320
Rochester, New York 14618

DATED: Buffalo, New York
October 14, 2025

*/s/ Tara N. Karch Cross, Esq.*
Tara N. Karch Cross, Esq.

BOND SCHOENECK & KING

350 Linden Oaks, Third Floor | Rochester, NY 14625-2825 | bsk.com

**CLAIRE BOPP, ESQ.**
cbopp@bsk.com
P: 585.362.4868
F: 585.362.4701

October 2, 2025

**VIA EMAIL AND FIRST-CLASS MAIL**

Eric A. Fitzgerald, Esq.
McAngus Goudelock & Courie
2000 Market Street, Suite 2850
Philadelphia, PA 19103
Email: eric.fitzgerald@mgclaw.com

Re: *Demand for Defense and Reimbursement*
*James Maynard, Jr. v. 84 Lumber Company and James Barry v. Wil-Sites Truck Lines, LLC*
*Index No. E2025008258*

Dear Eric:

My firm represents 84 Lumber Company ("84") and James Barry (collectively, "Defendants") in the above-referenced personal injury action currently pending in New York State Supreme Court, Monroe County stemming from an incident that occurred while plaintiff, James Maynard ("Maynard"), a Wil-Sites Truck Lines ("Wil-Sites") employee, was making a delivery to an 84 store located in Rochester, NY. As you are aware, Defendants filed a third-party action against Wil-Sites for indemnification and contribution based upon the express language of the Independent Contractor Hauling Agreement ("the Agreement") executed by Wil-Sites and 84 on or about February 14, 2022. We are in receipt of your reservation of rights letter, dated August 28, 2025, on behalf of Great West Casualty Insurance Company ("GWC"), indicating that GWC has agreed to participate in the defense of Wil-Sites in the third-party action.

Defendants hereby demand that GWC immediately assume the defense of this action on behalf of Defendants and reimburse them for all legal fees incurred. As you acknowledged in GWC's reservation of rights letter, Wil-Sites contractually agreed to defend and hold 84 harmless against any claim for damages due to bodily injury arising out of performance of work by Wil-Sites, which necessarily includes the subject action brought by Maynard.

If GWC fails to assume the defense of this action and reimburse Defendants for legal fees by October 15, 2025, Defendants will proceed with filing a declaratory judgment action against GWC.

Very truly yours,

BOND, SCHOENECK & KING, PLLC

Claire A. Bopp

Claire Bopp

CGP/slm

EXHIBIT
tabbies
I

mgc

**Reply To**
ERIC A. FITZGERALD
Direct Dial: (484) 406-4334
eric.fitzgerald@mgclaw.com

October 17, 2025

**VIA ELECTRONIC MAIL**
**AND FIRST CLASS MAIL**
Claire G. Bopp, Esq.
Bond, Schoeneck & King, PLLC
350 Linden Oaks, Third Floor
Rochester, NY 14625-2825

RE: *James Maynard, Jr. v. 84 Lumber Co. et al./84 Lumber v. Wil-Sites Truck Lines, LLC*

| | |
|---|---|
| Index No.: | E2025/008258 |
| Date of Incident: | 7/27/2022 |
| Carrier Claim No.: | 025-08-003108 |
| MGC File No.: | 20574.25004 |

Dear Claire:

The undersigned are counsel for Great West Casualty Insurance Company ("Great West") in the above matter. As counsel for Great West I have received your letter dated October 2, 2025, in which you communicate demands on behalf of 84 Lumber Company ("84 Lumber") and its employee James Barry ("Barry") that Great West assume the defense of 84 Lumber and Barry. We have been authorized by Great West to provide this response to those demands.

Initially, your letter states:

> As you acknowledged in [Great West's] reservation of rights letter, Wil-Sites contractually agreed to defend and hold 84 harmless against any claim for damages due to bodily injury arising out of performance of work by Wil-Sites, which necessarily includes the subject action brought by Maynard.

Wil-Sites' contractual undertaking, whether or not covered by Great West's policy, confers no direct rights to 84 Lumber against Great West. 84 Lumber has asserted its claims against Wil-Sites and Great West is participating in the defense of those claims.



EXHIBIT
J

mgc



Although not directly stated therein, Great West interprets your letter as a tender to Great West as an insured. Because neither 84 Lumber nor Barry qualify as an insured on the policy that Great West issued to Wil-Sites Truck Lines LLC ("Wil-Sites") for the claims raised by plaintiff in the referenced action, Great West respectfully declines to participate in the defense of 84 Lumber and Barry. The reasons for Great West's coverage position are more fully explained below.

Statement of Allegations

On April 16, 2025, Plaintiff James Maynard, Jr. ("Maynard") filed a complaint in Supreme Court for the State of New York, County of Monroe, against 84 Lumber and James Barry. Maynard alleges that on July 27, 2022, while in the course and scope of his employment by Wil-Sites, he made a delivery of wood products to 84 Lumber at its location in Greece, New York using a flatbed truck. Maynard's complaint includes the following allegation:

> 8. As said delivery of wood products was being unloaded by defendant James Barry, Mr. Barry, while using a forklift, pushed a large piece or pieces of lumber from the top of the load on said flatbed truck onto plaintiff, striking him about the head, face, shoulders and neck.

James Barry is alleged to be an employee of 84 Lumber who was acting within the course and scope of his employment. The complaint alleges that Maynard's injuries were caused by negligent actions of James Barry, also attributable to 84 Lumber as his employer.

Insurance Policy Provisions

Great West issued Commercial Lines Policy number MCP24999G to Wil-Sites Truck Lines LLC as the named insured shown in the declarations effective August 1, 2021 (the "Policy"). The Policy includes a Commercial Auto Coverage Part and a Commercial General Liability Coverage Part, each with a limit of liability of $1,000,000 per accident or occurrence, subject to a $25,000 retention.

The Policy includes an Ohio Motor Carrier Coverage Form that provides in part:

Throughout this Policy, the words "you" and "your" refer to the Named Insured shown in the Declarations – Item One. The words "we", "us" and "our" refer to the Company providing this insurance.

...

SECTION II - COVERED AUTOS LIABILITY COVERAGE

A. COVERAGE

mgc



> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".
>
> ...
>
> 1. WHO IS AN INSURED
>
> The following are "insureds":
>
> a. You for any covered "auto".
>
> b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:
>
> ...
>
> (4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), a lessee or borrower of a covered "auto" or any of their "employees", while moving property to or from a covered "auto".
>
> ...

The Policy includes an Additional Insured Endorsement applicable to the Commercial Auto Coverage Part, identifying 84 Lumber as Additional Insured, which provides:

> A. Section II - Covered Autos Liability Coverage - D. Who is an Insured is changed to include as an "insured" the person or organization shown in the SCHEDULE on this endorsement only if they are liable for the conduct of an "insured" shown in the Who is an Insured provisions and only to the extent of that liability.

The Policy includes a Commercial General Liability ("CGL") Coverage Form, which provides in part:

> Throughout this Coverage Form the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.
>
> ...

mgc



SECTION I -COVERAGES

COVERAGE A

1. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We have the right and duty to defend any insured against a "suit" asking for such damages.

The Policy includes an Additional Insured Endorsement that modifies the CGL Coverage Form, identifying 84 Lumber as the Additional Insured Person or Organization, which provides in part:

A. Who is an Insured is changed to include as an additional insured the person(s) or organization(s) shown in the SCHEDULE on this endorsement but only to the extent that the liability arises:

   1. In the performance of your ongoing operations; or

   2. In connection with your premises owned by or rented to you;

and only to the extent that the additional insured is vicariously liable for your conduct.

...

**DECLINATION OF DEMAND FOR DEFENSE**

Neither 84 Lumber nor Barry is an insured under the Ohio Motor Carrier Coverage Form. Under the facts of this matter, the Ohio Motor Carrier Coverage Form provides the status of an insured only to Wil-Sites and a permissive user of the covered auto owned hired, or borrowed by Wil-Sites, which use resulted in the accident that injured Plaintiff. Plaintiff claims to have been injured when Barry was unloading the covered auto with a forklift and caused a piece of wood to strike Plaintiff. The Ohio Motor Carrier Coverage Form, under the facts of this case, does not include as an insured anyone other than Wil-Sites' employees while moving property from the covered auto. Barry is not an employee of Wil-Sites, and therefore does not qualify as an insured under the Who Is An Insured Provision of the Ohio Motor Carrier Coverage Form.

mgc



The Ohio Motor Carrier Coverage Form includes an Additional Insured Endorsement that makes 84 Lumber an insured, but only if it is liable for the conduct of an "insured" shown in the Who is an Insured provisions and only to the extent of that liability. 84 Lumber is alleged by Plaintiff to be liable for the conduct of Barry. Barry is not an "insured" under the Who Is an Insured provisions of the Ohio Motor Carrier Coverage Form. Therefore, 84 Lumber does not qualify, under the facts of this case, as an insured under the Additional Insured Endorsement applicable to the Commercial Auto Coverage Part.

Neither 84 Lumber nor Barry is an insured under the CGL Coverage Form. The CGL Coverage Form includes an Additional Insured Endorsement that makes 84 Lumber an insured, but only to the extent that is vicariously liable for Wil-Sites' conduct. Plaintiff's complaint does not implicate any conduct by Wil-Sites for which 84 Lumber could be vicariously liable. Plaintiff is asserting a direct liability claim against Barry and a claim that 84 Lumber is vicariously liable for Barry's negligence as his employer. Because Plaintiff makes no claim that 84 Lumber is vicariously liable for Wil-Sites' conduct, 84 Lumber is not an additional insured. Barry does not qualify as an insured under the CGL Coverage form, as he is a stranger to Will-Sites.

The foregoing statement of Great West's coverage position is premised upon the investigation conducted to date and is subject to change if additional facts relevant to the claim is presented to us that necessitate additional review under the above-referenced policy. This recitation is not necessarily exhaustive, however, and to the extent that a particular term, condition, limitation or exclusion has not been cited, or any issue not referenced, that was not intended, it should not be considered as a waiver of any right that Great West may have under the policy. Great West reserves the right to alter or amend this tender response at any time in the future, should it become necessary. Neither the investigation conducted, nor any acts performed by the company, shall be construed as a waiver of any rights under the policy.

Thank you.

Very truly yours,

Eric A. Fitzgerald

EAF/dwl

cc: Wil-Sites Truck Lines LLC
900 Buckeye Park Rd.
Columbus, OH 43207

mgc

**Reply To**
ERIC A. FITZGERALD
Direct Dial: (484) 406-4334
eric.fitzgerald@mgclaw.com

August 28, 2025

**VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED**
**AND REGULAR MAIL**

Wil-Sites Truck Lines LLC
900 Buckeye Park Rd.
Columbus, OH 43207

RE: Insured: Wil-Sites Truck Lines LLC
Claimant: James Maynard, Jr.
Policy No.: MCP24999G
Policy Period: 8/1/2021 to 8/1/2022
Date of Loss: 7/27/2022

Dear Policyholder:

The undersigned are counsel for Great West Casualty Insurance Company ("Great West") in the above matter. Great West has received notice that Wil-Sites Truck Lines LLC (the "Insured') has been named as a defendant in a third-party action filed by 84 Lumber Company ("84 Lumber"). Great West has reviewed the allegations in the third-party complaint and in the original complaint. Great West will participate in the defense of the Insured in the third-party action subject to a reservation of rights as more fully set forth herein.

Statement of Allegations

On April 16, 2025, Plaintiff James Maynard, Jr. ("Maynard") filed a complaint in Supreme Court for the State of New York, County of Monroe, against 84 Lumber and James Barry. Maynard alleges that on July 27, 2022, while in the course and scope of his employment by the Insured, he made a delivery of wood products to 84 Lumber at its location in Greece, New York using a flatbed truck. Maynard's complaint includes the following allegation:

> 8. As said delivery of wood products was being unloaded by defendant James Barry, Mr. Barry, while using a forklift, pushed a large piece or pieces of lumber from the top of the load on said flatbed truck onto plaintiff, striking him about the head, face, shoulders and neck.



EXHIBIT
K

James Barry is alleged to be an employee of 84 Lumber who was acting within the course and scope of his employment. The complaint alleges that Maynard's injuries were caused by negligent actions of James Barry, also attributable to 84 Lumber as his employer.

On June 26, 2025, 84 Lumber filed a third-party complaint against the Insured. 84 Lumber alleges that in February 2022, the Insured contracted with it to provide transportation of materials to stores owned and operated by 84 Lumber, including its facility in Greece, New York. 84 Lumber attaches the contract to the third-party complaint and refers to provisions from it in which the Insured agrees to defend and hold harmless 84 Lumber against any claim for damages because of bodily injury arising out of performance of work by the Insured. 84 Lumber alleges it tendered its defense and indemnification to the Insured, which breached the agreement by failing to acknowledge and accept its obligation. 84 Lumber also alleges that the incident in which Maynard was injured was the result of negligence of the Insured, and exclusively caused by its failure, without any culpable conduct by 84 Lumber.

The third-party complaint contains a first cause of action for contractual indemnification, a second cause of action for common-law indemnification and a third cause of action for contribution.

Insurance Policy Provisions

Great West issued Commercial Lines Policy number MCP24999G to Wil-Sites Truck Lines LLC effective August 1, 2021 (the "Policy"). The Policy includes a Commercial Auto Coverage Part and a Commercial General Liability Coverage Part, each with a limit of liability of $1,000,000 per accident or occurrence, subject to a $25,000 retention.

The Policy includes an Ohio Motor Carrier Coverage Form that provides in part:

SECTION II - COVERED AUTOS LIABILITY COVERAGE

A. COVERAGE

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

...

B. EXCLUSIONS

This insurance does not apply to any of the following:

...

2. CONTRACTUAL

Liability assumed under any contract or agreement. But this exclusion does not apply

to liability for damages:

a. Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

b. That the "insured" would have in the absence of the contract or agreement.

4. EMPLOYEE INDEMNIFICATION AND EMPLOYER'S LIABILITY

"Bodily injury" to:

a. An "employee" of the "insured" arising out of and in the course of:

(1) Employment by the "insured"; or

(2) Performing the duties related to the conduct of the "insured's" business; or

b. The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph a. above.

This exclusion applies:

(1) Whether the "insured" may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

For this exclusion only, "employee" does not include a "leased worker" or a "temporary worker".

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

. . .

8. MOVEMENT OF PROPERTY BY MECHANICAL DEVICE

"Bodily injury", "property damage" or "covered pollution cost or expense" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

SECTION VI -DEFINITIONS

. . .

K. "Insured contract" means:

5. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury' or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

The Policy includes a Commercial General Liability ("CGL") Coverage Form, which provides in part:

SECTION I -COVERAGES

COVERAGE A

1. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We have the right and duty to defend any insured against a "suit" asking for such damages.

2. EXCLUSIONS

This insurance does not apply to:

. . .

b. CONTRACTUAL LIABILITY

"Bodily injury" or "property damage" for which

the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. This exclusion also does not apply to the defense or expenses of any party assumed in an "insured contract" as set forth in Paragraph 8. of Section I - Supplementary Payments.

. . .

e. EMPLOYEE INDEMNIFICATION AND EMPLOYER'S LIABILITY

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

For this exclusion only, "employee" does not include a "leased worker" or a "temporary worker".

This exclusion does not apply to liability assumed by the insured under an "insured contract"

. . .

g. AIRCRAFT, AUTO OR WATERCRAFT

(2) Aircraft (Other Than Unmanned Aircraft), Auto Or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use, or entrustment to others of any:

(a) "auto"; or

(b) aircraft (other than "unmanned aircraft); or watercraft owned or operated by or rented, leased or loaned to any insured.

Use includes operation and "loading or unloading".

. . .

SECTION V -DEFINITIONS

11. "Insured contract" means:

. . .

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

. . .

13. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

<u>Reservation of Rights and Partial Declination of Coverage</u>

The CGL Coverage Form has an exclusion for injury caused by use of an automobile and states that use includes "loading and unloading", but "loading and unloading" is defined to not include the use of a mechanical device. Conversely, the Ohio Motor Carrier Coverage Form has an exclusion for injury caused by movement of property by a mechanical device. The complaint alleges that Barry was using a forklift to unload product when Maynard was injured as a result. A forklift is a mechanical device. If that allegation is proved true, coverage may apply under the CGL Coverage Form, but not under the Ohio Motor Carrier Coverage Form. Great West reserves its rights in this regard.

Maynard is alleged to have been employed by the Insured and in the course and scope of his employment when his injury occurred. Both the Ohio Motor Carrier Coverage Form and the CGL Coverage Form contain a substantially identically worded exclusion titled Employee Indemnification and Employer's Liability that provides that the insurance does not apply to bodily injury to an employee of the insured arising out of and in the course employment by the insured. These exclusions apply to any obligation to share damages or repay someone else who must pay damages because of the injury. These exclusions apply to the claims for contribution and indemnity that 84 Lumber asserts in the third-party complaint. However, these exclusions do not apply to liability assumed by the Insured under an "insured contract" as defined in the Policy. The contract between the Insured and 84 Lumber that is included as an exhibit to the third-party complaint contains provisions that appear to qualify it as an "insured contract" as that term is defined in the Policy. The Employee Indemnification and Employer's Liability exclusions will not apply to the cause of action for contractual indemnification. Great West will not indemnify the Insured for any judgment that may be entered against it on the causes of action for contribution or common law indemnity, because the Employee Indemnification and Employer's Liability exclusion applies to those causes of action.

The foregoing statement of Great West's coverage position is premised upon the investigation conducted to date and is subject to change if additional facts relevant to the claim is presented to us that necessitate additional review under the above-referenced policy. This recitation is not necessarily exhaustive, however, and to the extent that a particular term, condition, limitation or exclusion has not been cited, or any issue not referenced, that was not intended, it should not be considered as a waiver of any right that Great West may have under the policy. Great West

reserves the right to alter or amend this tender response at any time in the future, should it become necessary. Great West reserves the right to withdraw from the Defense of the Insured. Neither the investigation conducted, nor any acts performed by the company, shall be construed as a waiver of any rights under the policy.

Thank you.

Sincerely,

EAF, Esq., CPCU, CLU

cc: Via CMRRR and Regular Mail

Stephen A. Segar, Esq.
Segar & Sciortino PLLC
400 Meridian Centre, Suite 320
Rochester, NY 14618

Claire G. Bopp, Esq.
Bond, Schoeneck & King, PLLC
350 Linden Oaks, Third Floor
Rochester, NY 14625-2825

Assuredpartners of Ohio LLC
285 Cozzins St.
Columbus, OH 43215

# VERIFICATION

I, Dave Rumbaugh, having read the attached pleading, and being authorized to sign on behalf of 84 Lumber Company, verify that the *Complaint in Civil Action* is based on information furnished to counsel, as well as information gathered by counsel in the course of this lawsuit. The language of the pleading is that of counsel and not of me. I verify that I have read the pleading and that it is true and correct to the best of my knowledge, information, and/or belief. To the extent that the contents of the pleading are that of counsel, I have relied upon counsel in making this Verification. This Verification is made subject to the penalties of 18 Pa. C.S. 4904 relating to unsworn falsification to authorities.

Dated: 12/4/2025

By: Dave Rumbaugh
Dave Rumbaugh (Dec 4, 2025 09:06:26 EST)
Dave Rumbaugh
VP of Logistics & Specialty Buying, 84 Lumber Co.

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Date: December 8, 2025

*/s/ Gerald J. Stubenhofer, Jr.*
Gerald J. Stubenhofer, Jr.
PA I.D. No. 72921
STEPTOE & JOHNSON PLLC
One PPG Place, Suite 3300
Pittsburgh, Pennsylvania 15222